Leonard M. Shulman - Bar No. 126349
**SHULMAN HODGES & BASTIAN LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:    (949) 340-3400
Facsimile:    (949) 340-3000
Email:        lshulman@shbllp.com

Proposed Attorneys for Technology Solutions &
Services, Inc., Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:18-bk-18339-MH |
| **TECHNOLOGY SOLUTIONS & SERVICES, INC., a California corporation,** | Chapter 11 |
| Debtor. | **DEBTOR AND DEBTOR IN POSSESSION'S NOTICE OF MOTION AND EMERGENCY MOTION FOR (A) ORDER APPROVING STIPULATION FOR INTERIM USE OF CASH COLLATERAL; (B) GRANTING OF ADEQUATE PROTECTION; (C) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AND DECLARATION OF JULIO C. GARCIA, JR. IN SUPPORT THEREOF** |
| | **Hearing:** |
| | Date:   To Be Set |
| | Time:  To Be Set |
| | Place:  Courtroom 303 |
| |        3420 Twelfth Street |
| |        Riverside, California |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1

# TABLE OF CONTENTS

PAGE

I.  NOTICE .................................................................................................................4

II.  INTRODUCTION .................................................................................................6

III.  BACKGROUND INFORMATION ......................................................................6

    A.  Case Commencement .................................................................................6

    B.  Description of the Debtor's Business .........................................................6

    C.  Bank of America's Secured Debt and Events Leading to the Emergency
        Chapter 11 Filing.......................................................................................7

IV.  ARGUMENT .........................................................................................................8

    A.  The Secured Creditors Are Adequately Protected By the Debtor's Use of
        Cash Collateral. .......................................................................................15

V.  THE RELIEF REQUESTED HEREBY IS JUSTIFIED ON AN EMERGENCY
   BASIS...................................................................................................................16

VI.  CONCLUSION ....................................................................................................17

DECLARATION OF JULIO C. GARCIA, JR. .............................................................18

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

5

*In re Mellor*,
        734 F.2d 1396, 1400 (9th Cir. 1984)........................................................................ 15

6

## STATUTES

7

8

11 U.S.C § 552(b) ......................................................................................................... 8

9

11 U.S.C. §  1108 ......................................................................................................... 6

10

11 U.S.C. §  363(a)............................................................................................... 8, 14, 15

11 U.S.C. §  363(e) ...................................................................................................... 15

11

11 U.S.C. § 1107 ................................................................................................... 6, 14

12

11 U.S.C. § 361 ........................................................................................................... 15

13

11 U.S.C. § 363(c)(1) .................................................................................................. 14

14

11 U.S.C. § 363(c)(2) .................................................................................................. 14

15

11 U.S.C. § 363(c)(3) .................................................................................................. 16

16

28 U.S.C. § 1408 ........................................................................................................... 8

17

28 U.S.C. § 1409 ........................................................................................................... 8

18

28 U.S.C. § 157 ............................................................................................................. 8

19

28 U.S.C. §1334 ............................................................................................................ 8

20

## RULES

21

22

Bankruptcy Rule 4001(b)(2) ....................................................................................... 16

23

Local Bankruptcy Rule 4001-2(a).............................................................................. 16

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

**TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES-IN-INTEREST:**

## I.    NOTICE

**PLEASE TAKE NOTICE** that Technology Solutions & Services, Inc., a California corporation ("TSSI"), the debtor and debtor in possession (the "Debtor") in the above chapter 11 bankruptcy case (the "Case"), hereby moves, on an emergency basis (the "Motion"), this court (the "Court") for an order: (1) approving the use of cash collateral on an emergency interim basis, subject to the Stipulation (defined below) and Budget (defined below) filed concurrently with this Motion; (2) granting adequate protection to the Debtor's secured creditors with an interest in cash collateral on an interim basis; (3) setting a final hearing on this Motion; and (4) granting such other relief as the Court deems proper.

**PLEASE TAKE FURTHER NOTICE** that the Debtor and Bank of America NA, the Debtor's largest secured creditor, have entered into the Stipulation, filed concurrently with this Motion, which allows the Debtor to use Cash Collateral (defined below and within the Stipulation) in order to pay the Debtor's operating expenses pending the sale of the  Debtor's assets.

**PLEASE TAKE FURTHER NOTICE** that the ultimate purpose of this Case is to sell the Debtor's assets and to confirm a chapter 11 plan.

**PLEASE TAKE FURTHER NOTICE** that this Motion is being made on an emergency basis pursuant to Section 363 of the United States Bankruptcy Code (the "Bankruptcy Code"), rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)"), and rules 2081, 4001-2, and 9075-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California (the "Local Rules").

**PLEASE TAKE FURTHER NOTICE** that this Motion is based upon the foregoing, the Memorandum of Points and Authorities and the Declaration of Julio C. Garcia, Jr. appended hereto, all other pleadings and papers on file in this Case, the arguments and representations of counsel, and any oral or documentary evidence that may be properly presented to this Court at or before any hearing or ruling on the Motion, if a hearing is required.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

4

1    **PLEASE TAKE FURTHER NOTICE** that the Debtor will provide notice of this notice

2    and Motion to: (1) the office of the United States Trustee for the Central District of California; (2)

3    the consolidated list of unsecured creditors filed pursuant to Federal Rule 1007(d); (3) all secured

4    creditors or their record of counsel; (4) parties that filed with this Court and seek upon the Debtor a

5    request for notice of all matters in this Case in accordance with Federal Rule 2002(i); and (5) all

6    other parties entitled to notice by this Court.  The Debtor further submits that, in light of the nature

7    of the relief requested and the urgency of the circumstances surrounding this Motion, no other or

8    further notice need be given.

9    **PLEASE TAKE FURTHER NOTICE** that the Debtor submits that the relief requested

10   herein is in the best interest of the Debtor and its Estate ("Estate"), creditors, stakeholders, and all

11   other parties-in-interest and therefore should be granted.

12   **WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (1)

13   approving the use of cash collateral on an emergency interim basis, subject to the Stipulation and

14   Budget filed concurrently with this Motion; (2) granting adequate protection to the Debtor's secured

15   creditors with an interest in cash collateral on an interim basis; (3) setting a final hearing on this

16   Motion; and (4) granting such other relief as the Court deems proper.

17                              Respectfully submitted,

18                              **SHULMAN HODGES & BASTIAN LLP**

19

20   DATED:  October 2, 2018          By:        */s/ Leonard M. Shulman*

21                                          Leonard M. Shulman
                                           Proposed Attorneys for Technology Solutions &
22                                          Services, Inc., Debtor and Debtor in Possession

23

24

25

26

27

28

## II.    INTRODUCTION

The Debtor's corporate offices are located at 458 E. Commercial Road, San Bernardino, California.  The Debtor also operates two low-cost Maquiladora factories just across the border in Mexico totaling nearly 500,000 square feet, and three U.S. offices to serve clients.  The Debtor is a returns management company specializing in high-volume remanufacturing of in-warranty and out-of-warranty consumer electronics products.

The Debtor is seeking this relief on an emergency basis because of the harm that will result if the Debtor's ability to use Cash Collateral is interrupted.  The Debtor needs certainty and stability as it enters its chapter 11 case, and an immediate order providing for the Debtor's use of Cash Collateral is critical to the Debtor's ability to manage and administer its chapter 11 case in an efficient and effective manner.  Ultimately, the purpse of this Case is to sell all of the Debtor's assets and to propose a chapter 11 plan.  Concurrently herewith, the Debtor has filed a motion for authority to sell substantially all of its assets (the "Sale Motion") as contemplated in the Sale Motion and accompanying asset purchase agreement (the "APA") to that Sale Motion.  For the reasons set forth herein, the Debtor requests that this Motion be granted in its entirety.

## III.    BACKGROUND INFORMATION

### A.    Case Commencement

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 2, 2018 ("Petition Date").

The Debtor is continuing in possession of its property, and operating and managing its business, as a debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108.

No request for the appointment of a trustee or examiner has been made in this Case and no committee has been appointed.

### B.    Description of the Debtor's Business

The Debtor is a California corporation incorporated in 2003 and is a returns management company specializing in high-volume remanufacturing of in-warranty and out-of-warranty consumer electronics products.  TSSI corporate headquarters is located at 458 Commercial Road, ///

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1  San Bernardino, California.  TSSI operates two low-cost Maquiladora factories just across the

2  border in Mexico totaling nearly 500,000 square feet, and three U.S. offices to serve clients.  Each

3  factory possesses cutting edge technologies for both technical and cosmetic recovery processes,

4  which make TSSI a front runner remanufacturing business for IT, computer, mobile, tablet and

5  wireless networking services.  In addition to assembly, testing, packaging, storage, distribution and

6  repairs, TSSI restores less-than-desirable products, which reduces scrap rates while increasing

7  product yields and recoveries.  TSSI not only provides full service asset recovery solutions, but also

8  presents manufacturers with a comprehensive analysis of their managed products. TSSI's global

9  partner program consists of a network of international buyers specializing in varying market

10  segments.

11  **C.**    **Bank of America's Secured Debt and Events Leading to the Emergency Chapter 11**

12  **Filing**

13        By far the Debtor's largest and only undisputed secured creditor, Bank, uses the following

14  mailing address for the Debtor's accounts at issue in this Case: Attn President/Manager Agent CA9-

15  702-03-93, 101 S Marengo Ave 3rd Floor, Pasadena, CA 91101-2428.  Bank has a secured claim

16  and blanket lien against the Debtor's property and assets in a total amount of $12,292,722.72.[1]  The

17  three specific liens include: (1) UCC-1 filing No. 10-7248928778, filed on October 20, 2010; (2)

18  UCC-1 filing No. 11-7278989133, filed on July 29, 2011; and, (3) UCC-1 filing No. 11-

19  7283960592, filed on September 8, 2011.  Bank sent a Notice of Default to the Debtor on or about

20  April 17, 2018.

21        The Debtor has determined that it can no longer operate on a profitable basis and cannot

22  internally reorganize its affairs. The Debtor is unable to pay Bank on its loan and is losing money

23  on a monthly basis.  It simply does not have the income to continue operating.  In fact, the Debtor's

---

[1]    In addition, the Internal Revenue Service ("IRS") filed a Notice of Federal Tax Lien on September 5, 2018 ("IRS Lien").  The IRS Lien relates to 2016 Federal income taxes alleged to be owed by the Debtor in the amount of $686,683.15.  The Debtor filed amended returns, however, and is entitled to a refund.  The Debtor recently filed amended tax returns, however, and is entitled to a refund of approximately $151,000.  The IRS has acknowledged the refund and the Debtor is advised that the IRS will release the lien by November 8, 2018.  This is the only other known secured claim in this case and any time the term "secured creditors" is used in this Motion the reference is to both and only Bank and the IRS Lien.

1  accounts have now been frozen for well over two weeks – due to a restraining order placed on the

2  Debtor from American Express in New York on September 12, 2018 (Case No. 652238/2018) - and

3  the Stipulation (defined below) for the immediate use of Cash Collateral is the only way for the

4  Debtor to continue operating its business.

5       Based on this, the Debtor had no other choice but to seek bankruptcy protection in order to

6  preserve as much of its cash as possible, proceed with the sale of assets, and propose a plan to treat

7  creditors equally.  As part of the choice to file this Case, the Debtor and Bank have entered into a

8  stipulation to allow the Debtor to use cash collateral (the "Stipulation"), attached hereto as **Exhibit**

9  **1**.  Additionally, the Debtor and Bank have created a budget to guide the Debtor's post-petition

10  finances (the "Budget") through and including November 2, 2018, concurrently filed as Exhibit 1

11  to the Stipulation.

## IV.    ARGUMENT

13       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This

14  is a core proceeding pursuant to 28 U.S.C. § 157.  Venue is proper pursuant to 28 U.S.C. §§ 1408

15  and 1409.

16       The material provisions of the Stipulation necessary for a successful restructuring, sale

17  process, and to maximize the value of the Debtor's assets for the benefit of the Debtor and its Estate,

18  its creditors, stakeholders, and all parties-in-interest, as provided further in the Stipulation, include:

19       (1)    Recitals.  The Debtor and Bank agree that the matters set forth in the Recitals

20  within the Stipulation are true and correct, provided, however, that the matters set

21  forth in the Recitals shall not be considered binding on or admissions by any party

22  not a signatory to the Stipulation, including, without limitation, any trustee that may

23  be appointed under the Bankruptcy Code.

24       (2)    Definition of Cash Collateral. The term "Cash Collateral," as that term is

25  used in the Stipulation, includes, without limitation, all of the pre-petition and post-

26  petition proceeds derived from or in connection with the Collateral.  Bank holds a

27  valid, enforceable, perfected and unavoidable security interest and lien in the Cash

28  Collateral within the meaning of §§ 552(b) and 363(a) of the Bankruptcy Code

1    whether existing pre-petition or post-petition, and whether or not in the possession,

2    custody or control of the Debtor.

3    (3)      Use of Cash Collateral.  Debtor shall be entitled to use the Cash Collateral

4    without further order of this Court or written permission of Bank, to pay the

5    reasonable, ordinary and necessary expenses of operating and maintaining the

6    Debtor's business ("Ordinary Expenses"), as set forth in the proposed weekly budget

7    attached to the Stipulation as Exhibit 1 and any subsequent budget(s) issued by

8    Debtor and approved in writing by Bank, subject to the terms and conditions set forth

9    below and within the Stipulation.  The Budget shall include sufficient information to

10    allow Bank to make an informed determination regarding such Budget.

11    (4)      All Cash Collateral derived from and/or produced by the Collateral heretofore

12    collected and in possession or under the control of the Debtor and/or its agents or

13    employees and all Cash Collateral hereafter collected shall be deposited, upon receipt

14    by the Debtor or its agents or employees, in currently existing accounts held by

15    Debtor at Bank, with account numbers ending in 3300, 3296 and 6584, respectively,

16    and which accounts shall become the DIP Accounts.

17    (5)      The Cash Collateral shall not be used by the Debtor or its agents or

18    employees, or any other person or party, for any purpose, other than as is specifically

19    provided in the Stipulation and the Budget.  Debtor shall not withdraw any funds

20    from the DIP Accounts without Bank's express written consent or Bankruptcy Court

21    authorization, except to pay an item reflected in the Budget.

22    (6)      The Debtor may not use Cash Collateral for the purpose of making any capital

23    investment or improvement of or in connection with its business or for any other

24    purpose without the prior written authorization of Bank or Bankruptcy Court Order,

25    except as may be reflected in the Budget.

26    (7)      The Debtor's right to use Cash Collateral shall continue through and

27    including November 2, 2018 according to the terms set forth herein and within the

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Stipulation, unless such right terminates earlier upon the occurrence of a Default as defined in the Stipulation or herein.

(8)    Debtor may not exceed the Budget on a weekly basis for any disbursement category by more than ten percent (10%) as determined at the end of each calendar week set forth in the Budget. The 10% variance will be measured on a cumulative basis, with any savings or deficits carried forward to the next period.

(9)    Except as provided herein or within the Stipulation, Debtor must request and obtain Bank's prior written consent or Bankruptcy Court authorization to use any Cash Collateral to pay for any unbudgeted expenses or any budgeted expenses in excess of the budgeted amounts set forth in the Budget, except for those items within the permitted variance referenced above and within the Stipulation.  All requests from Debtor pursuant to this paragraph shall be in writing and shall contain sufficient detail for Bank to make an informed decision with respect to the consent requested.

(10)    <u>Reporting</u>.  Debtor shall provide to Bank a weekly report of Cash Receipts and Disbursements, covering the week ending the preceding Saturday, showing the budgeted and actual figures and variance for each for that week and period-to-date from the Petition Date.  This report will be produced by the 4th business day following each preceding Saturday.

(11)    <u>Replacement Lien.</u>    Bank shall be granted a perfected, and enforceable replacement lien in all of Debtor's post-petition assets, Collateral and Cash Collateral now owned or hereafter acquired.  The replacement liens granted to Bank shall secure replacement to Bank of the actual amount of Cash Collateral utilized by Debtor in the period subsequent to the Petition Date.  The replacement lien shall be of the same validity, order of priority, nature and extent as any duly perfected and unavoidable pre-petition liens described in recitals B and C in the Stipulation, held by the Bank as of the Petition Date.  Except as otherwise set forth herein or within the Stipulation, the replacement lien granted within the Stipulation and as requested herein is and shall be valid, enforceable and fully perfected, and no filing or recordation, or other

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1    act in accordance with any applicable local, state or federal law is necessary to create

2    or perfect such lien.

3        (12)    Lien on DIP Accounts.  Bank shall be granted a perfected and enforceable

4    replacement lien in the DIP Accounts opened pursuant to Paragraph 3.a. of the

5    Stipulation.  The replacement liens granted to Bank shall secure replacement to Bank

6    of the actual amount of Cash Collateral utilized by Debtor in the period subsequent

7    to the Petition Date.  The replacement lien shall be of the same validity, order of

8    priority, nature and extent as any duly perfected and unavoidable pre-petition liens

9    described in recitals B and C of the Stipulation, held by the Bank as of the Petition

10   Date.  Except as otherwise set forth herein, by the Bankruptcy Court's Order

11   approving the Stipulation, Bank's replacement lien in the DIP Account will be

12   deemed valid, enforceable, and fully perfected, and no filing or recordation, or other

13   act in accordance with any applicable local, state or federal law is necessary to create

14   or perfect such lien.

15       (13)    No Effect on Priority.  Nothing contained in the Stipulation and any order

16   approving the Stipulation shall be deemed in any manner to affect the validity,

17   enforceability, extent and priority of the lien represented by the Loan Documents, by

18   reason of any claim of equitable subordination or otherwise, as such terms and

19   requirements are deemed necessary to adequately protect the interest of Bank in the

20   Cash Collateral.

21       (14)    No Further Encumbrances.  The Debtor shall not grant, nor suffer to be

22   granted, any lien or encumbrance on the Collateral, Cash Collateral or DIP Accounts

23   unless and until the Bank's secured claim is paid in full, or unless the Bank has

24   consented in writing to such lien or encumbrance, or unless it is so ordered by the

25   Bankruptcy Court.

26       (15)    No Admission Regarding Adequate Protection.  Nothing contained in the

27   Stipulation or the order approving same shall be deemed to constitute an admission

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

that Bank is adequately protected except as to Debtor's use of Cash Collateral as prescribed in the Stipulation.

(16)   Interim Value of Property.   The rights granted in the Stipulation and requested herein are for the purpose of Debtor's use of the Collateral and to afford adequate protection to Bank of any such collateral interest it may have in such Collateral and/or Cash Collateral.   The parties have not reached an agreement regarding the value of the Collateral for purposes of the amount of the Bank's allowed secured claim and future adequate protection payments.   Nothing contained in the Stipulation shall be deemed to constitute an admission by either party regarding the value of the Collateral.

(17)   Reporting and Inspection of Books and Records.   Debtor agrees to permit Bank to inspect the Debtor's business location(s), Bank's Collateral and the books and records of Debtor in accordance with the terms of the Loan Documents.   Bank, its representatives, employees, consultants and attorneys shall be granted access to the Debtor's business location(s), as allowed by the Loan Documents, for purposes of inspection and appraisal, and Debtor shall advise Bank, upon request, of the location of the Collateral and the DIP Accounts.

(18)   Insurance.   Debtor shall maintain insurance that complies with the requirements as set forth within the guidelines of the Office of the United States Trustee and that is consistent with the coverage required in the Loan Documents. Debtor shall make any necessary changes to indicate Bank as the loss payee on such insurance and shall provide evidence of the same to Bank

(19)   Termination.  The Debtor's rights to use Cash Collateral shall terminate upon the occurrence of any of the following events as listed in (20) – (24) ("Termination Event"):

(20)   Entry of an order (i) granting any creditor other than Bank relief from the automatic stay to exercise any rights which may impair Bank's Collateral under any

of the Loan Documents, (ii) converting the case to Chapter 7, (iii) dismissing the case, or (iv) appointing a trustee;

(21)    Debtor's filing of a motion to abandon any portion of the Collateral without the Bank's consent;

(22)    Debtor's failure to maintain insurance as required above;

(23)    Entry of an order granting Bank relief from the automatic stay; and

(24)    The occurrence of an event of default by Borrower of the obligations imposed by the Stipulation resulting in the Court's issuance of an order, following emergency motion by Bank, terminating further cash collateral use.

(25)    No Prejudice.  The Stipulation is without prejudice to Bank's, or Debtor's right to seek any relief from the Bankruptcy Court or any other court that they deem appropriate.  The Stipulation is for the limited purpose of providing for Debtor's use of the Cash Collateral on an interim basis and nothing contained in the Stipulation, or any delay or failure by any party in exercising any right, power or privilege under the Stipulation, shall prejudice or be construed as a waiver of or affecting or impairing any rights, remedies, defaults, claims or admissions, which either Bank or Debtor may have against the other.

(26)    Attorneys' Fees.  In any action or proceeding to interpret or enforce the Stipulation, including any appeal therefrom, the prevailing party shall be entitled to recover from the losing party all of the prevailing party's reasonable costs and expenses, including fees of attorneys and other professionals, to the extent permitted under the Bankruptcy Code, including Bankruptcy Code Section 506(b).

(27)    Term of Stipulation.  The Stipulation shall be in full force and effect until November 2, 2018, unless extended or shortened as provided herein or within the Stipulation or otherwise ordered by the Court.  The Stipulation may be extended if approved in writing by Bank and Debtor.

1     (28)   <u>Automatic Stay</u>. The automatic stay pursuant to Section 362 of the

2 Bankruptcy Code is lifted and modified only to the extent necessary to permit the

3 actions and events set forth within the Stipulation and as requested herein.

4 The Court Should Approve the Debtor's Use of Cash Collateral.

5 A Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code.[2]

6 Section 363(c)(1) permits a debtor to use, sell or lease property in the ordinary course of business.

7 Further, a debtor in possession has all of the rights and powers of a trustee with respect to property

8 of the estate, including the right to use property of the estate in compliance with Section 363. *See*

9 11 U.S.C. § 1107.

10 Cash collateral is defined in Section 363(a) as "cash, negotiable instruments, documents of

11 title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate

12 and an entity other than the estate have an interest. . . ." 11 U.S.C. § 363(c)(2). Cash Collateral

13 between the Debtor and Bank is also further defined above.

14 Section 363(c)(2) further provides that a debtor in possession may use cash collateral if: (a)

15 each entity has an interest in such cash collateral consents; or (b) the court, after notice and a hearing,

16 authorizes such use, sale or lease in accordance with the provisions of this section. *See* 11 U.S.C §

17 363(c)(2). Here, (a) has been fulfilled by the Stipulation between the Debtor and Bank and (b) can

18 be satisfied by an order from this Court, after notice and a hearing, authorizing the Debtor's use of

19 Cash Collateral.

20 The Debtor submits that all of the expenses that it proposes to pay from the Cash Collateral

21 in accordance with the proposed Budget are necessary in order to pay the administrative overhead

22 expenses to operate the business through the sale process, thus maximizing the value of the assets

23

24

25

26

27

28

---

[2] Section 363(c) provides:

(1) If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing. 11 U.S.C. § 363(c)(1).

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1  and increasing the recovery to the Debtor and its Estate, its creditors, stakeholders and all other

2  parties-in-interest.

3      The only source of revenue available to the Debtor to use to pay to maintain and preserve

4  the Debtor's business throughout the sale process is the Cash Collateral.  The Debtor's inability to

5  pay those expenses would cause immediate and irreparable harm to the Debtor and its Estate, its

6  creditors, stakeholders and all other parties-in-interest in this Case.  Based on the foregoing, the

7  Court should grant the Debtor the ability to use Cash Collateral to pay for those expenses in its

8  ordinary course of business throughout the sale process.

9  **A.**     **The Secured Creditors Are Adequately Protected By the Debtor's Use of Cash**

10     **Collateral.**

11     Pursuant to Section 363(e) of the Bankruptcy Code, the Court may condition the use of

12  property, including cash collateral, as necessary to provide adequate protection of an entity's interest

13  in such cash collateral.  *See* 11 U.S.C. § 363(e).

14     To the extent that an entity has a valid security interest in the revenues generated by property,

15  those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code.  *See* 11

16  U.S.C. § 363(a).  Pursuant to Section 363, a court may authorize the debtor to use a secured

17  creditor's cash collateral if the secured creditor is adequately protected.  *See e.g. In re Mellor*, 734

18  F.2d 1396, 1400 (9th Cir. 1984).

19     Here, via the Stipulation between the Debtor and Bank, Bank has agreed to accept a

20  replacement lien.  Section 361 of the Bankruptcy Code provides that when adequate protection is

21  required, it *may* be provided by ". . . . (2) providing to such entity an additional or replacement lien

22  to the extent that such stay, use, sale, lease or grants results in a decrease in the value of such entity's

23  interest in such property. . . ."  *See* 11 U.S.C. § 361.

24     As described herein and in the Garcia Declaration, and in accordance with the

25  aforementioned authorities, the Debtor's continued operations, including the use of Cash Collateral,

26  will adequately protect the secured creditors as the Debtor continues to run its business.

27  Additionally, Bank will be adequately protected by the replacement liens as contemplated by the

28  Stipulation.  Thus, because all secured creditors will be adequately protected and the use of Cash

1   Collateral in this Case is critical to the Debtor's ability to effectively implement a chapter 11

2   restructuring and sale process for the benefit of the Debtor and its Estate, its creditors, stakeholders,

3   and all other parties-in-interest, the Court should grant this Motion for the Debtor's use of Cash

4   Collateral.

5       **V.      THE RELIEF REQUESTED HEREBY IS JUSTIFIED ON AN EMERGENCY**

6                                                   **BASIS**

7           The authorization to use Cash Collateral pending a final hearing will preserve the value of

8   the Debtor's business only if authorization is granted immediately.  Section 363(c)(3) of the

9   Bankruptcy Code and Bankruptcy Rule 4001(b)(2) require the Court to schedule a cash collateral

10  hearing in accordance with the needs of the debtor and conduct a preliminary hearing for the purpose

11  of authorizing the use of cash collateral to avoid irreparable harm.

12          In this Case, emergency use of Cash Collateral by the Debtor, pending a final hearing, is

13  necessary to prevent irreparable harm to the Debtor.  As noted above, New York Case No.

14  652238/2018 has already frozen the Debtor's accounts for over two weeks.  If there is any further

15  interruption in the Debtor's operations, the value of its business will be significantly impaired to the

16  serious detriment of the Debtor and its Estate, its creditors, stakeholders and all other parties-in-

17  interest.

18          On the other hand, the secured creditors will suffer little, if any harm if interim relief is

19  granted and in fact, the largest  and undisputed secured creditor in this Case, Bank, has joined the

20  Stipulation to this Motion in support of this Motion and the Debtor's use of Cash Collateral.  To the

21  extent that a secured creditor has an interest in property of the Estate which is entitled to adequate

22  protection, that interest is adequately protected by the preservation of the value of its collateral

23  through the Debtor's continued business operations and Bank's proposed replacement liens.

24          Additionally, the Motion and the proposed order thereon seek two of the provisions

25  identified in the mandatory court-approved finance statement filed concurrently herewith in

26  accordance with Local Bankruptcy Rule 4001-2(a).

27  ///

28  ///

## VI.    <u>CONCLUSION</u>

**WHEREFORE**, based upon the foregoing, the Debtor respectfully requests that the Court enter an order: (1) approving the use of cash collateral on an emergency interim basis, subject to the Stipulation and Budget filed with this Motion; (2) granting adequate protection to the Debtor's secured creditors with an interest in cash collateral on an interim basis; (3) setting a final hearing on this Motion; and (4) granting such other relief as the Court deems proper.

Respectfully submitted,

**SHULMAN HODGES & BASTIAN LLP**

DATED:  October 2, 2018                    By: _____*/s/ Leonard M. Shulman*_____
                                                  Leonard M. Shulman
                                                  Proposed Attorneys for Technology Solutions &
                                                  Services, Inc., Debtor and Debtor in Possession

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

# DECLARATION

## DECLARATION OF JULIO C. GARCIA, JR.

I, Julio C. Garcia, Jr., declare as follows:

1.      I am the President of Technology Solutions & Services, Inc., a California corporation, the debtor and debtor in possession (the "Debtor" or "TSSI"), and am one of the persons responsible for the administration of the Debtor.  I am over 18 years of age and have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto. I am also personally familiar with, and am custodian of, the records of the Debtor as they pertain to the financial records set forth herein.  The records of the Debtor are made by employees or agents of the Debtor who report to me and who have a business duty to enter the records of the Debtor accurately and at or near the time of the event which they record.

2.      I make this Declaration in support of the *Debtor and Debtor in Possession's Notice of Motion and Emergency Motion for (a) Order Approving Stipulation for Interim Use of Cash Collateral; (b) Granting of Adequate Protection; (c) Granting Related Relief* ("Motion") and the *Stipulation for Interim Use of Cash Collateral and Adequate Protection* (the "Stipulation").

3.      TSSI has determined that it can no longer operate on a profitable basis and cannot internally reorganize its affairs.  As previously noted, concurrently filed with this Motion is TSSI's Sale Motion. The proposed sale is essentially a short sale of Bank's collateral resulting in approximately $500,000 being carved out for the benefit of general unsecured creditors.  Bank of America will receive $7 million at closing on account of over $12 million of first priority secured debt.

4.      I also understand that the Debtor's accounts have now been frozen for well over two weeks – due to a restraining order placed on the Debtor from American Express in New York on September 12, 2018 (Case No. 652238/2018) - and the Stipulation for the immediate use of Cash Collateral is the only way for the Debtor to continue operating its business.

5.      Based on the above, the Debtor has no other choice but to seek bankruptcy protection in order to preserve as much of its cash as possible, proceed with the sale of assets, and propose a plan to treat the Debtor and its Estate, its creditors, stakeholders, and all parties-of-interest equally and within their best interests.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

18

6.  I believe, the sale process cannot proceed and the deal with Bank, the Debtor's largest secured creditor, cannot occur without the Debtor's use of Cash Collateral.

7.  I am also informed that the relief requested by the Debtor pertaining to the use of Cash Collateral contains two provisions noted in Rule 4001 of the Bankruptcy Rules or Local Bankruptcy Rule 4001-2, as noted within the statement filed with this Motion.

8.  I believe that the Debtor's ability to preserve the full value of its business and assets and ultimately successfully engage in the sale process and successfully reorganize depends fully upon the Debtor's continued operations under the normal course of business, which cannot occur without the Debtor's use of Cash Collateral.

9.  I believe that the Debtor's use of Cash Collateral is in the best interest of the Debtor and its Estate, its creditors, stakeholders, and all other parties-in-interest.

10.  I have reviewed the Stipulation and the Budget and believe approval of those documents is within the best interests of the Debtor and its Estate, its creditors, stakeholders, and all parties-in-interest.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 1, 2018, at San Bernardino, California.

_____
Julio C. Garcia, Jr.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

19

# EXHIBIT 1

1  MICHELE SABO ASSAYAG, SBN 109540
   JOSHUA R. DUFFY, SBN 269478
2  ASSAYAG ❖ MAUSS
   A Limited Liability Partnership
3  2915 Red Hill Avenue, Suite A200
   Costa Mesa, California 92626
4  Telephone: (714) 427-6800
   Facsimile: (714) 427-6888
5  efiling@amlegalgroup.com

6  Attorneys for Secured Creditor,
   BANK OF AMERICA, N.A.
7

8              UNITED STATES BANKRUPTCY COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                    RIVERSIDE DIVISION

11

12  In re                                )  Case No.
                                         )
13  TECHNOLOGY SOLUTIONS & SERVICES,     )  (Chapter 11 Proceeding)
    INC., a California corporation,      )
14                                       )  **STIPULATION FOR INTERIM USE OF CASH**
                                         )  **COLLATERAL AND ADEQUATE**
15          Debtor and Debtor-In-Possession. ) **PROTECTION**
                                         )
16                                       )  [11 U.S.C. Section 363]
                                         )
17                                       )  Hearing:
                                         )  Date: _____ ____, 2018
18                                       )  Time: __:__ a./p.m.
                                         )  Courtroom: ____
19                                       )            3420 Twelfth Street
                                         )            Riverside, CA 92501
20                                       )
    _____)
21

22

23      This STIPULATION FOR INTERIM USE OF CASH COLLATERAL AND ADEQUATE

24  PROTECTION ("Stipulation") is made by and between Technology Solutions & Services, Inc., debtor

25  and debtor-in-possession in the above-captioned bankruptcy case ("Debtor"), and Bank of America,

26  N.A. ("Bank" or "Secured Creditor"), a secured creditor holding liens against property of Debtor's

27  estate.  Bank asserts that these liens arise from the following transactions, facts and circumstances.

28

# Exhibit 1

## **RECITALS**

A.    On or about June 13, 2013, Bank and Debtor entered into that certain Loan Agreement, which was subsequently amended pursuant to three separate amendments, the most recent being Amendment No. 3 to Loan Agreement dated November 3, 2017 (collectively, "Loan Agreement").  Pursuant to the Loan Agreement, Bank agreed to extend credit to Debtor upon terms and conditions contained therein. Bank extended a revolving line of credit to Debtor in the maximum principal amount of $15,000,000.00, a separate non-revolving line of credit in the sum of $1,000,000.00, and two letters credit totaling $1,000,000.00, which are separately cash-secured. In addition thereto, pursuant to a separate corporate credit card agreement, Debtor was issued a credit card by Bank under which there is a separate approximate balance of $900,000.00 (collectively, "Loans").

B.    In connection with the Loan Agreement, Debtor executed that certain Security Agreement dated June 13, 2013 ("Security Agreement"), pursuant to which substantially all of the personal property of the Debtor was granted as collateral for the Loan Agreement ("Collateral"). The definitions of terms not set forth specifically in this Stipulation shall have the same meaning as set forth in the Loan Agreement and Security Agreement.

C.    Bank properly perfected its security interest in the Collateral by filing a UCC Financing Statement with the California Secretary of State, initially filed on October 20, 2010 as Filing No. 107248928778, and a continuation thereof on April 26, 2015 as Filing No. 1574616000 (together, the "Financing Statements").

D.    Hereinafter, the Loan Agreement, Security Agreement, and Financing Statements, together with all other documents executed in connection with the Loan Agreement and the obligations set forth in Recital A, shall be referred to collectively as the "Loan Documents."

E.    Debtor is the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case, filed on October 2, 2018 ("Petition Date"), assigned case number _____ (the "Case") and pending before the Honorable _____, United States Bankruptcy Judge, in the  United States Bankruptcy Court for the Central District of California.

ASSAYAG ❖ MAUSS

# **Exhibit 1**

F.    Bank asserts that the Collateral, which it contends consists of substantially all of Debtor's personal property, and all profits derived therefrom, is the Bank's cash collateral pursuant to Sections 552(b) and 363(a) of the Bankruptcy Code ("Cash Collateral").  Debtor desires to use the Cash Collateral to maintain Debtor's ongoing business and has filed an Emergency Motion for an Order Approving this Stipulation (the "Motion").  Subject to the Court's approval, the parties desire to memorialize their agreement regarding Debtor's interim use of Bank's Cash Collateral, pending a final hearing on Debtor's potential continued cash collateral use thereafter.

G.    As of September 28, 2018 (the "Petition Date"), Bank alleges that there was owing and unpaid to Bank under the revolving line of credit, the principal balance of approximately $10,900,000.00, under the non-revolving line of credit, a principal balance of approximately $466,666.36, $1,000,000.00 outstanding under the letters of credit issued on Debtor's behalf, and a credit card obligation of approximately $900,000.00, which sums are evidenced by the Loan Documents and which amounts are not subject to defense, offset, reduction or counter-claim.  These sums are in addition to accruing interest, attorneys' fees and costs and other miscellaneous fees and costs.

H.    Bank asserts that it holds a valid, perfected, enforceable and unavoidable security interest in, without limitation, all of the Cash Collateral.  Accordingly, pursuant to Sections 552(b), 363(a) and 363(c)(2) of the Bankruptcy Code, Bank asserts that the Debtor is prohibited from using the Cash Collateral absent Bank's consent to such use or a court order authorizing such use.  Debtor has sought such authority pursuant to the Motion.

I.    The parties hereto enter into this Stipulation to enable the Debtor to use Bank's Cash Collateral in the operation of Debtor's business as more particularly set forth below. Debtor represents that, after the filing of its Chapter 11 petition and prior to the execution of this Stipulation, no Cash Collateral of Bank has been utilized by the Debtor that is not comprehended within the framework of the budget attached hereto as Exhibit "1."

NOW, THEREFORE for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

# Exhibit 1

1

**AGREEMENT**

2    1.    Recitals.  The Recitals are incorporated herein by this reference.  The parties

3 agree that the matters set forth in the Recitals are true and correct, provided, however, that the matters

4 set forth in the Recitals shall not be considered binding on or admissions by any party not a signatory

5 to this Stipulation, including, without limitation, any trustee that may be appointed under the

6 Bankruptcy Code.

7    2.    Definition of Cash Collateral. The term "Cash Collateral," as that term is used

8 in this Stipulation, includes, without limitation, all of the pre-petition and post-petition proceeds

9 derived from or in connection with the Collateral.  Bank holds a valid, enforceable, perfected and

10 unavoidable security interest and lien in the Cash Collateral within the meaning of Sections 552(b) and

11 363(a) of the Bankruptcy Code whether existing pre-petition or post-petition, and whether or not in the

12 possession, custody or control of the Debtor.

13    3.    Use of Cash Collateral.  Debtor shall be entitled to use the Cash Collateral

14 without further order of this Court or written permission of Bank, to pay the reasonable, ordinary and

15 necessary expenses of operating and maintaining the Debtor's business ("Ordinary Expenses"), as set

16 forth in the proposed weekly budget attached hereto as Exhibit "1" and any subsequent budget(s)

17 issued by Debtor and approved in writing by Bank ("Budget"), subject to the terms and conditions set

18 forth below.  The Budget shall include sufficient information to allow Bank to make an informed

19 determination regarding such Budget.

20    a.    All Cash Collateral derived from and/or produced by the Collateral

21 heretofore collected and in possession or under the control of the Debtor and/or its agents or

22 employees and all Cash Collateral hereafter collected shall be deposited, upon receipt by the Debtor or

23 its agents or employees, in currently existing accounts held by Debtor at Bank, with account numbers

24 ending in 3300, 3296 and 6584, respectively, and which accounts shall become the DIP Accounts.

25    b.    The Cash Collateral shall not be used by the Debtor or its agents or

26 employees, or any other person or party, for any purpose, other than as is specifically provided in this

27 Stipulation and the Budget attached hereto.  Debtor shall not withdraw any funds from the DIP

28

ASSAYAG ❖
MAUSS

**Exhibit 1**

Accounts without Bank's express written consent or Bankruptcy Court authorization, except to pay an item reflected in the Budget.

        c.    The Debtor may not use Cash Collateral for the purpose of making any capital investment or improvement of or in connection with its business or for any other purpose without the prior written authorization of Bank or Bankruptcy Court Order, except as may be reflected in the Budget.

        d.    The Debtor's right to use Cash Collateral shall continue through and including November 2, 2018 according to the terms set forth herein, unless such right terminates earlier upon the occurrence of a Default as defined in Paragraph 13, herein.

        e.    Debtor may not exceed the Budget on a weekly basis for any disbursement category by more than ten percent (10%) as determined at the end of each calendar week set forth in the Budget. The 10% variance will be measured on a cumulative basis, with any savings or deficits carried forward to the next period.

        f.    Except as provided in this Stipulation, Debtor must request and obtain Bank's prior written consent or Bankruptcy Court authorization to use any Cash Collateral to pay for any unbudgeted expenses or any budgeted expenses in excess of the budgeted amounts set forth in the Budget attached hereto, except for those items within  the permitted variance referenced above.  All requests from Debtor pursuant to this paragraph shall be in writing and shall contain sufficient detail for Bank to make an informed decision with respect to the consent requested.

        4.    <u>Reporting</u>.  Debtor shall provide to Bank a weekly report of Cash Receipts and Disbursements, covering the week ending the preceding Saturday, showing the budgeted and actual figures and variance for each for that week and period-to-date from the Petition Date.  This report will be produced by the 4th business day following each preceding Saturday.

        5.    <u>Replacement Lien.</u>  Bank shall be granted a perfected, and enforceable replacement lien in all of Debtor's post-petition assets, Collateral and Cash Collateral now owned or hereafter acquired.  The replacement liens granted to Bank shall secure replacement to Bank of the actual amount of Cash Collateral utilized by Debtor in the period subsequent to the Petition Date.  The replacement lien shall be of the same validity, order of priority, nature and extent as any duly

ASSAYAG ✤
MAUSS

**Exhibit 1**

perfected and unavoidable pre-petition liens described in recitals B and C, above held by the Bank as of the Petition Date.  Except as otherwise set forth herein, the replacement lien  granted herein is and shall be valid, enforceable and fully perfected, and no filing or recordation, or other act in accordance with any applicable local, state or federal law is necessary to create or perfect such lien .

6.    <u>Lien on DIP Accounts</u>.  Bank shall be granted a perfected and enforceable replacement lien in the DIP Accounts opened pursuant to Paragraph 3.a.  The replacement liens granted to Bank shall secure replacement to Bank of the actual amount of Cash Collateral utilized by Debtor in the period subsequent to the Petition Date.  The replacement lien shall be of the same validity, order of priority, nature and extent as any duly perfected and unavoidable pre-petition liens described in recitals B and C, above held by the Bank as of the Petition Date.  Except as otherwise set forth herein, by the Bankruptcy Court's Order approving this Stipulation, Bank's replacement lien in the DIP Account will be deemed valid, enforceable, and fully perfected, and no filing or recordation, or other act in accordance with any applicable local, state or federal law is necessary to create or perfect such lien.

7.    <u>No Effect on Priority</u>.  Nothing contained in this Stipulation and any order approving this Stipulation shall be deemed in any manner to affect the validity, enforceability, extent and priority of the lien represented by the Loan Documents, by reason of any claim of equitable subordination or otherwise, as such terms and requirements are deemed necessary to adequately protect the interest of Bank in the Cash Collateral.

8.    <u>No Further Encumbrances</u>.  The Debtor shall not grant, nor suffer to be granted, any lien or encumbrance on the Collateral, Cash Collateral or DIP Accounts unless and until the Bank's secured claim is paid in full, or unless the Bank has consented in writing to such lien or encumbrance, or unless it is so ordered by the Bankruptcy Court.

9.    <u>No Admission Regarding Adequate Protection</u>.  Nothing contained in the Stipulation or the order approving same shall be deemed to constitute an admission that Bank is adequately protected except as to Debtor's use of Cash Collateral as prescribed in the Stipulation.

10.    <u>Interim Value of Property</u>.  The rights granted in this Stipulation are for the purpose of Debtor's use of the Collateral and to afford adequate protection to Bank of any such

# Exhibit 1

1    collateral interest it may have in such Collateral and/or Cash Collateral.  The parties have not reached

2    an agreement regarding the value of the Collateral for purposes of the amount of the Bank's allowed

3    secured claim and future adequate protection payments.  Nothing contained in this Stipulation shall be

4    deemed to constitute an admission by either party regarding the value of the Collateral.

5    11.    Reporting and Inspection of Books and Records.  Debtor agrees to permit Bank

6    to inspect the Debtor's business location(s), Bank's Collateral and the books and records of Debtor in

7    accordance with the terms of the Loan Documents. Bank, its representatives, employees, consultants

8    and attorneys shall be granted access to the Debtor's business location(s), as allowed by the Loan

9    Documents, for purposes of inspection and appraisal, and Debtor shall advise Bank, upon request, of

10    the location of the Collateral and the DIP Accounts.

11    12.    Insurance.  Debtor shall maintain insurance that complies with the requirements

12    as set forth within the guidelines of the Office of the United States Trustee and that is consistent with

13    the coverage required in the Loan Documents.  Debtor shall make any necessary changes to indicate

14    Bank as the loss payee on such insurance and shall provide evidence of the same to Bank

15    13.    Termination.  The Debtor's rights to use Cash Collateral shall terminate upon

16    the occurrence of any of the following events ("Termination Event"):

17    a.    Entry of an order (i) granting any creditor other than Bank relief from

18    the automatic stay to exercise any rights which may impair Bank's Collateral under any of the Loan

19    Documents, (ii) converting the case to Chapter 7, (iii) dismissing the case, or (iv) appointing a trustee;

20    b.    Debtor's filing of a motion to abandon any portion of the Collateral

21    without the Bank's consent;

22    c.    Debtor's failure to maintain insurance as required above;

23    d.    Entry of an order granting Bank relief from the automatic stay; and

24    e.    The occurrence of an event of default by Borrower of the obligations

25    imposed by this Stipulation resulting in the Court's issuance of an order, following emergency motion

26    by Bank, terminating further cash collateral use.

27    14.    No Prejudice.  This Stipulation is without prejudice to Bank's, or Debtor's right

28    to seek any relief from the Bankruptcy Court or any other court that they deem appropriate.  This

ASSAYAG ❖
MAUSS

# Exhibit 1

Stipulation is for the limited purpose of providing for Debtor's use of the Cash Collateral on an interim basis and nothing contained in this Stipulation, or any delay or failure by any party in exercising any right, power or privilege under the Stipulation, shall prejudice or be construed as a waiver of or affecting or impairing any rights, remedies, defaults, claims or admissions, which either Bank or Debtor may have against the other.

15.    Attorneys' Fees.    In any action or proceeding to interpret or enforce this Stipulation, including any appeal therefrom, the prevailing party shall be entitled to recover from the losing party all of the prevailing party's reasonable costs and expenses, including fees of attorneys and other professionals, to the extent permitted under the Bankruptcy Code, including Bankruptcy Code Section 506(b).

16.    Term of Stipulation.    This Stipulation shall be in full force and effect until November 2, 2018, unless extended or shortened as provided herein or otherwise ordered by the Court. This Stipulation may be extended if approved in writing by Bank and Debtor.

17.    Automatic Stay.    The automatic stay pursuant to Section 362 of the Bankruptcy Code is lifted and modified only to the extent necessary to permit the actions and events set forth herein.

18.    General Provisions.

a.    Waiver.    No delay or failure of Bank in exercising any right, power, or privilege, nor any single or partial exercise thereof, or any abandonment or discontinuance of steps to enforce such a right, power, or privilege shall be deemed to be a waiver of any right, power, or privilege.    The rights and remedies of Bank hereunder are cumulative.    Any waiver or consent by Bank of any Default hereunder, or any modification or amendment hereof, must be in writing.

b.    Further Assurances.    All parties will execute and deliver all such further documents, and take such further action as any party may from time to time reasonably request for the preservation to the parties of their rights hereunder and under all related agreements.

c.    Notices.    All notices, requests or, demands given or made upon the respective parties shall be deemed to have been given or made when emailed as follows:

ASSAYAG ✣
MAUSS

**Exhibit 1**

| | | |
|---|---|---|
| To Bank: | Anthony Varone (anthony.varone@bankofamerica.com) | |
| With a copy to: | Michele S. Assayag, Esq. (michelea@amlegalgroup.com) | |
| To Debtor: | Julio C. Garcia (junior@tssius.com) | |
| With a copy to: | Leonard Shulman, Esq. (lshulman@shbllp.com) | |

d.    <u>Assignability</u>.  This Stipulation shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns except that Debtor's rights hereunder are not assignable expressly, explicitly, by operation of law, or otherwise.

e.    <u>Binding Effect</u>.  Except as otherwise set forth herein, the terms and conditions of this Stipulation shall be *res judicata* and binding upon any successor estate and upon any trustee appointed herein or in any successor estate.

f.    <u>Neutral Construction</u>.  Each of the parties hereto has been involved in the negotiation of this Stipulation and has received legal advice from its attorneys with respect to the execution of this Stipulation.  The parties hereto shall be considered to be the joint authors of this Stipulation.

g.    <u>Integration</u>.  Except as expressly provided in this Stipulation, this Stipulation is the final written expression of all of the agreements, conditions and covenants among the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements and negotiations among the parties and/or their respective counsel with respect to the subject matter covered hereby.

h.    <u>Bankruptcy Court Order</u>.  This Stipulation shall be submitted forthwith to the Bankruptcy Court for approval, and, in that regard, the Debtor and/or Bank may give such notice and opportunity to be heard as is required under the Bankruptcy Rules and other applicable law.

i.    <u>Binding on Successors</u>.  This Stipulation shall be binding on the Debtor and Debtor-in-Possession, and any and all assigns and/or successors-in-interest to the Debtor, including but not limited to any trustee appointed in the Chapter 11 proceeding, or any trustee in a Chapter 7 proceeding if the case is converted, and in any future bankruptcy proceeding in which any of the collateral is claimed and/or determined to be property of the estate; provided however, that this Stipulation is not intended to adjudicate any other secured or unsecured creditor's respective rights.

ASSAYAG ❖
MAUSS

**Exhibit 1**

1   Moreover, notwithstanding the foregoing, no Creditors Committee appointed in this case, nor any

2   trustee appointed under the Bankruptcy Code shall be bound by any provisions in the Stipulation

3   regarding the validity, extent, and priority of the Bank's prepetition liens and security interests.

4                      j.      <u>No Agreement to Provide Financial Accommodation</u>.  No provision of

5   this Stipulation shall in any way impose upon Bank any duty or obligation to provide any financing or

6   financial accommodation to Debtor or any other party to collect, sell, lease or otherwise dispose of any

7   of the Cash Collateral, to proceed against any party, person, individual or entity, to proceed against or

8   exhaust any security held by Bank, or any other party, person, individual or entity, or to otherwise

9   pursue any action, right or remedy in Bank's power whatsoever.

10                     k.      <u>Execution in Counterparts</u>.  This Stipulation may be executed in several

11  counterparts and any and all such executed counterparts shall constitute a single agreement binding on

12  each party hereto.  Furthermore, facsimiles or electronic versions of signatures may be taken as the

13  actual and original signatures.

14

15  **<u>IT IS SO STIPULATED</u>.**

16

17  DATED: October 2, 2018          ASSAYAG ❖ MAUSS
                                       A Limited Liability Partnership

18

19                                     By:  _Michele S. Assayag_

20                                       MICHELE SABO ASSAYAG
                                       Attorneys for Secured Creditor,

21                                     BANK OF AMERICA, N.A.

22  DATED: October 2, 2018          SHULMAN HODGES & BASTIAN LLP

23

24                                     By:  _____

25                                     LEONARD M. SHULMAN
                                       Proposed Bankruptcy Counsel for Debtor and

26                                     Debtor in Possession

27

28

ASSAYAG ❖
MAUSS

10

# Exhibit 1

# EXHIBIT 1

## Exhibit 1

| Weekly budget | | | | Estimated Close | |
|---|---|---|---|---|---|
| | 5-Oct | 12-Oct | 19-Oct | 26-Oct | 2-Nov |
| Cash beginning | 1,348,000 | 823,000 | 333,000 | 327,000 | 251,000 |
| | | | | | |
| Receipts - HP | - | - | - | - | - |
| Receipts - Sale of Product | - | - | 549,000 | 549,000 | 549,000 |
| Receipts - Other (bonepile/parts) | 100,000 | 100,000 | 10,000 | 10,000 | 10,000 |
| | | | | | |
| Total Receipts | 100,000 | 100,000 | 559,000 | 559,000 | 559,000 |
| | | | | | |
| Payments - Juarez Payroll | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| Payments - Juarez Other | 125,000 | 45,000 | 85,000 | 85,000 | 80,000 |
| Payments SB Payroll | - | 70,000 | - | 70,000 | - |
| Payments SB Other | 50,000 | 25,000 | 30,000 | 30,000 | 30,000 |
| HP Payments | 225,000 | 225,000 | 225,000 | 225,000 | 225,000 |
| Other Material/Components | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 |
| | | | | | |
| Total Dispursements | 625,000 | 590,000 | 565,000 | 635,000 | 560,000 |
| | | | | | |
| Cash Flow | (525,000) | (490,000) | (6,000) | (76,000) | (1,000) |
| | | | | | |
| Ending Cash | 823,000 | 333,000 | 327,000 | 251,000 | 250,000 |

**Exhibit 1**