1   Leonard M. Shulman - Bar No. 126349
    Melissa Davis Lowe – Bar No. 245521
2   Ryan Baggs – Bar No. 301240
    **SHULMAN HODGES & BASTIAN LLP**
3   100 Spectrum Center Drive, Suite 600
    Irvine, California 92618
4   Telephone:    (949) 340-3400
    Facsimile:    (949) 340-3000
5   Email: LShulman@shbllp.com
            MLowe@shbllp.com
6           RBaggs@shbllp.com

7   Proposed Attorneys for Technology Solutions & Services, Inc.
    the Debtor and Debtor in Possession

8

9                   **UNITED STATES BANKRUPTCY COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

11

| | |
|---|---|
| In re | Case No.  6:18-bk-18339-MH |
| **TECHNOLOGY SOLUTIONS & SERVICES, INC., a California corporation,** | Chapter  11 |
| | **DISCLOSURE STATEMENT FOR CHAPTER 11 LIQUIDATING PLAN PROPOSED BY THE DEBTOR** |
| Debtor. | |

**Hearing on Approval of the Disclosure Statement:**
Date:    December 18, 2018
Time:    2:00 p.m.
Place:   Courtroom 303
         3420 Twelfth Street
         Riverside, California

**Hearing on Confirmation of the Liquidating Plan:**
Date:    To Be Set
Time:    To Be Set
Place:   Courtroom 303
         3420 Twelfth Street
         Riverside, California

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1

Disclosure Statement TSSI 001 v1

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ........................................................................................................... 5

    A. Background Information ...................................................................................... 5

    B. Summary of the Plan ........................................................................................... 6

    C. Confirmation of the Plan is in the Best Interests of the Debtor and its
        Creditors ............................................................................................................. 7

    D. Purpose of this Document ................................................................................... 8

    E. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing .............. 9

        1. Time and Place of the Confirmation Hearing ......................................... 9

        2. Deadline for Voting for or Against the Plan .......................................... 9

        3. Deadline for Objecting to the Confirmation of the Plan ...................... 10

        4. Person to Contact for More Information Regarding the Plan ................ 11

    F. Disclaimer ......................................................................................................... 11

II. DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION ............ 14

    A. Definitions ......................................................................................................... 14

    B. Interpretations, Computation of Time and Governing Law .................................. 23

        1. Undefined Terms ................................................................................. 23

        2. Rules of Interpretation ......................................................................... 23

        3. Computing Time Periods ..................................................................... 24

        4. Notices and Delivery of Documents ..................................................... 24

III. BACKGROUND ......................................................................................................... 25

    A. Description of the Debtor and its Business .......................................................... 25

        1. Background and Business Operations .................................................... 25

        2. The Debtor's Liabilities ....................................................................... 27

        3. The Debtor's Assets and the Sale ........................................................ 28

    B. Events Leading to Bankruptcy Filing .................................................................. 28

    C. Significant Events During the Case ..................................................................... 29

        1. Bankruptcy Proceedings ....................................................................... 29

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

2

|  |  |  |  |  |
|---|---|---|---|---|
| 1 |  |  | 2. | Other Legal Proceedings .................................................32 |
| 2 |  | D. | Procedures Implemented to Resolve Financial Problems ................32 |
| 3 |  | E. | Historical and Current Financial Condition of the Debtor .............32 |
| 4 | IV. | SUMMARY OF THE PLAN ............................................33 |
| 5 |  | A. | Overview ...............................................................33 |
| 6 |  | B. | Unclassified Claims ....................................................34 |
| 7 |  |  | 1. | Administrative Expenses ...........................................34 |
| 8 |  |  | 2. | Priority Tax Claims ...............................................36 |
| 9 |  | C. | Classified Claims .......................................................36 |
| 10 |  |  | 1. | Classes of Secured Claims .........................................36 |
| 11 |  |  | 2. | Classes of Priority Non-Tax Claims ...............................37 |
| 12 |  |  | 3. | Class of General Unsecured Claims ................................38 |
| 13 |  |  | 4. | Class of Equity Interests ..........................................39 |
| 14 |  | D. | Means of Effectuating the Plan .........................................40 |
| 15 |  |  | 1. | Funding of the Plan – Role of the Disbursing Agent ...............40 |
| 16 |  |  | 2. | Reservation of Rights Regarding Causes of Action .................40 |
| 17 |  | E. | Post-Confirmation Management – Disbursing Agent ....................41 |
| 18 |  | F. | Employment and Compensation of Professionals ........................42 |
| 19 |  | G. | Risk Factors ............................................................42 |
| 20 |  | H. | Post-Confirmation Estate Claims .......................................43 |
| 21 |  | I. | Objections to Claims ...................................................44 |
| 22 |  | J. | Pending Disputed General Unsecured Claims as of the Date of Distribution .......45 |
| 23 |  | K. | Unclaimed Distributions ...............................................45 |
| 24 |  | L. | Other Provisions of the Plan ...........................................47 |
| 25 |  |  | 1. | Executory Contracts and Unexpired Leases ........................47 |
| 26 |  |  | 2. | Changes In Rates Subject To Regulatory Commission Approval .....49 |
| 27 |  |  | 3. | Retention of Jurisdiction ..........................................49 |
| 28 |  | M. | Tax Consequences of the Plan .........................................51 |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

3

Disclosure Statement TSSI 001 v1

V.      CONFIRMATION REQUIREMENTS AND PROCEDURES..........................................52

    A.      Who May Vote Or Object ..............................................................................52

        1.      Who May Object To Confirmation Of The Plan....................................52

        2.      Who May Vote To Accept The Plan .......................................................53

        3.      What Is An Allowed Claim ....................................................................53

        4.      What Is An Impaired Claim ...................................................................53

        5.      Who Is Not Entitled To Vote .................................................................53

        6.      Who Can Vote In More Than One Class .................................................54

        7.      Votes Necessary To Confirm The Plan...................................................54

        8.      Votes Necessary For A Class To Accept The Plan .................................54

        9.      Treatment Of Non-Accepting Classes....................................................54

        10.     Request For Confirmation Despite Nonacceptance by Impaired
              Class(es)................................................................................................55

    B.      Liquidation Analysis .....................................................................................55

    C.      Feasibility .....................................................................................................59

VI.     EFFECT OF CONFIRMATION OF THE PLAN ............................................................59

    A.      Discharge.......................................................................................................59

    B.      Exculpation....................................................................................................59

    C.      Vesting of the Post-Confirmation Estate.......................................................60

    D.      Modification of the Plan ...............................................................................60

    E.      Post-Confirmation Status Reports ................................................................61

    F.      Post-Confirmation Conversion/Dismissal....................................................61

    G.      Substantial Consummation ...........................................................................62

DECLARATION OF JULIO GARCIA, JR...................................................................................63

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

# I.     INTRODUCTION

**A.     Background Information**

The Debtor[1] filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 2, 2018, Case No. 6:18-bk-18339-MH.

The Debtor has remained in possession of its property, and is operating and managing its business as a debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108.

No request for the appointment of a trustee or examiner has been made in this Case and no committee has been appointed.

The Bankruptcy Code requires that, at the time when the Plan is delivered to Creditors, the Plan be accompanied by a Disclosure Statement.  The purpose of a Disclosure Statement is to provide information of a kind, and in sufficient detail, so far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable a typical Creditor to make an informed judgment about the Plan and to enable such Creditor to determine whether it is in his best interest to vote for (accept) or against (reject) the Plan.

**THE DOCUMENT YOU ARE READING IS THE**

**DISCLOSURE STATEMENT FOR THE PLAN**

Chapter 11 of the Bankruptcy Code allows debtors, and under some circumstances, creditors and other parties in interest, to propose a Chapter 11 plan.  The plan may provide for debtors to reorganize by continuing to operate, to liquidate by selling assets of the Estate, or a combination of both.  The Debtor is proposing the Plan.

This Disclosure Statement contains a description of the Plan and other information relevant to the decision whether to vote to accept the Plan.  The Debtor encourages you to read this Disclosure Statement because it contains important information concerning the history of the Debtor's business operations, its financial affairs, its assets and liabilities, and it sets forth a summary of Plan terms.

This Disclosure Statement, including the schedules and exhibits attached hereto, is the only document authorized by the Court to solicit votes for or against the Plan. Most statements and

---

[1] The definitions of the capitalized terms used in this document are contained in Section II.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

1    financial information herein about the Debtor have been obtained from documents and information

2    contained in the Court's files in the Case and/or provided by the Debtor and/or Creditors.

3         The statements contained herein are made as of the date this Disclosure Statement is signed

4    below unless another time is specified.  The delivery or filing of this Disclosure Statement does not

5    constitute a representation that there has been no change in the information set forth in this

6    Disclosure Statement and the materials relied upon in preparation of this Disclosure Statement after

7    the date signed below.

8         Nothing contained herein shall constitute an admission of any fact or liability by any party.

9    THE DEBTOR RESERVES THE RIGHT TO AMEND OR UPDATE ANY PORTION OF THIS

10    DISCLOSURE STATEMENT PRIOR TO THE PLAN CONFIRMATION HEARING.

11    **B.**    **Summary of the Plan**

12         The Plan is a liquidating plan.  The purpose of the Plan is to orderly liquidate, collect and

13    maximize the value of the remaining assets of the Debtor and to make distributions to Allowed

14    Claims against the Debtor's Estate.  Upon the Effective Date, the property of the Debtor's Estate

15    shall vest in the Debtor.  Upon the Effective Date, Debtor's existing officers, directors, managers

16    and other managing agents shall resign and Disbursing Agent will be appointed to carry out the

17    provisions of the and make the Distributions to Creditors.  The Creditors will receive Distributions

18    from the Disbursing Agent who will liquidate or abandon, as appropriate, the Estate's assets to fund

19    the Plan.

20         **Distributions on Allowed Claims:  The Disbursing Agent will use the Net Liquidation**

21    **Proceeds to pay Allowed Claims as follows:**

22         (i)         First to pay (1) fees and expenses of the Disbursing Agent in an amount consistent

23                          with the Plan and (2) to pay Professionals to carry out the purposes of the Plan.

24                          However, the Professional Fees of Shulman Hodges & Bastian LLP and The

25                          Stapleton Group incurred prior to the Petition Date have been budgeted for in the

26                          Cash Collateral Stipulation and to the extent the Professional Fees exceed the

27                          budget under the Cash Collateral Stipulation, they will be paid by the Insider

28                          Guarantee.  The Bank Sale Carve-Out, Buyer Additional Consideration, IRS

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

6

Disclosure Statement TSSI 001 v1

1   Refund, FTB Refund, if any, and funds generated from liquidation of the Lenovo

2   Assets will not be used for payment of Professional Fees of Shulman Hodges &

3   Bastian LLP and The Stapleton Group.

4   (ii)   Next to pay holders of Allowed Administrative Expenses, if any, in an amount

5   equal to the Allowed amount of such Claims.

6   (iii)   Next to pay the holders of Allowed Priority Tax Claims, if any, in an amount

7   equal to the Allowed amount of such Claims, or alternatively (at the discretion of

8   the Disbursing Agent), such Claims shall be paid in full within five years of the

9   Petition Date.  None are anticipated.

10   (iv)   Next to pay the holders of Allowed Priority Non-Tax Claims, if any, in an amount

11   equal to the Allowed amount of such Claims.  Insiders of the Debtor have agreed

12   to waive the priority status of their respective Priority Non-Tax Claims and

13   therefore the Debtor anticipates that no Priority Non-Tax Claims will be paid

14   under the Plan.

15   (v)   Next to holders of Allowed General Unsecured Claims, on a pro-rata basis.

16   (vi)   The holders of Equity Interests shall not receive any Distributions under the Plan.

17   **C.**   **Confirmation of the Plan is in the Best Interests of the Debtor and its Creditors**

18   The Plan reflects discussions held between the Debtor and its lone undisputed Secured

19   Creditor, Bank, who has agreed to the short sale of substantially all of the Debtor's assets pursuant

20   to the APA and the Sale Order. The Debtor has determined that the Plan is the most practical and

21   efficient means of providing maximum recoveries to all Creditors. The only other conceivable

22   alternative to the Plan which has been considered and evaluated during the course of the Chapter 11

23   Case is the liquidation of the Debtor's assets under chapter 7 of the Bankruptcy Code.[2]  The thorough

24

25

26   [2] If the Plan or any other chapter 11 plan for the Debtor cannot be confirmed under section 1129(a) of the Bankruptcy
Code, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, in which event a trustee

27   would be elected or appointed to liquidate any remaining assets of the Debtor for distribution to creditors pursuant to
chapter 7 of the Bankruptcy Code. A chapter 7 trustee, who would lack the Debtor's knowledge of its affairs, would be

28   required to invest substantial time and resources to investigate the facts underlying the Claims filed against the Estate.
If a trustee is appointed and the remaining assets of the Debtor are liquidated under chapter 7 of the Bankruptcy Code,

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

7

Disclosure Statement TSSI 001 v1

consideration of this alternative to the Plan has led the Debtor to conclude that the Plan, in comparison, provides a greater recovery to Creditors on a more expeditious timetable and in a manner which minimizes inherent risks than any other course of action available to the Debtor.  In fact, the Plan as proposed, is the only possible way that the Creditors other than the Bank will collect anything in this Case.

IT IS THE OPINION OF THE DEBTOR THAT CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR'S ESTATE AND CREDITORS.    THEREFORE, THE DEBTOR RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.

**A MORE COMPLETE DESCRIPTION OF THE PROVISIONS OF THE PLAN AND THE MEANS OF EFFECTUATING THE PLAN ARE LOCATED AT SECTION IV., BELOW.**

D.    **Purpose of this Document**

This Disclosure Statement does not purport to be a complete description of the financial data pertaining to the Debtor's business and financial affairs, the applicable provisions of the Bankruptcy Code, or any other matter which may be deemed significant by Creditors.  Out of practical necessity, this Disclosure Statement represents an attempt to summarize extensive overall data, legal documents and legal principles, including provisions of the Bankruptcy Code, and to set them forth in understandable, readable form.

READ THIS DISCLOSURE STATEMENT CAREFULLY TO LEARN ABOUT:

1.  **WHO CAN VOTE OR OBJECT;**

2.  **THE TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN A LIQUIDATION;**

---

all creditors may receive Distributions of a lesser value on account of their Allowed Claims and likely would have to wait a longer period of time to receive such distributions than they would under the Plan. A liquidation under chapter 7 likely would result in smaller distributions made to creditors than that provided for in the Plan because of (i) additional administrative expenses involved in the appointment of a chapter 7 trustee and (ii) additional expenses and Claims, some of which would be entitled to priority, which would be generated during the chapter 7 liquidation.

Disclosure Statement TSSI 001 v1

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

**3.  THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE CASE;**

**4.  WHAT THE COURT WILL LOOK AT TO DECIDE WHETHER TO CONFIRM THE PLAN;**

**5.  THE EFFECT OF CONFIRMATION; AND**

**6.  WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own attorney and accountant to obtain advice on how the Plan will affect you and what is the best course of action for you.

Any party can now solicit votes for or against the Plan.  However, the statements and financial information herein about the Debtor have been obtained from documents and information contained in the Court's files in the Case and/or provided by the Debtor and/or Creditors and the conclusions set forth herein are based on such information.  The accuracy has not yet been determined by the Court and the Court may determine such accuracy at the hearing regarding whether to confirm the Plan.

**E.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

**THE COURT HAS NOT YET CONFIRMED THE PLAN.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS WITH ACTUAL OR CONSTRUCTIVE NOTICE IN THE CASE.**

**1.      Time and Place of the Confirmation Hearing**

*******, 2018, at ******* *******.m.
United States Bankruptcy Court
Courtroom 303
3420 Twelfth Street
Riverside, CA 92501

**2.      Deadline for Voting for or Against the Plan**

If you are entitled to vote, it is in your best interest to vote timely on the enclosed Ballot and return the Ballot by the Voting Deadline to the following:

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

9

Disclosure Statement TSSI 001 v1

1

2    **Attorneys for the Debtor:**
Leonard M. Shulman, Esq.
Melissa Davis Lowe, Esq.
Ryan Baggs, Esq.
SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: 949-340-3400
Facsimile: 949-340-3000
Email: LShulman@shbllp.com; MLowe@shbllp.com; RBaggs@shbllp.com

3

4

5

6

7    **Service of the Ballot may be made via email, facsimile, personal delivery or United**

8    **States Mail, First Class, such that the Ballot received by the Voting Deadline of `*******`, 2018,**

9    **at 5:00 P.M. California time.**  Your Ballot must be received by the Voting Deadline or it will not

10   be counted.  Since mail delays may occur, and because time is of the essence, it is important that

11   Ballots be mailed well in advance of the Voting Deadline.  Failure to deliver a properly completed

12   ballot by the Voting Deadline will result in the Ballot not being counted as an acceptance or a

13   rejection.  Any improperly completed or late Ballot will not be counted.

14       3.    **Deadline for Objecting to the Confirmation of the Plan**

15       Objections to the confirmation of the Plan must be filed with the Court and upon the

16   following such that it is received by `*******`, **2018, at 5:00 P.M. California time**:

17    **Attorneys for the Debtor:**
Leonard M. Shulman, Esq.
Melissa Davis Lowe, Esq.
Ryan Baggs, Esq.
SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: 949-340-3400
Facsimile: 949-340-3000
Email: LShulman@shbllp.com; MLowe@shbllp.com; RBaggs@shbllp.com

18

19

20

21

22

23   **Service of the objections to the confirmation of the Plan may be made via email,**

     **facsimile, personal delivery or United States Mail, First Class, such that the objections are**

24   **received by `*******`, 2018, at 5:00 P.M. California time.**

25       At the Confirmation Hearing, the Bankruptcy Court will determine, pursuant to Section 1129

26   of the Bankruptcy Code, whether the Plan has been accepted by the necessary Classes of Claims

27   created under the Plan, and if not, whether the Bankruptcy Court should nevertheless confirm the

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

10

Disclosure Statement TSSI 001 v1

1    Plan.  If at the Confirmation Hearing the Bankruptcy Court determines that the Plan meets all of the

2    requirements for confirmation prescribed by the Bankruptcy Code, the Bankruptcy Court will enter

3    a Confirmation Order.   Pursuant to Section 1141 of the Bankruptcy Code, the effect of the

4    Confirmation Order will be to make the provisions of the Plan binding upon the Debtor and each of

5    its Creditors, regardless of whether each Creditor voted to accept the Plan.

6          **4.**     **Person to Contact for More Information Regarding the Plan**

7          Any interested party desiring further information about the Plan may contact the Debtor's

8    counsel, Leonard M. Shulman, Esq. Melissa Davis Lowe, Esq., or Ryan Baggs, Esq. at Shulman

9    Hodges & Bastian  LLP,  100 Spectrum Center Drive, Suite 600, Irvine, California 92618,

10   telephone:  (949)  340-3400,  or  email  to  LShulman@shbllp.com;  MLowe@shbllp.com;  or

11   RBaggs@shbllp.com.

12   **F.**     **Disclaimer**

13         The Court has not yet determined whether the Plan can be confirmed and makes no

14   recommendation as to whether Creditors should support the Plan.

15         The financial data relied upon in formulating the Plan is based on the Debtor's records filed

16   in the Case including the Debtor's Bankruptcy Schedules, the projected recovery from Post-

17   Confirmation Estate Claims and the financial information contained in pleadings filed with the

18   Bankruptcy Court.  This information was not audited or reviewed by an independent accountant and

19   the Debtor is unable to warrant or represent that such financial information is without any

20   inaccuracies.   Nonetheless, the Debtor has made reasonable efforts under the circumstances to

21   present financial information fairly and accurately.  The Debtor represents that everything stated in

22   this Disclosure Statement is true to the best of its knowledge.

23         The financial transactions contained in the Disclosure Statement represent the Debtor's best

24   estimates and projections of future events based on certain assumptions.  With the passage of time,

25   some or all of these estimates and projections may not occur.  None of the financial analyses

26   contained herein, upon which this Disclosure Statement is based, is considered to be a "forecast" or

27   "projection" as technically defined by the American Institute of Certified Public Accountants.  The

28   use of the words "forecast," "project," or "projection" herein relate to broad expectations of future

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

11

Disclosure Statement TSSI 001 v1

1 events or market conditions and qualifications of the potential results of operations under those

2 conditions.

3    The discussion herein regarding the Debtor and the Post-Confirmation Estate may contain

4 "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of

5 1995.  Such statements consist of any statement other than a recitation of historical fact and can be

6 identified by the use of forward-looking terminology such as "may," "expect," "anticipate,"

7 "estimate," or "continue," or the negative thereof or other variations thereon or comparable

8 terminology.  The reader is cautioned that all forward looking statements are necessarily speculative

9 and there are certain risks and uncertainties that could cause actual events or results to differ

10 materially from those referred to in such forward looking statements.  The liquidation analysis,

11 financial projections, and other information are estimates only, and the timing and amount of actual

12 distributions to Creditors may be affected by many factors that cannot be predicted.  Therefore, any

13 analysis, estimates, or projections may or may not turn out to be accurate.

14    The Debtor has made a diligent effort to identify in this Disclosure Statement all litigation

15 claims, including claims for relief, counterclaims, and objections to claims.  **However, no reliance**

16 **should be placed on the fact that a particular litigation claim is or is not identified herein.**  The

17 Disbursing Agent, or other parties-in-interest with Court approval, may seek to investigate, file and

18 prosecute litigation claims after the confirmation or Effective Date of the Plan whether or not the

19 litigation claims are identified herein.  A list of potential Avoidance Action defendants is attached

20 hereto as **Exhibits 1-A and 1-B**.  Potential Avoidance Action Causes of Action may include claims

21 for repayment of loans to the Debtor's insider which may have occurred prior to and after the

22 Petition Date.

23    **THIS IS A SOLICITATION BY THE DEBTOR.  THE REPRESENTATIONS**

24 **HEREIN ARE THOSE OF THE DEBTOR AND NOT ITS ATTORNEYS OR**

25 **CONSULTANTS.  NO REPRESENTATIONS CONCERNING THE DEBTOR, OR POST-**

26 **CONFIRMATION DEBTOR OR ESTATE, INCLUDING, BUT NOT LIMITED TO,**

27 **REPRESENTATIONS AS TO THE POST-CONFIRMATION FUTURE ACTIVITIES OF**

28 **THE DEBTOR OR THE ESTATE, THE VALUE OF PROPERTY OF THE ESTATE, THE**

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

12

Disclosure Statement TSSI 001 v1

1  AMOUNT OF CLAIMS AGAINST THE ESTATE OR ANY TAX EFFECT OF THE

2  TRANSACTIONS PROPOSED UNDER THE PLAN, ARE AUTHORIZED BY THE

3  DEBTOR, OTHER THAN AS SET FORTH HEREIN.  ANY REPRESENTATIONS OR

4  INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN THAT ARE IN

5  ADDITION TO OR DIFFERENT FROM THE STATEMENTS CONTAINED IN THIS

6  DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY PARTY IN

7  INTEREST.  ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS

8  SHOULD BE REPORTED TO THE DEBTOR'S ATTORNEYS WHO, IN TURN, WILL

9  DELIVER THE INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION

10 AS THE BANKRUPTCY COURT MAY DEEM TO BE APPROPRIATE.

11     UNLESS SPECIFICALLY SET FORTH HEREIN TO THE CONTRARY, THE

12 INFORMATION CONTAINED OR REFERRED TO IN THIS DISCLOSURE

13 STATEMENT REGARDING THE DEBTOR OR ITS ESTATE HAS NOT BEEN SUBJECT

14 TO A CERTIFIED AUDIT. COUNSEL FOR THE DEBTOR HAS NOT INDEPENDENTLY

15 VERIFIED THE INFORMATION CONTAINED HEREIN AND MAKES NO

16 REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE ACCURACY

17 THEREOF.

18     ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO REVIEW

19 CAREFULLY THIS DISCLOSURE STATEMENT PRIOR TO VOTING ON THE PLAN.

20 THE CONTENTS HEREIN SHOULD NOT BE CONSTRUED IN ANY MANNER TO BE

21 LEGAL, BUSINESS, OR TAX ADVICE.  EACH CREDITOR AND OTHER PARTY IN

22 INTEREST SHOULD CONSULT WITH HIS OWN LEGAL COUNSEL, BUSINESS

23 ADVISOR, CONSULTANT, AND/OR ACCOUNTANT PRIOR TO VOTING TO ENSURE

24 A COMPLETE UNDERSTANDING OF THE TERMS OF THE PLAN.  THIS

25 DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF THE CREDITORS

26 TO ENABLE THEM TO MAKE AN INFORMED DECISION REGARDING THE PLAN.

27     THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE

28 STATEMENT INDICATES ONLY THAT THE DISCLOSURE STATEMENT CONTAINS

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

13

Disclosure Statement TSSI 001 v1

1  ADEQUATE INFORMATION FOR THE PURPOSE OF SOLICITATION OF

2  ACCEPTANCES TO THE PLAN, ASSUMING IT IS ACCURATE. HOWEVER, THE

3  BANKRUPTCY COURT HAS NOT YET DETERMINED THE ACCURACY OF SUCH

4  INFORMATION. IT MAY DO SO AT THE CONFIRMATION HEARING.

5  **II.    DEFINITIONS, INTERPRETATIONS, AND RULES OF CONSTRUCTION**

6  **A.    Definitions**

7      1.    "Administrative Claim or Administrative Expenses" means a Claim for payment of an

8  administrative expense of a kind specified in Bankruptcy Code section 503(b) and entitled to priority

9  in payment under Bankruptcy Code sections 507(a)(1), 507(b) or 1114(e)(2), including: (a) the

10  actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and

11  operating the business of the Debtor (such as wages, salaries or commissions for services and

12  payments for goods and other services); (b) any indebtedness or obligations incurred or assumed by

13  the Debtor in the ordinary course of business in connection with the conduct of its business; (c) any

14  Professional Fees incurred before the Effective Date; (d) all fees and charges assessed against the

15  Estate under Chapter 123 of title 28 of the United States Code, sections 1911-30; (e) obligations

16  designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court and (f)

17  Claims under Section 503(b)(9) of the Bankruptcy Code.

18      2.    "Allowed" means with reference to any Claim, except as otherwise provided herein:

19
20      a.    a Claim that has been Scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which the Debtor, the Disbursing Agent or any other party in interest has not filed an objection;

21      b.    a Claim that either is not a Disputed Claim or has been allowed by a Final Order;

22
23
24
25
26      c.    a Claim that is allowed (i) in any stipulation with the Debtor concerning the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court upon proper notice to the Debtor and/or the Disbursing Agent and other parties in interest; (ii) in any stipulation with the Disbursing Agent concerning the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court or (iii) in any contract, instrument, indenture or other agreement entered into or assumed pursuant to the Plan;

27
28      d.    a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either of

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

the Cases only if a Proof of Claim has been timely Filed in accordance with the Plan or has otherwise been deemed timely Filed under applicable law; or

e.  a Claim that is allowed pursuant to the terms of the Plan; provided, however, unless otherwise specified herein or by order of the Bankruptcy Court, the term "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, premiums or late charges on such Claim from and after the Petition Date.

3.  "APA" means that Asset Purchase Agreement entered into by and between the Debtor and the Buyer, a copy of which was attached to the Declaration of Melissa Davis Lowe filed with the Court on October 19, 2018 [Docket No. 96](.

4.  "Assets" means all tangible and intangible assets of every kind and nature of the Debtor and its Estate, and all proceeds thereof, as of the Effective Date.

5.  "Avoidance Action" means any action which is filed or which may be filed pursuant to the provisions of Sections 510, 541 542, 543, 544, 545, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, any actions based on applicable nonbankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, or any other similar action or proceeding filed to recover property for or on behalf of the Estate or to avoid a lien or transfer.

6.  "Ballot" means the form or forms that will be distributed with the Disclosure Statement to each holder of a Claim that is entitled to vote under the Plan in connection with the solicitation of votes to accept or to reject the Plan.

7.  "Bank" means Bank of America NA – the only undisputed Secured Creditor in this Case.

8.  "Bankruptcy Code" or "Code" means Title 11 of the United States Code, as now in effect or hereafter amended.  All citations in the Plan to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

9.  "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Central District of California, Riverside Division, which has jurisdiction over this Case and the Estate of the Debtor, or such successor court or tribunal as may hereafter be confirmed or created by lawful authority with power to confirm reorganization plans under Chapter 11 of the Bankruptcy Code and all applicable statutes, rules, and regulations pertaining thereto.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

15

Disclosure Statement TSSI 001 v1

10. "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for use in the Bankruptcy Court, as now in effect or hereafter amended.

11. "<u>Bar Date</u>" means the last date for filing Proofs of Claim other than Administrative Claims or Claims based upon the rejection of any executory contracts or unexpired leases.  Pursuant to Court order entered on October 15, 2018 [Docket No. 61], November 15, 2018 was set as the deadline for non-governmental creditors filing Proofs of Claim or interest in this Case; and March 31, 2019 for governmental claims.

12. "<u>Business Day</u>" means any day other than a Saturday, Sunday, or legal holiday as defined in Bankruptcy Rule 9006(a).

13. "<u>Buyer</u>" means  Valu Tech Outsourcing, LLC, a California limited liability company.

14. "<u>Buyer Additional Consideration</u>" means the additional consideration of approximately $135,452.67 to be paid by the Buyer of the Purchased Assets at closing on the Sale.

15. "<u>Case</u>" means the Debtor's bankruptcy case pending in the Central District of California, Riverside Division, Case No. 6:18-bk-18339-MH.

16. "<u>Cash</u>" means cash and cash equivalents, including, but not limited to, checks or similar forms of payment or exchange.

17. "<u>Cash Collateral Stipulation</u>" means that certain *Stipulation for Interim Use of Cash Collateral and Adequate Protection* annexed as Exhibit 1 to the *Debtor and Debtor-in-Possession's Notice of Motion and Emergency Motion for (a) Order Approving Stipulation for Interim Use of Cash Collateral; (b) Granting of Adequate Protection; (c) Granting Related Relief; Memorandum of Points and Authorities in Support; and Declaration of Julio C. Garcia, Jr. in Support Thereof* filed with the Court on October 2, 2018 [Docket No. 3].  The budget under the Cash Collateral Stipulation was updated and filed with the Court on October 10, 2018 as Exhibit 1 to the Supplemental Declaration of Fred Anavim [Docket No. 50].

18. "<u>Claim</u>" means any (a) right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured against the Debtor and/or the Estate, or any (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, against the Debtor and/or the Estate.

19.    "Claimant" means the holder of a Claim.

20.    "Causes of Action" mean all of the Debtor's actions, causes of action, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and cross-claims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Case, through and including the Effective Date, including, but not limited to, any Post-Confirmation Estate Claims.

21.    "Class" means A category of Claims which are substantially similar to each other and into which Allowed Claims are grouped and classified pursuant to the Plan, unless a member of the Class has agreed to a subordinated treatment.

22.    "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

23.    "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court upon which Confirmation occurs.

24.    "Confirmation Hearing" means the hearing, including any continued or postponed session thereof, at which time the Bankruptcy Court will consider and determine whether to confirm the Debtor's Plan.

25.    "Confirmation Order" means the order, as entered, of the Bankruptcy Court confirming the Plan.

26.    "Creditor" means the holder of an Allowed Claim.

27.    "Debtor" means Technology Solutions & Services, Inc., a California corporation, a California corporation, the debtor and debtor-in-possession in this Case.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

28. "<u>Disallowed Claim</u>" means a Claim against the Debtor, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero, or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

29. "<u>Disbursing Agent</u>" means the person charged with managing the Post-Confirmation Estate and making Distributions pursuant to the terms of the Plan.

30. "<u>Disclosure Statement</u>" means this Disclosure Statement as it may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

31. "<u>Disputed Claim</u>" means any Claim: (a) listed on the Debtor's Schedules as unliquidated, disputed, or contingent; or (b) as to which the Debtor, or any other party in interest, has interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation or subordination has not been withdrawn or determined by a Final Order.  A Claim will be considered a Disputed Claim in its entirety if an objection is timely filed to any portion of such Claim.

32. "<u>Distribution</u>" means the Cash which is required to be distributed under the Plan, after the Sale is completed, to the holders of Allowed Claims.

33. "<u>Effective Date</u>" means 30 days after the Confirmation Order.

34. "<u>Equity Interests</u>" means, with respect to the Debtor, as of the Petition Date, any capital stock or other ownership interest in the Debtor, whether or not transferable, and any option, call, warrant or right to purchase, sell or subscribe for an ownership interest or other equity security in such Debtor, and any redemption, conversion, exchange, voting, participation, dividend rights, and liquidation preferences relating to such capital stock or ownership interest.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

18

Disclosure Statement TSSI 001 v1

35.    "<u>Estate</u>" means the estate of the Debtor created under the Bankruptcy Code in this Case.

36.    "<u>File</u>," "<u>Filed</u>," or "<u>Filing</u>" means filed with the Bankruptcy Court having jurisdiction over this Case.

37.    "<u>Final Distribution</u>" means, for each Class, the last Distribution to be made to holders of Allowed Claims in that Class.

38.    "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court, or of any court of competent jurisdiction where there is pending an action in which the Debtor is a party, which has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for re-argument or rehearing shall then be pending; or (b) any right to appeal, petition for certiorari, re-argument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor or the Disbursing Agent as the case may be; or (c) any appeal, petition for certiorari, re-argument or rehearing has been resolved by the highest court to which the order or judgment was appealed timely or from which certiorari, re-argument, or rehearing was sought.

39.    "FTB" means the California Franchise Tax Board.

40.    "FTB Refund" means any FTB tax refund that Debtor may receive related to its recently amended tax returns.

41.    "<u>General Unsecured Claim</u>" means an unsecured Claim against the Debtor that is not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation, a Claim based on the rejection of an executory contract or unexpired lease.

42.    "<u>HP</u>" means HP, Inc., formerly known as Hewlett Packard Company, and its affiliates (collectively, "HP" and any such contracts, the "HP Agreements").

43.    "<u>Holder</u>" means any Person holding a Claim or interest against the Debtor provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either (1) no

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

19

Disclosure Statement TSSI 001 v1

objection to the transfer having been filed, or (2) any objection to such transfer having been

resolved in favor of the transferor by no later than the Confirmation Date.

44.     "Insider Guarantee" means that certain written guaranty by Blanca Garcia and Eric

Huang[3] for payment of the Professional Fees of Shulman Hodges & Bastian LLP that exceed the

balance of funds held in trust by the firm as of the Petition Date.

45.     "IRS" means the United States of America through its agency the Internal Revenue

Service.

46.     "IRS Lien" means that certain Notice of Federal Tax Lien filed on September 4,

2018 relating to the Debtor's 2016 federal income taxes alleged to be owed by the Debtor.

47.     "IRS Refund" means the recent IRS tax refund received by the Debtor in the amount

approximately $151,031.83 and related to its recently amended tax returns.

48.     "Lenovo" means Lenovo (United States) Inc. together with its affiliates.

49.     "Lenovo Assets" means the assets there were excluded from the Sale and will not be

conveyed or transferred pursuant to the Sale Order consisting of: (i) the Refurbish-Surplus Product

Agreement by and between Lenovo (United States) Inc. (together with its affiliates, collectively,

"Lenovo") and the Debtor  effective as of September 17, 2015, (ii) all Lenovo products, devices,

parts, or related assets, wherever located.

50.     "Net Liquidation Proceeds" means all of the Cash or other proceeds recovered from

the Debtor's Estate, including  (i) the Sale Carve-Out, (ii) Buyer Additional Consideration, (iii) IRS

Refund, (iv) FTB Refund, if any, (v) the liquidation of the Lenovo Assets, and (iv) net recovery

from possible Causes of Action, if any.

51.     "Person" shall have the same meaning as in Section 101(41) of the Bankruptcy Code.

52.     "Petition Date" means October 2, 2018, the date on which the Debtor filed its

voluntary petition for relief under Chapter 11, thereby commencing this Case.

---

[3] Blanca Garcia is the Chief Executive Officer and shareholder of the Debtor, holding a 45% interest.  Eric Huang is a
Manager and shareholder of the Debtor, holding a 45% interest.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

20

53. "<u>Plan</u>" means the Chapter 11 Liquidating Plan proposed by the Debtor, as such Plan may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

54. "<u>Plan Proponent</u>" means the Debtor.

55. "<u>Post-Confirmation Debtor</u>" means the Debtor herein, on or after the Effective Date.

56. "<u>Post-Confirmation Estate</u>" means the Debtor's Estate after the Plan has been confirmed by the Court.

57. "<u>Post-Confirmation Estate Claims</u>" means any and all claims and Causes of Action which constitute property of the Estate including, whether or not such claims or Causes of Action are the subject of litigation pending as of the Effective Date.

58. "<u>Priority Claim</u>" means a Claim entitled to priority under Section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim pursuant to Section 507(a)(8).

59. "<u>Priority Tax Claim</u>" means a Claim of a "governmental unit" (as such term is defined in section 101(27) of the Bankruptcy Code) of the kind specified in, and entitled to priority under, sections 502(i) and 507(a)(8) of the Bankruptcy Code.

60. "<u>Pro Rata Share</u>" means, with reference to any Distribution on account of any Allowed Claim or Allowed Interest, as applicable, in any Class, the ratio (expressed as a percentage) that the amount of such Allowed Claim or Allowed Interest bears to the aggregate amount of Allowed Claims or Allowed Interest of the same Class (and to the extent required for an interim Distribution and any reserve for Disputed Claims).

61. "<u>Professionals</u>" means those Persons (i) that are subject to retention pursuant to an order of the Bankruptcy Court in accordance with the Bankruptcy Code and to be compensated for services rendered or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to the Bankruptcy Code.

62. "<u>Professional Fees</u>" means the fees for services of Professionals rendered and expenses incurred in connection with such services by Professionals on and after the Petition Date and prior to and including the Effective Date.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

21

Disclosure Statement TSSI 001 v1

63.    "<u>Proof of Claim</u>" means a statement under oath filed in this Case by a Claimant in which the Claimant sets forth the amount claimed to be owed to it and sufficient detail to identify the basis for the Claim, in accordance with Federal Rule of Bankruptcy Procedure 3001.

64.    "<u>Proponent</u>" means the proponent of the Plan, the Debtor.

65.    "Purchased Assets" means the assets of the Estate to be sold to the Buyer under the APA and the Sale Order and as the term "Purchased Assets" is defined in the APA.

66.    "<u>Sale</u>" means the sale of substantially all of the Purchased Assets as contemplated by the APA.

67.    "<u>Sale Carve-Out</u>" means the funds generated or "carved-out" from Bank's lien following the sale of the Purchased Assets.  The Sale Carve-out will be earmarked  for funding the Plan and the benefit of General Unsecured Claims.    The Sale Carve-Out is estimated to be approximately $350,000.00.

68.    "<u>Sale Motion</u>" means the *Debtor's Motion for an Order: (1) Approving the Sale of Substantially All of the Assets of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code Section 363(b)(1) and (f); (2) Approving the Assumption and Assignment of Executory Contracts; and (3) Granting Related Relief filed on October 3, 2018 [Docket No. 8]*.  The Sale Motion also includes various supplements, declarations, notices and further items filed with this Court including up until the ultimate granting of the Sale Order on October 24, 2018.

69.    "<u>Sale Order</u>" means the Final Order from this Court approving of the Sale Motion for the sale the Purchased Assets entered by the Court on October 24, 2018 [Docket No. 113].  A copy of the Sale Order is attached to the Disclosure Statement as **Exhibit 2.**

70.    "<u>Schedules</u>" means the applicable Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as amended, modified, or supplemented from time to time.

71.    "<u>Secured</u>" means when referring to a Claim: (a) secured by a lien on property in which the applicable Estate has an interest, which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the lienholder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

1  pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as

2  a Secured Claim.

3      72.    "<u>Secured Claim</u>" means a Claim secured by a lien, security interest or other charge

4  against property in the Estate has an interest, or which is subject to setoff under Section 553 of the

5  Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the

6  Bankruptcy Code, of the interest of the holder of such Secured Claim in the Estate's interest in such

7  property, or to the extent of the amount subject to any setoff, as the case may be.

8      73.    "<u>Unclaimed Distribution</u>" means any Distribution which is unclaimed as a result of

9  any of the following: (a) checks which have been returned as undeliverable without a proper

10  forwarding address; (b) checks which were not mailed or delivered because of the absence of a

11  proper address to which to mail or deliver the same; (c) checks which remain unnegotiated for a

12  period of ninety (90) days after the date of issuance.

13      74.    "<u>Unsecured Claim</u>" means any Claim, including without limitation any claim arising

14  under Section 502(g) of the Bankruptcy Code, that is not secured by a lien on, security interest in,

15  or charge against, any Asset.

16      75.    "<u>UST</u>" means the Office of the United States Trustee.

17      76.    "<u>Voting Deadline</u>" means ******.m. (California time) on ******, 2019 which is the

18  deadline for holders of impaired Claims to submit a Ballot.

19  **B.    <u>Interpretations, Computation of Time and Governing Law</u>**

20      **1.    <u>Undefined Terms</u>**

21      Any term used herein that is not defined herein, either in Section II.A (Definitions) or

22  elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning

23  assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. Without limiting the

24  foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply

25  hereto.   The definitions and rules of construction contained herein do not apply to the exhibits

26  attached hereto except to the extent expressly so stated herein or in each exhibit.

27      **2.    <u>Rules of Interpretation</u>**

28      For the purposes of this Disclosure Statement:

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

23

Disclosure Statement TSSI 001 v1

a. Whenever, from the context, it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural.

b. Any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

c. Any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date.

d. Unless otherwise specified in a particular reference in the Plan, all references in the Plan to Sections, Articles or Exhibits are references to Sections, Articles and Exhibits of or to the Plan.

e. Unless otherwise specified in a particular reference in the Plan, the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only to a particular paragraph, subparagraph, or clause contained in the Plan.

f. Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

g. Except to the extent that federal law, including the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced for all purposes in accordance with, the laws of the State of California, without giving effect to any principles of conflict of laws thereof.

h. All exhibits to the Plan are incorporated into the Plan and will be deemed to be included in the Plan, regardless of when they are filed.

**3.    Computing Time Periods**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**4.    Notices and Delivery of Documents**

All notices, correspondence, and other deliveries under the Disclosure Statement and Plan must be directed as follows:

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

24

Disclosure Statement TSSI 001 v1

| To the Debtor: | Technology Solutions & Services, Inc.<br>Attention: Julio Garcia, Jr., CFO<br>458 E. Commercial Road<br>San Bernardino, CA 92408 |
|---|---|
| To the Disbursing Agent: | Chuck Klaus<br>ABC Services Group<br>421 Pine Avenue<br>Goleta, CA 93117<br>Telephone: (949) 922-1211<br>Email: chuck@sbservices.group |
| With a Copy to: | Leonard M. Shulman, Esq.<br>Melissa Davis Lowe, Esq.<br>Ryan Baggs, Esq.<br>SHULMAN HODGES & BASTIAN LLP<br>100 Spectrum Center Drive, Suite 600<br>Irvine, California 92618<br>Telephone: 949-340-3400<br>Facsimile: 949-340-3000<br>Email: LShulman@shbllp.com; MLowe@shbllp.com; RBaggs@shbllp.com |

## III.    **BACKGROUND**

The following is a description of the nature and the history of the Debtor' business, financial affairs, and of its financial difficulties.

A.    **Description of the Debtor and its Business**

1.    **Background and Business Operations**

The Debtor was incorporated in November 2003.  The Debtor's officers and stockholders are:

| Name | Shareholder Interest | Position |
|---|---|---|
| Blanca Garcia | 45% | Chief Executive Officer |
| Eric Huang | 45% | Manager - Vice President of Operations |
| Peter Skuba | 4% | Secretary and Vice President of Business Development |
| Fred Anavim | 3% | Controller |
| James Sullivan | 3% | None |
| Julio C. Garcia, Sr | None | Manager - Vice President of Operations |
| Julio C. Garcia, Jr | None | Chief Financial Officer |
| Humberto A. Garcia | None | Manager - Vice President of Operations |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

25

Disclosure Statement TSSI 001 v1

1    The Debtor is a returns management company specializing in high-volume remanufacturing

2    of in-warranty and out-of-warranty consumer electronics products.    The Debtor's principal

3    corporate office and warehouse space is located at 458 East Commercial Road, San Bernardino,

4    California.  The Debtor's landlord for the San Bernardino leased location is GWH Properties, LLC.

5    Debtor's Chief Executive Officer and 45% stockholder, Blanca Garcia is a member of GWH

6    Properties, LLC.

7    The Debtor also leases a warehouse facility located at 1778 Stergios Road, Suite 4A,

8    Calexico, CA 92231. The landlord for the Calexico location is Pacific Rim Distribution Center,

9    LLC.  The Debtor has no affiliation with the Calexico landlord.  As of the Petition Date, the Debtor

10    had not paid the Calexico lease payments for September, October and November 2018, for a total

11    of approximately $41,109.83 in arrearages

12    The Debtor owns 99% of the stock in Technology Solutions & Services SA De CV ("TSSI

13    Mexico").  The other 1% is owned by Julio Garcia, Jr.

14    TSSI Mexico is a "maquiladora" company funded by and controlled by the Debtor.  A

15    maquiladora is a factory run by a foreign company and exporting its products to the country of the

16    foreign company.  A maquiladora in Mexico operates under preferential tariff programs established

17    and administered by the United States and Mexico.   Materials, assembly parts and production

18    equipment are allowed to enter Mexico duty-free and tariff-free.  Products can then be exported into

19    the U.S. at lower tariffs than those in other countries.  The "Maquiladora Program, under NAFTA"

20    structure gives the Debtor and TSSI Mexico a break on tariffs and provides jobs in Mexico.

21    TSSI Mexico operates a factory in Juarez.  The factory is nearly 200,000 square feet.  TSSI

22    Mexico has approximately 550 employees.  The Debtor advances funds to TSSI Mexico for TSSI

23    Mexico to pay its payroll, expenses (such as rent) and general and administrative expenses (such as

24    utilities, electricity) (the "Payments").  TSSI Mexico exports all its products back to the United

25    States and the Debtor collects all cash and revenues for those products.

26    Under the direction of the Debtor and TSSI Mexico, the Juarez factory possesses cutting

27    edge technologies for both technical and cosmetic recovery processes that bring less than desirable

28    products back to a like-new sellable condition.  This reduces scrap rates while increasing product

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

26

Disclosure Statement TSSI 001 v1

1  yields.  The Debtor not only provides full service asset recovery solutions, but also presents

2  manufacturers with a comprehensive analysis of their managed products. The Debtor's global

3  partner program consists of a network of international buyers specializing in varying market

4  segments

5  HPis the largest supplier of computers to Debtor pursuant to two main contracts: (1) a

6  "Standard Services Agreement" by which Debtor receives computers from HP, TSSI Mexico

7  imports the computers to Mexico, services/fixes them at the factory in Mexico, and then exports

8  them to the Debtor so that the Debtor can then ship them back to HP; and (2) a "Returns Program

9  Purchase Agreement" by which Debtor purchases used computers from HP, TSSI Mexico imports

10  them, refurbishes them, and then exports them back to the Debtor so the Debtor can sell them to

11  third parties.  HP and the Debtor are also parties to an "Electronic Equipment Asset Recovery

12  Agreement" under which the Debtor is allowed to harvest or cull certain parts from HP products.

13  **2.    The Debtor's Liabilities**

14  The Debtor's liabilities primarily include Bank, HP, and General Unsecured Creditors. The

15  Debtor's only undisputed secured creditor is Bank pursuant to a Loan Agreement entered into on

16  June 13, 2013 and amended thereafter.  Bank has a secured claim and blanket lien against the

17  Debtor's assets in a total amount of approximately $12,292,722.72 pursuant to the following UCC-

18  1 filings: (1) UCC-1 filing No. 10-7248928778, filed on October 20, 2010; (2) UCC-1 filing No.

19  11-7278989133, filed on July 29, 2011; and, (3) UCC-1 filing No. 11-7283960592, filed on

20  September 8, 2011.  Bank sent a Notice of Default to the Debtor on or about April 17, 2018.  Bank's

21  claim will be extinguished upon closing of the Sale.

22  In addition, the IRS filed a Notice of Federal Tax Lien on September 4, 2018 ("IRS Lien").

23  The IRS Lien relates to 2016 Federal income taxes alleged to be owed by the Debtor in the amount

24  of $686,683.15.  The Debtor recently filed amended tax returns, however, and received  the IRS

25  Refund of approximately $151,031.83.  On  or about October 2, 2018, the IRS Lien was released.

26  The Debtor's Schedules, as filed on the Petition Date, indicate there are a total of

27  approximately $16,684,476.72 in General Unsecured Claims.  However, the Sale Order allows the

28

SHULMAN HODGES & BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

1  Debtor to cure all claims held by HP, Inc.  As a result, the universe of potential General Unsecured

2  Claims is anticipated to be reduced to approximately $10 million.

3  **3.  The Debtor's Assets and the Sale**

4  On October 24, 2018 the Court entered the Sale Order authorizing the Debtor to sell

5  substantially all of its assets to the Buyer, , and pursuant to a short sale transaction approved by the

6  Bank.  As noted above, Bank is the lone undisputed Secured Creditor and is owed over $12 million.

7  In order to make the Sale possible, Bank has agreed to a short sale and carve-out of its lien.

8  Specifically, under the APA, Bank shall receive $7,000,000 directly from Buyer immediately upon

9  the Sale closing. The Sale Carve-Out will also ensure that any deficiency to HP under its executory

10 contracts with the Debtor is cured in order to assume and assign those contracts to the Buyer, which

11 is a condition precedent to the Buyer's obligation to proceed with the Sale.  The Sale will proceed

12 such that the Purchased Assets will be sold free and clear of the Bank's lien and the IRS Lien.

13 Following the closing of the Sale, the cash available for funding the Plan is anticipated to

14 include the following: (1) the Sale Carve-Out of the Bank's lien of approximately $350,000; (2)

15 Buyer Additional Consideration of approximately $135,452.67; (3) IRS Refund of approximately

16 $151,031.83[4]; (4) any FTB Refund[5] ; (5) liquidation of the Lenovo Assets  which is expected to

17 generate another $250,000 to $500,000 for the Estate, ; and (6) Avoidance Actions other than those

18 related to contracts purchased by Buyer.  Thus, after completion of the Sale there is anticipated to

19 be at least $885,000 - $1,135,000 in cash to fund the Plan Distributions to General Unsecured

20 Claims.

21 **B.    Events Leading to Bankruptcy Filing**

22 The Debtor began losing money in approximately mid-2017 based on a variety of factors.

23 The Debtor determined that it could no longer operate on a profitable basis and could not internally

24 reorganize its affairs.  Bank declared its loan in default but Debtor was unable to pay Bank on its

25

26

27 [4]  The IRS Tax Refund would normally be considered a general asset of the Estate under a chapter 7 liquidation and only recoverable by Bank as the only undisputed Secured Creditor.

28 [5]  While the amount is unknown, any FTB Refund is excluded from the sale and will be used to benefit General Unsecured Claims.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

28

Disclosure Statement TSSI 001 v1

1   loan and was losing money on a monthly basis.  It simply did not have the income to continue

2   operating.  Based on this, Debtor had no other choice but to seek bankruptcy protection in order to

3   preserve as much of its cash as possible, proceed with the sale of assets, and propose a plan to treat

4   creditors equally..

5   **C.**      **Significant Events During the Case**

6          The following is a list of significant events which have occurred during the Case:

7          **1.**      **Bankruptcy Proceedings**

8   **Filing of Schedules**

9          The Debtor filed its Schedules A, B, D, E, F, G, and H and Statement of Financial Affairs

10  on October 2, 2018 [Docket No. 1].

11  **Employment Of Professionals**

12         The Debtor intends to employ the following Professionals in this Case:[6]

13         •   Shulman Hodges & Bastian LLP as Chapter 11 counsel for the Debtor.

14         •   Stapleton Group as Debtor's accounting and management consultant.

15  **Bar Date To File Proofs of Claim or Interests**

16         Pursuant to Court order entered on October 15, 2018 [Docket No. 61], **November 15, 2018**

17  was set as the deadline for non-governmental units filing Proofs of Claim or interest in this Case

18  and **March 31, 2019** was set as the governmental units bar date.

19  **Utilities Motion**

20         The Debtor filed its *Debtor and Debtor in Possession's Emergency Motion for Order (a)*

21  *Prohibiting Utilities From Altering, Refusing, or Discontinuing Service; and (b) Deeming Utilities*

22  *Adequate Assured of Future Performance Pursuant to 11 U.S.C. § 366; Memorandum of Points and*

23  *Authorities; Declaration of Julio C. Garcia, Jr. in Support Thereof* (the "Utilities Motion") [Docket

24

25

26   _____

27

[6] Motions for approval of employment of such Professionals have been filed but orders approving employment have
28  not yet been entered.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

29

Disclosure Statement TSSI 001 v1

1   No. 2] on October 2, 2018.  The Court approved the Utilities Motion on an interim basis on October

2   9, 2018, [Docket No. 41][7] and a final hearing is set for October 30, 2018.

3       In connection with the operation of its business, the Debtor obtains electric, telephone, trash,

4   water, sewer, telecommunications and other "Utility Services" common to the operation of its

5   business (collectively, the "Utility Services") from various companies or brokers (collectively, the

6   "Utility Providers").  Uninterrupted Utility Services is essential to the Debtor's ongoing business

7   operations and the overall success of this Case.

8       The Debtor's Utility Providers identified on Exhibit 1 of the Utilities Motion include (1)

9   AT&T (telephone), (2) Burrtec Waste Industries, Inc. (trash services); (3) City of San Bernardino

10  Municipal Water Dept (water and sewer) (4) Frontier Communications (telecommunications

11  services); (5) Imperial Irrigation District (energy), (6) Southern California Edison (energy), (7) TPX

12  Communications (telephone), (8) Verizon (telephone), and (9) W-PNP, Inc. (internet/Calexico).

13  **Cash Collateral Motion**

14      The Debtor filed its *Debtor and Debtor-in-Possession's Notice of Motion and Emergency*

15  *Motion for (a) Order Approving Stipulation for Interim Use of Cash Collateral; (b) Granting of*

16  *Adequate Protection; (c) Granting Related Relief; Memorandum of Points and Authorities in*

17  *Support; and Declaration of Julio C. Garcia, Jr. in Support Thereof* (the "Cash Collateral Motion")

18  and *Stipulation for Interim Use of Cash Collateral and Adequate Protection* (the "Cash Collateral

19  Stipulation") filed as Exhibit 1 to the Cash Collateral Motion [Docket No. 3] on October 2, 2018.

20  The budget under the Cash Collateral Stipulation was updated and filed with this Court as Exhibit

21  1 to the supplemental declaration of Fred Anavim on October 10, 2018 [Docket No. 50].

22      As set forth in the Cash Collateral Stipulation, the Debtor required the immediate use of cash

23  to meet the on-going expenses of operating its business, including but not limited to employee

24  payments, rent, electricity, insurance, telephone, shipping, Professional Fees, and other necessary

25

26

27

28

---

[7] The Court orally granted the Debtor's Utility Motion at a hearing on October 5, 2018.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

30

1    expenses associated with the administration of the Estate until the Sale of the Purchases Assets

2    closes.

3         The Cash Collateral Motion and Cash Collateral Stipulation were approved by the Court on

4    an interim basis on October 5, 2018 [Docket No. 28] and on a final basis at a hearing held on October

5    23, 2018 [Docket No. 116].

6    **<u>Sale Motion</u>**

7         The Debtor filed its Sale Motion [Docket No. 8] on October 3, 2018 as well as an application

8    for order shortening time for hearing on the Sale Motion.  The Court approved the application for

9    order shortening time and set the hearing on the Sale Motion for October 15, 2018.

10         On October 10, 2018 the Debtor filed its *Debtor and Debtor in Possession's Supplement to*

11    *Motion for Order: (1) Approving the Sale of Substantially All of the Assets of the Estate Free and*

12    *Clear of Liens Pursuant to Bankruptcy Code §§ 363(b)(1); (2) Approving the Assumption and*

13    *Assignment of Executory Contracts; and (3) Granting Related Relief; and Declaration of Fred*

14    *Anavim in Support Thereof [Other Declarations in support filed concurrently herewith]* (the "First

15    Sale Motion Supplement") [Docket No. 48].

16         On October 16, 2018 the Debtor filed its *Debtor and Debtor in Possession's Second*

17    *Supplement to Motion for Order: (1) Approving the Sale of Substantially All of the Assets of the*

18    *Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b)(1); (2) Approving the*

19    *Assumption and Assignment of Executory Contracts; and (3) Granting Related Relief* (the "Second

20    Sale Motion Supplement") [Docket No. 67].

21         On October 12, 2018 Global Containers & Custom Packaging, Inc. ("GCCP") filed its

22    *Limited Objection and Reservation of Rights* ("Response" or "Limited Objection") [Docket No. 58] to

23    the Debtor's Sale Motion and First Sale Motion Supplement.

24         On October 16, 2018 GCCP withdrew its Limited Objection without prejudice [Docket No.

25    68].

26         There have were no other objections to the Sale Motion, First Sale Motion Supplement, or

27    the Second Sale Motion Supplement.

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

31

Disclosure Statement TSSI 001 v1

1    The Sale is a short sale of Bank's collateral. Bank was owed over $12 million and yet, when

2    the Sale closes it will only receive $7 million. Bank is carving out approximately $6 million so that

3    HP can be paid in full (as a condition of its executory contracts to be assumed and assigned) and so

4    that the unsecured creditors receive a meaningful Distribution. Without the short sale and carve out

5    from Bank, the Purchased Assets would have to be sold for well over $14 million in order to provide

6    a commensurate benefit to the Estate. Based on the Debtor's financial advisor's valuation, the

7    Purchased Assets are not worth anywhere near $14 million.

8    Thus, as the only real option for a meaningful recovery for General Unsecured Claims in

9    this Case was the short Sale approved by Bank, the Court entered the Sale Order on October 24,

10    2018 [Docket No. 113] following a continued hearing held on October 23, 2018.

11    **2.    Other Legal Proceedings**

12    THE DEBTOR HAS NOT FULLY REVIEWED WHETHER POST-CONFIRMATION

13    ESTATE CLAIMS EXIST.  THIS INVESTIGATION IS ON-GOING AND WILL OCCUR IN

14    LARGE PART AFTER THE EFFECTIVE DATE.  AS A RESULT, CREDITORS AND OTHER

15    PARTIES-IN-INTEREST SHOULD BE, AND ARE PURSUANT TO THE TERMS OF THE

16    PLAN, SPECIFICALLY ADVISED THAT, NOTWITHSTANDING THAT THE EXISTENCE

17    OF ANY PARTICULAR POST-CONFIRMATION ESTATE CLAIM MAY NOT BE LISTED,

18    DISCLOSED, OR SET FORTH HEREIN A POST-CONFIRMATION ESTATE CLAIMS MAY

19    BE BROUGHT AGAINST ANY CLAIMANT AT ANY TIME, SUBJECT TO THE BAR DATE

20    LIMITATIONS SET FORTH IN THE PLAN.

21    **D.    Procedures Implemented to Resolve Financial Problems**

22    Since the Petition Date, the Debtor has moved forward with the orderly sale of its assets.

23    The Sale of the Purchased Assets is scheduled to close on October 31, 2018.

24    **E.    Historical and Current Financial Condition of the Debtor**

25    The Debtor's filed Schedules disclose the Debtor's assets and liabilities as of the Petition

26    Date.  Copies of the Schedules and any amendments thereto are on file and may be reviewed at the

27    Bankruptcy Court's Clerk's Office during normal business hours.

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

32

Disclosure Statement TSSI 001 v1

During the Case, the Debtor's income and expenses have been detailed in the UST Monthly Operating Reports that are filed with the Court on a monthly basis. Copies of the UST Monthly Operating Reports may be reviewed during normal business hours at the Bankruptcy Court's Clerk's Office.

**The Debtor does not believe it is necessary to estimate the recovery to be achieved by the Disbursing Agent in view of short Sale approved by Bank and the liquidating nature of the Plan.**

**The Debtor anticipates that Distributions under the Plan to Creditors will be derived from the Sale Carve-Out, the Buyer Additional Consideration, the IRS Refund, the FTB Refund, if any, the liquidation of the Lenovo Assets, and any Avoidance Actions. The Distributions are anticipated to total approximately at least $885,000 and up to $1,135,000.**

**THE FINANCIAL INFORMATION, INCLUDING FINANCIAL PROJECTIONS, CONTAINED IN THIS DISCLOSURE STATEMENT ARE UNCERTIFIED AND UNAUDITED. IN ADDITION, THE DEBTOR AND ITS COUNSEL ARE UNABLE TO WARRANT OR REPRESENT THAT THE FINANCIAL INFORMATION IS WITHOUT ANY INACCURACIES, ALTHOUGH THE DEBTOR BELIEVES THAT IT HAS MADE REASONABLE EFFORTS, UNDER THE CIRCUMSTANCES, TO PRESENT FAIRLY AND ACCURATELY SUCH FINANCIAL INFORMATION.**

## IV.    SUMMARY OF THE PLAN

The following is a summary of the Plan and is qualified in its entirety by the full text of the Plan. The terms of the Plan will be controlling on the Creditors and all other parties in interest in the event that the Plan is confirmed. Therefore, all Creditors are strongly urged to read the Plan carefully, in its entirety, rather than relying on this summary.

### A.    Overview

As required by the Bankruptcy Code, the Plan classifies Claims in various classes according to their right to priority. The Plan states whether each class of Claims is impaired or unimpaired. The Plan provides the treatment each class will receive. With respect to each class, the Disbursing Agent has not reviewed the Proofs of Claim, if any, filed by Creditors. The Disbursing Agent

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

33

1    reserves the right to object to any of the filed Claims on any reasonable grounds at any time subject

2    to the bar date limitations set forth in the Plan.

3    **B.    Unclassified Claims**

4          Certain types of Claims are not placed into voting classes; instead they are unclassified.

5    They are usually not considered impaired and they usually do not vote on the Plan because they are

6    automatically entitled to specific treatment provided for them in the Bankruptcy Code, unless agreed

7    otherwise.  As such, the Debtor has <u>not</u> placed the following Claims in a class and the treatment of

8    such claims is set forth below.

9          **1.    Administrative Expenses**

10         Administrative expenses are Claims for costs or expenses of administering the Debtor's

11   Chapter 11 Case which are allowed under Code Section 507(a)(2).  The Code requires that all

12   Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees

13   to a different treatment.  All Administrative Claims will be paid in full on the Effective Date thus

14   they are unimpaired and are not entitled to vote on the Plan.

15         Except to the extent that the holder of a particular Allowed Administrative Claim agrees to

16   a different treatment thereof, each Allowed Administrative Claim will be paid in full, in Cash, on

17   the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such

18   Administrative Claim becomes a Final Order.  Any holder of an Administrative Claim is required

19   to file a request for payment of its Administrative Claim, <u>except</u> that (i) any governmental unit

20   holding an Administrative Claim for post-petition taxes and/or interest and penalties related to such

21   taxes that are of the kind described in Bankruptcy Code Sections 503(b)(1)(B) and 503(b)(1)(C),

22   shall not be required to file an Administrative Claim as a condition of its being an Allowed

23   Administrative Claim, and (ii) Professionals employed by the Estate must file and serve a properly

24   noticed fee application and the Court must rule on the fee application.  With the exceptions noted

25   above, all other requests for payment of Administrative Claims must be filed not later than thirty

26   days after the Confirmation Date.  With the exceptions noted, any failure by the holder of an

27   Administrative Claim to file a request for payment of its Administrative Claim within thirty days

28   after the Confirmation Date will forever bar such holder of an Administrative Claim from asserting

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

34

Disclosure Statement TSSI 001 v1

its Administrative Claim against the Estate.  The following chart lists all of the <u>estimated</u> Section 507(a)(2) Administrative Claims and their treatment under the Plan:

| Name | Code § | Estimated to Be Paid on the Effective Date[8] | Treatment |
|---|---|---|---|
| Professional Fees of Shulman Hodges & Bastian LLP, attorneys for the Debtor | 507(a)(2) | $0.00 | Unless otherwise agreed, to be paid in full in Cash on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Professional Fees of The Stapleton Group | 507(a)(2) | $0.00 | Unless otherwise agreed, to be paid in full in Cash on the later of: (a) the Effective Date; or (b) the fifth Business Day after the order allowing such Administrative Claim becomes a Final Order. |
| Clerk, Bankruptcy Court Fees | 507(a)(2) | $500.00 | Paid in full on the Effective Date |
| Unpaid UST Quarterly Fees | 507(a)(2) | $0.00 | The UST Quarterly Fees as of the Effective Date are estimated and will be paid in full to the extent they are due and owing on the Effective Date.<br><br>In addition, post-confirmation quarterly fees of the UST will be paid to the extent they are due and owing until the Case is dismissed or a final decree has been entered, whichever occurs first. |
| Total | | $500 | |

The Court must rule on all Professional Fees listed in the chart above before they will be owed.  The Professionals must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of Professional Fees allowed by the Court will be owed and required to be paid under the Plan.  However, as indicated above, the Professional' Fees were covered in the Cash Collateral Stipulation.  Most importantly, the Debtor does not expect that it will incur Professional Fees above what is estimated in the Cash Collateral Stipulation and in the event

---

[8] The Professional Fees of Shulman Hodges & Bastian LLP and The Stapleton Group, as well as any UST Quarterly Fees, have been budgeted by the Debtor and to the extent they somehow exceed the Court approved cash collateral budget, will be paid by the Insider Guarantee.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

1   that it does, the Debtor's insiders have agreed to fund any such fees pursuant to the Insider
2   Guarantee.

3       As indicated above, it is anticipated that the Estate will need to pay approximately $500 in
4   Administrative Claims on the Effective Date of the Plan.  As indicated elsewhere in the Disclosure
5   Statement, the Estate will have sufficient Cash on the Effective Date to make such payment.

6       **2.**     **Priority Tax Claims**

7       Priority Tax Claims are certain unsecured income, employment and other taxes described by
8   Code Section 507(a)(8).  Except to the extent that the holder of a particular Allowed Priority Tax
9   Claim agrees to a different treatment thereof, the Code requires that each holder of an Allowed
10  Priority Tax Claim receive on account of such Claim regular installment payments -

11          a.   of a total value, as of the Effective Date of the Plan, equal to the allowed amount
12  of such Claim;

13          b.   over a period ending not later than five years after the Petition Date under Section
14  301, 302 or 303; and

15          c.   in a manner not less favorable than the most favored nonpriority Unsecured
16  Claim provided for by the Plan (other than Cash payments made to a class of creditors under Section
17  1122(b)).

18      The Debtor anticipates that there will be no Section 507(a)(8) Priority Tax Claims because
19  amended tax returns have been filed that have eliminated the Debtor's prepetition tax liabilities
20  owed to the IRS and the FTB and resulted in the IRS Refund $151,031.83, and an anticipated FTB
21  Refund in an amount to be determined after taking into account an offset of penalties and interest.

22      In any event, if it is determined that there are Section 507(a)(8) Priority Tax Claims, they
23  will be paid in full on the Effective Date.

24  **C.**    **Classified Claims**

25      **1.**     **Classes of Secured Claims**

26      Secured Claims are Claims secured by liens on property of the Estate.  After Bank is satisfied
27  upon the closing of the Sale there will be no Secured Claims in this case and thus no Secured Claims
28  will be entitled to vote on the Plan.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

36

Disclosure Statement TSSI 001 v1

1    BMW Financial Services NA LLC has filed a Secured Claim (Claim 5 on the Court's Claims

2   Register) in the amount of $5,207.92 related to the lease of a 2016 BMW X5S35I.  Toyota Lease

3   Trust/Toyota Motor Credit Corporation  has also filed a Secured Claim (Claim 3 on the Court's

4   Claims Register) in the amount of $3,716.92 related to the lease of a 2016 Lexus RX 350.  The

5   underlying leases on these two Claims are being rejected under the Plan and it is anticipated that the

6   leased vehicles will be returned to the lessors unless other arrangements are made with the respective

7   lessor's consent. To the extent that there is amount owed on these two Claims, they will be paid as

8   Class 3 General Unsecured Claims.

9       **2.**    **Classes of Priority Non-Tax Claims**

10    Certain Priority Non-Tax Claims that are referred to in Code Sections 507(a)(1), 507(a)(4),

11   507(a)(5), 507(a)(6), and 507(a)(7) are required to be placed in classes.  These types of Claims are

12   entitled to priority treatment as follows: the Code requires that each holder of such a Priority Non-

13   Tax Claim receive cash on the Effective Date equal to the allowed amount of such Claim.  However,

14   a Class of Priority Non-Tax Claim holders may vote to accept deferred cash payments of a value,

15   as of the Effective Date, equal to the allowed amount of such Claim.

16    The Debtor has no Code Section 507(a)(1), 507(a)(5), 507(a)(6), or 507(a)(7) unsecured

17   Priority Claims.

18    Bankruptcy Code Section 507(a)(4) provides fourth priority claim status as for wages,

19   salaries or commissions, including vacation, severance, and sick leave pay but only to the extent of

20   $12,850 for each individual or corporation[9], as the case may be, earned within 180 days before the

21   date of the filing of the petition or the date of the cessation of the debtor's business, whichever

22   occurs first.  The following chart sets forth the scheduled Priority Non-Tax Claims for wages and

23   commissions pursuant to Bankruptcy Code section 507(a)(4).

24

25   ───────────────

26   [9]    By a corporation with only 1 employee, acting as an independent contractor in the sale of
     goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during
27   the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation
     earned by acting as an independent contractor in the sale of goods or services was earned from the
28   Debtor.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

37

| Class | Insider Claimant | Priority Non-Tax Claim | General Unsecured Claim | Combined Total Amount To Be Treated as a Class 3 General Unsecured Claim |
|---|---|---|---|---|
| Class 2 | Fred Anavim | $12,850 | $20,915.77 | $13,785.77 |
| Class 2 | Blanca Garcia | $12,850 | $25,554.10 | $38,404.10 |
| Class 2 | Julio Garcia Sr | $12,850 | $41,381.00 | $54,231.00 |
| Class 2 | Eric Huang | $12,850 | $26,310.72 | $39,160.72 |
| Class 2 | Humberto Garcia | $12,504.36 | $12,504.36 | $25,008.72 |
| Class 2 | Julio Garcia Jr. | $12,850 | $23,548.36 | $36,398.36 |
| Class 2 | Peter Skuba | $12,850 | $24,946.47 | $37,796.47 |
| | Totals | $89,604.36 | $175,160.78 | $264,765.14 |

Each of the holders of the foregoing scheduled Non-Priority Tax Claims are insiders of the Debtor, being either a stockholder, officer or both. Each of them have agreed to waive the priority status of their Priority Non-Tax Claim amounts. As such, the above Priority Non-Tax Claim amounts will be paid on a Pro-Rata Basis with other General Unsecured Claims. Based on this, the Debtor anticipates that no Priority Non-Tax Claims will be paid under the Plan. As they will not be paid in full on the Effective Date, the holders of Priority Non-Tax Claims will be impaired and will be entitled to vote on the Plan. However, all of the insiders listed above have advised the Debtor that they approve of this treatment as they want the Sale to close. Thus, the Debtor anticipates they will each vote to accept the Plan as an impaired class.

## 3.    Class of General Unsecured Claims

General Unsecured Claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies the Plan's treatment of the classes of Claims containing all of the Estate's General Unsecured Claims (see **Exhibit 3** annexed to the Disclosure Statement for additional information about each General Unsecured Claim) (**Amounts are estimated and may include Disputed Claim amounts**):

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

38

Disclosure Statement TSSI 001 v1

| Class No. | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3 | General Unsecured Claims Based on the Debtor's Schedule F<br><br>**Total of Approximately $10 Million**<br><br>**May Include Disputed Claims.** The Disputed Claim amounts may increase once the Bar Date for filing Claims has passed and a review of all filed Proofs of Claim has been conducted. | Yes<br><br>Impaired; claims in this class are entitled to vote on the Plan | After the liquidation of the Lenovo Assets and the Sale closing, Creditors holding Allowed General Unsecured Claims will be paid a Pro Rata Share Distribution on the Effective Date from the Disbursing Agent.<br><br>Provided that the Disbursing Agent is holding sufficient funds, Allowed General Unsecured Claims shall be paid in cash on the Effective Date.<br><br>**The Distribution to General Unsecured Claims depends largely on the Sale Carve-Out, IRS Refund, Buyer Additional Consideration, any Avoidance Actions, any FTB refund, and sale of the Lenovo Assets. It is estimated that the total amount available will be at least $885,000, or an upwards of over $1,135,000. While there is no guarantee on the Distribution to General Unsecured Claims, the Debtor estimates that the Distribution to General Unsecured Claims will be approximately 8% to 12%, or more depending on the amount of the FTB Refund and the net proceeds of Avoidance Actions.** |

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent it becomes an Allowed Claim. Any Proof of Claim filed which differs from the Scheduled amount is deemed to be a Disputed Claim.

4.    **Class of Equity Interests**

The following chart identifies the Plan's treatment of holders of Equity Interests:

| Class | Description | Impaired | Treatment |
|---|---|---|---|
| 4 | Holders of Equity Interests:<br><br>• Blanca Garcia 45%<br>• Eric Huang 45%<br>• Peter Skuba 4%<br>• Fred Anavim 3%<br>• James Sullivan 3% | Yes<br>Not entitled to vote (deemed to reject), however, the holders of Equity Interests support the Sale and the Plan | The Plan will materially affect Equity Interests. Upon the Effective Date, the existing Equity Interests will effectively be cancelled. Equity Interests shall receive no Distributions. |

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

39

Disclosure Statement TSSI 001 v1

1  then only to the extent it becomes an Allowed Claim.  Any Proof of Claim filed which differs

2  from the Scheduled amount is deemed to be a Disputed Claim.

3  **D.    Means of Effectuating the Plan**

4          **1.    Funding of the Plan – Role of the Disbursing Agent**

5          Upon the Effective Date, the property of the Debtor's Estate shall vest in the Debtor and, in

6  accordance with the Plan, the Disbursing Agent will be appointed to carry out the provisions of the

7  Plan.

8          The Plan will be funded by the remaining assets of the Debtor's Estate including (i) the Sale

9  Carve-Out, (ii) the Buyer Additional Consideration, (iii) the IRS Refund, (iv) the FTB Refund, if

10  any, (v) the net sale proceeds generated from the liquidation of the Lenovo Assets, (vi) recovery

11  from any Avoidance Actions, and (vii) any other discovered or acquired assets of the Estate.  It is

12  anticipated the Distributions under the Plan will total  at least $885,000 and up to $1,135,000.

13          The Disbursing Agent shall be Chuck Klaus of ABC Services, Inc.  The Disbursing Agent

14  will oversee and administer payment to Creditors upon the Effective Date.  The Disbursing Agent

15  shall be paid 2.5% of what he distributes to Creditors. The Disbursing Agent shall also retain the

16  Debtor's counsel, Shulman Hodges & Bastian LLP, as needed to assist post-petition on a

17  contingency basis to review Claims and assess and if warranted, commence and prosecute

18  Avoidance Actions.  Professional Fees incurred for the review of Claims shall be paid from the

19  proceeds recovered from any Avoidance Actions.  The Disbursing Agent and his Professionals shall

20  also receive reimbursement of their actual expenses.  All such expenses have been included in the

21  Cash Collateral Stipulation and will not come out of the anticipated recovery for General Unsecured

22  Claims.  If additional amounts are needed for payment of Professional Fees, they will be paid by

23  insiders of the Debtor pursuant to the Insider Guarantee and in support of the success of this Case .

24          **2.    Reservation of Rights Regarding Causes of Action**

25          The Debtor and, after the Effective Date, the Disbursing Agent, reserve the right to pursue

26  any and all Causes of Action, and the Debtor hereby reserves the rights of the Disbursing Agent, to

27  pursue, administer, settle, litigate, enforce and liquidate consistent with the terms and conditions of

28  the Plan, any and all Causes of Action. The Disbursing Agent, pursuant to section 1123 and all

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

40

1  applicable law, have the requisite standing to prosecute, pursue, administer, settle, litigate, enforce

2  and liquidate any and all Causes of Action as limited by the exculpation provisions herein.

3  **E.    Post-Confirmation Management – Disbursing Agent**

4  Upon the Effective Date, Debtor's existing officers, directors, managers and other managing

5  agents shall resign.

6  Upon the Effective Date, Chuck Klaus of ABC Services, Inc., shall be appointed as the

7  Disbursing Agent to carry out the provisions of the Plan.  The Disbursing Agent has no prior

8  relationship with the Debtor.  The Disbursing Agent was chosen due to his expertise and knowledge

9  in liquidating corporations and over twenty years of experience in liquidating bankruptcy estates.

10  Other candidates for the appointment as the disbursing agent were not considered. The

11  compensation to be paid to the Disbursing Agent is reasonable in light of the duties the Disbursing

12  Agent will be required to undertake under the Plan and the efficiency with which he can seamlessly

13  step in to that role and disperse the Estate's funds.

14  The Disbursing Agent shall be responsible for all actions necessary to maintain and

15  maximize the affairs of the Debtor's Estate Post-Confirmation.  Without further notice, hearing or

16  Court order, the Disbursing Agent shall have sole and absolute discretion and exclusive authority to

17  oversee the Disbursement of the Estate's funds pursuant to the terms of the Plan.

18  The right to litigate, resolve, and settle objections to Claims (at the expense of the Estate),

19  whether or not the subject of litigation as of the Effective Date, will be vested solely in the

20  Disbursing Agent as of the Effective Date.  From and after the Effective Date, the Disbursing Agent

21  shall have the sole right to file, prosecute, litigate, and settle any objections to Claims, whether or

22  not any such objection is pending as of the Effective Date.

23  The Disbursing Agent shall have the exclusive right to investigate and prosecute any and all

24  claims of the Estate including any Causes of Action and objections to Disputed Claims.  Without

25  further notice, hearing or Court order the Disbursing Agent shall have sole and absolute discretion

26  over whether to prosecute, settle or take action with respect to any and all claims of the Estate,

27  including Causes of Action and objections to Disputed Claims.  The Disbursing Agent may

28  compromise or settle any claims of the Estate, including the Causes of Action and ligation related

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

41

Disclosure Statement TSSI 001 v1

to Disputed Claims without further notice, hearing or Court order.  The Disbursing Agent shall exercise reasonable business judgment in determining whether to prosecute, settle or take action regarding any and all claims of the Estate including the Causes of Action and objections to Disputed Claims.

The Disbursing Agent shall be responsible for preparing and filing the post-confirmation status reports as required by the Court and the UST and paying all post-confirmation quarterly fees payable to the UST until the Case is dismissed or a final decree has been entered, whichever occurs first.

**F.    Employment and Compensation of Professionals**

In carrying out his duties under the Plan, the Disbursing Agent shall employ Shulman Hodges & Bastian LLP and any other Professionals he deems are necessary and appropriate using his reasonable business judgment.  Except as set forth herein to the contrary, any Professionals employed by the Disbursing Agent in this Case after the confirmation of the Plan seeking payment of its post-confirmation fees and costs will be entitled to seek payment of such fees and costs without the need for any further order of the Bankruptcy Court.  The post-confirmation Professional Fees will be paid from funds generated by the Avoidance Actions or the Insiders Guarantee and are not anticipated to take away from the recovery to General Unsecured Creditors.

**G.    Risk Factors**

The proposed Plan has the following risks:

1.    One of the principal issues in the Case is the final closing and completion of the Sale. The Distribution to General Unsecured Claims depends entirely on the final closing of the Sale.

2.    The amount due to some Claimants has not been liquidated and is disputed.  Some of the amounts due may be subject to objection by the Disbursing Agent.  These factors could impact the Pro Rata Share Distribution to Creditors.

3.    The sale proceeds from the liquidation of the Lenovo Assets is uncertain.  Depending on the sale price, the amount available for the Distribution to General Unsecured Claims could change.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

42

Disclosure Statement TSSI 001 v1

4.      The amount or benefits that will be achieved from prosecution of Avoidance Actions is unknown and speculative.  The Disbursing Agent has not commenced his investigation of such claims or any defenses to such claims.  There is also risk inherent in any litigation and potential fees and costs that would be incurred to pursue such claims.

5.      By reason of the uncertainties inherent in the predictions of future events, the actual Distributions which will be made to the holders of Allowed Claims and Creditors may well be different from those projected, and such difference may well be material and adverse to the interest of Creditors.

The risk factors discussed herein assume confirmation and consummation of the Plan and the transactions contemplated by the Plan, and do not include matters, other than risks pertaining to the ability to fund the Plan and to pay Creditors, that could prevent confirmation or consummation. Prior to voting on the Plan, each holder of an impaired Claim should carefully consider the risk factors enumerated or referred to below as well as all of the information contained in this Disclosure Statement, and the exhibits hereto.

**H.      Post-Confirmation Estate Claims**

The right to enforce, litigate, collect, and settle, on behalf of the Estate (at the expense of the Estate), any and all Claims and Causes of Action which constitute property of the Estate including, but not limited to, any Avoidance Actions, whether or not such Claims or Causes of Action are the subject of litigation pending as of the Effective Date (collectively, the "Post-Confirmation Estate Claims"), shall be vested solely in the Disbursing Agent as of the Effective Date.  From and after the Effective Date, the Disbursing Agent shall have the sole right to enforce, file, prosecute, collect, or settle, any Post-Confirmation Estate Claims.

Any litigation based upon Post-Confirmation Estate Claims will be filed no later than two (2) years year after the Effective Date, or within any applicable limitations period, or within such additional period of time as the Bankruptcy Court may allow upon motion of the Disbursing Agent, after such notice as the Bankruptcy Court may deem appropriate.  In the event that litigation based upon any Post-Confirmation Estate Claim is not timely commenced, such Post-Confirmation Estate Claim will be deemed forever waived by the Estate and neither the Debtor, Disbursing Agent nor

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

43

Disclosure Statement TSSI 001 v1

1  any other party-in-interest will have the right to pursue the same; provided, however, that any such

2  Post-Confirmation Estate Claim may be utilized as a defense against or offset to any Claim or cause

3  of action which may be brought against the Estate.

4      Notwithstanding the rights of the Disbursing Agent with respect to Post-Confirmation Estate

5  Claims, nothing in the Plan will require the Disbursing Agent to prosecute or litigate any such

6  matters, all of which may be decided by the Disbursing Agent in his sole discretion.

7      THE DEBTOR AND THE DISBURSING AGENT HAVE NOT FULLY REVIEWED

8  WHETHER POST-CONFIRMATION ESTATE CLAIMS EXIST, INCLUDING, WITHOUT

9  LIMITATION, WHETHER OR NOT THERE ARE ANY AVOIDANCE ACTIONS WHICH

10  MAY BE BROUGHT AFTER THE EFFECTIVE DATE.  THIS INVESTIGATION IS ON-

11  GOING AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE. AS A

12  RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD BE, AND ARE

13  PURSUANT TO THE TERMS OF THE PLAN, SPECIFICALLY ADVISED THAT,

14  NOTWITHSTANDING THAT THE EXISTENCE OF ANY PARTICULAR POST-

15  CONFIRMATION ESTATE CLAIM MAY NOT BE LISTED, DISCLOSED, OR SET FORTH IN

16  THE DISCLOSURE STATEMENT OR THE PLAN, **A POST-CONFIRMATION ESTATE**

17  **CLAIM MAY BE BROUGHT AGAINST ANY CLAIMANT AT ANY TIME, SUBJECT TO**

18  **THE BAR DATE LIMITATIONS SET FORTH IN THE PLAN**.

19  I.    <u>**Objections to Claims**</u>

20      The right to file, prosecute, litigate, resolve, and/or settle objections to Claims (at the expense

21  of the Estate), whether or not any such objection or litigation is pending as of the Effective Date,

22  will be vested solely in the Disbursing Agent as of the Effective Date.

23      Notwithstanding that the Disbursing Agent shall have the right to file, litigate, prosecute,

24  and settle objections to Claims on behalf of the Estate, nothing contained herein will be deemed to

25  obligate the Disbursing Agent to take any such actions, all of which will be determined in the

26  Disbursing Agent's sole discretion.

27      **Any Claims listed as Disputed in the Disclosure Statement and Plan and the Exhibits**

28  **attached hereto will be subject to claims objections proceedings.**  HOWEVER, THE DEBTOR

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

44

Disclosure Statement TSSI 001 v1

1  AND THE DISBURSING AGENT HAVE NOT FULLY REVIEWED THE CLAIMS OR

2  DETERMINED WHETHER OBJECTIONS TO CLAIMS EXIST.  THIS INVESTIGATION IS

3  ONGOING AND WILL OCCUR IN LARGE PART AFTER THE EFFECTIVE DATE.

4  CREDITORS AND OTHER PARTIES IN INTEREST SHOULD BE, AND ARE PURSUANT TO

5  THE TERMS OF THE PLAN SPECIFICALLY ADVISED THAT, NOTWITHSTANDING THAT

6  THE EXISTENCE OF ANY PARTICULAR OBJECTION TO CLAIM MAY NOT BE LISTED,

7  DISCLOSED, OR SET FORTH HEREIN, A CLAIM OBJECTION MAY BE BROUGHT

8  AGAINST ANY CLAIMANT AT ANY TIME.

9  **J.**       **Pending Disputed General Unsecured Claims as of the Date of Distribution**

10         In the event that any objection to any General Unsecured Claim should be pending as of the

11  date on which a Distribution is owed to the holder of such General Unsecured Claim, no Distribution

12  will be made on account of such disputed General Unsecured Claim until such Disputed Claim has

13  been determined and allowed by a Final Order.  In the event that a Disputed Claim is allowed by a

14  Final Order, within five Business Days after such Disputed Claim is allowed by such Final Order,

15  such Allowed General Unsecured Claim will be paid to the extent of the Distributions previously

16  made on account of Allowed General Unsecured Claims in the same Class.  Further Distributions,

17  if any, on account of such Allowed General Unsecured Claim will be paid directly to the holder of

18  such Allowed General Unsecured Claim, in an aggregate amount not to exceed the amount of the

19  General Unsecured Claim allowed by the Final Order.

20  **K.**       **Unclaimed Distributions**

21         Distributions to holders of Allowed Claims will be made either:  (a) at the addresses set forth

22  in the Proof of Claim filed by the Creditor; or (b) at the address set forth in any written notice of

23  address change delivered to the Disbursing Agent after the date on which any related Proof of Claim

24  was filed; or (c) at the address reflected in the Schedules relating to the applicable Allowed Claim

25  if no Proof of Claim has been filed by the Creditor and the Disbursing Agent has not received a

26  written notice of a change of address.

27

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

45

Disclosure Statement TSSI 001 v1

The Disbursing Agent shall not be required to perform any investigation or inquiry as to the proper address for such Creditor if the address stated in any Proof of Claim filed by the Creditor, written notice of change of address filed by the Creditor, or in the Schedules is incorrect.

Any Unclaimed Distribution provided for under the Plan (which will include: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; or (c) checks which remain un-negotiated for a period of ninety days, will be retained and utilized by the Disbursing Agent.

Following the earlier to occur of: (a) two years after a Distribution becomes an Unclaimed Distribution, or (b) ninety days after the making of the Final Distribution under the Plan (collectively, the "Unclaimed Distribution Holding Period"), such Unclaimed Distribution will become property of the Post-Confirmation Estate , free and clear of any restrictions thereon, and the holders of Allowed Claims otherwise entitled to such Unclaimed Distributions will cease to be entitled thereto and their Claims based thereon will be deemed discharged, waived, and forever barred.

Pursuant to Bankruptcy Code Section 347, in the event that Unclaimed Distributions remaining in the Post-Confirmation Estate after five years from the date of entry of the Confirmation Order are less than $5,000, such Unclaimed Distributions shall revert to the Disbursing Agent as additional compensation for the Disbursing Agent.  In the event that Unclaimed Distributions remaining in the Post-Confirmation Estate after five years from the date of entry of the Confirmation Order are $5,001 or more, after payment of all costs of administration of the Plan including payment of Allowed Administrative Claims, Allowed Priority Claims and/or Allowed Secured Claims, such Unclaimed Distributions shall be distributed on a Pro Rata Share basis to Allowed General Unsecured Claims.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

L.      **Other Provisions of the Plan**

    1.      **Executory Contracts and Unexpired Leases**

        a.      **Assumptions**

Note – the purchase contracts to the APA are listed on Schedule 4.8 to the APA and include Frontier Communications, ABD Office Solutions, the HP Program Agreement, the HP Services Agreement, the HP Electronic Equipment Asset Recovery Agreement, TPX Communications, the Mijac Burglar Alarm, and the Mijac Fire Alarm.  These contracts are to be assumed and sold to the Buyer as part of the APA and the Sale.

        b.      **Rejections**

On the Confirmation Date, except for any executory contract or unexpired lease specifically assumed or rejected pursuant to a prior order of the Bankruptcy Court or assumed pursuant to the Plan, each executory contract or unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to Section 365 of the Bankruptcy Code.

The unexpired leases and executory contracts for which are to be rejected under the Plan include the following:

| Other Party to the Contract to Lease | Description of the Contract or Lease to be Rejected |
| --- | --- |
| BMW Car Lease | Located in Riverside, CA with an effective date of 5/19/16 and expiration date of 5/28/19 |
| San Bernardino Lease | The Debtor's corporate headquarters is located at 458 Commercial Road, San Bernardino, California. Lessor GWH Properties, LLC dated April 15, 2011 common address of 458 E. Commercial (as advised by client) located in San Bernardino, State of California. The Real Property Lease has an effective date of 4/15/11 and expiration date of 4/13/21 |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

| Other Party to the Contract to Lease | Description of the Contract or Lease to be Rejected |
|---|---|
| Calexico Lease with Pacific Rim Distribution Center, LLC | Landlord Pacific Rim Distribution Center, LLC dated March 26, 2007 as subsequently amended property known the Mexport Business Center at 1778 Carr Road Suite 4A in Calexico, California. This is a Real Property lease with an effective date of 3/26/07 |
| Transtelco Telephone Services | Telephone service list in Calexico, Juarez, and San Bernardino. |
| Insurance | An insurance accord/evidence of property insurance and summary of insurance in Calexico and San Bernardino, CA. |
| Lexus RX 350 | Lease Agreement from 2016 with Lexus Financial Services. Effective date of 5/13/2016 and expiration date of 5/12/2019. |

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section I.F.3. for the specific date for deadline for objecting to the confirmation of the Plan.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF LEASE OR CONTRACT IS THIRTY (30) DAYS FROM THE CONFIRMATION DATE.  Any Claim based on the rejection of a contract or lease will be barred if the Proof of Claim is not timely filed, unless the Court later orders otherwise.

Proofs of Claim for any Claims arising by reason of any rejection of executory contracts or unexpired leases pursuant to the Plan shall be filed and served upon the Disbursing Agent and counsel for the Disbursing Agent within thirty days after the Confirmation Date.  In the event that any such Proof of Claim is not filed and served as set forth herein, such Claim will be deemed conclusively to be waived and will be forever barred in the Case, without further notice.  Any Claim timely asserted hereunder arising out of the rejection of an executory contract or unexpired lease will be deemed to be a General Unsecured Claim under the Plan, but will not automatically become an Allowed Claim.

**2.**    **Changes In Rates Subject To Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of rates.  The Debtor is not regulated by a governmental commission.

**3.**    **Retention of Jurisdiction**

Until this Plan has been fully consummated, the Bankruptcy Court shall retain jurisdiction to the extent provided by law, including, but not limited to, the following purposes:

1.    The classification, allowance, disallowance, or estimation of the Claim of any Claimant and the re-examination of Claims which have been allowed for the purposes of determining acceptance of the Plan at the time of the Confirmation Hearing and the determination of such objections as may be filed to Claims.  The failure by the Debtor to object to or to examine any Claim for the purpose of determining acceptance of this Plan shall not be deemed to be a waiver of the right of the Disbursing Agent to object to or to re-examine the Claim, in whole or in part, at a later date.

2.    Except for as otherwise provided herein, the determination of all questions and disputes regarding title to the assets of Debtor, the Estate, or the Post-Confirmation Estate and the determination of all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any action pending as of the Confirmation Date, in which the Debtor or the Post-Confirmation Estate are a party.

3.    The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

4.    The resolution of any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor or the Estate that may be pending on the Effective Date.

5.    The modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules, or if in the best interests of the Estate and the Creditors, modification of this Plan even after the Plan has been substantially consummated.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

49

Disclosure Statement TSSI 001 v1

6.     The enforcement and interpretation of the terms and conditions of the Plan or the Confirmation Order, and the determination of such matters, and the making of such orders consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

7.     The determination, either before or after the closing of this Case, of any Claims concerning state, local, and federal taxes pursuant to Section 346, 505, 525, or 1146 of the Bankruptcy Code or other applicable law, and the Debtor's or the Estate's entitlement, if any, to tax attributes which may have been property of the Estate, either before or after the closing of this Case.

8.     The shortening or extending, for cause, of the time fixed for doing any act or thing under the Plan, on such notice, if any, as the Bankruptcy Court shall determine to be appropriate.

9.     The entry of any order, including, without limitation, any injunction, to enforce the title, rights, and powers of the Disbursing Agent, or the Post-Confirmation Estate and such limitations, restrictions, terms, and conditions of such title, rights, and powers as the Bankruptcy Court may deem necessary.

10.     The determination of any disputes arising under or relating to any order entered by the Bankruptcy Court in the Case.

11.     The determination of the validity, extent, or priority of any liens and security interests against property of Debtor, the Estate, or the Post-Confirmation Estate.

12.     The determination of all actions and proceedings which relate to pre-confirmation matters affecting the Debtor, the Post-Confirmation Estate , whether such action or proceeding is brought before or after the Effective Date.

13.     The liquidation or allowance of any Claim as well as any objection or dispute concerning any Claim of the Estate or the Post-Confirmation Estate .

14.     The determination of all questions and disputes regarding collection of assets of Debtor or the Estate as of the Confirmation Date.

15.     The entry of an order concluding and terminating the Case.

16.     Such other matters to the extent provided by law.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

**M.**    **Tax Consequences of the Plan**

CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor and/or the Estate. The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action on the Debtor's or the Estate's tax liability.

The following are the tax consequences which the Plan will have on the Debtor's or the Estate's tax liability:

DUE TO THE UNSETTLED AND COMPLEX NATURE OF SOME OF THE TAX ISSUES, AS WELL AS THE POSSIBILITY THAT DEVELOPMENTS SUBSEQUENT TO THE DATE HEREOF COULD AFFECT THE TAX CONSEQUENCES OF THE PLAN, THE FOLLOWING DISCUSSION SHOULD NOT BE REGARDED AS DEFINITIVE OR AS COVERING ALL POSSIBLE TAX CONSEQUENCES. ADDITIONALLY, THIS SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR CREDITOR OR HOLDER OF AN EQUITY INTEREST IN LIGHT OF ITS INDIVIDUAL CIRCUMSTANCES OR TO CERTAIN CREDITORS AND HOLDERS OF EQUITY INTERESTS SUBJECT TO SPECIAL TREATMENT UNDER THE FEDERAL INCOME TAX LAWS (FOR EXAMPLE, LIFE INSURANCE COMPANIES, TAX-EXEMPT ORGANIZATIONS, FOREIGN CORPORATIONS AND INDIVIDUALS WHO ARE NOT CITIZENS OR RESIDENTS OF THE UNITED STATES).

THIS SUMMARY DOES NOT DISCUSS ANY ASPECT OF STATE, LOCAL OR FOREIGN TAXATION. HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FEDERAL, STATE, LOCAL, AND FOREIGN) TO THEM OF THE PLAN.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

1    This summary is based upon the laws, regulations, rulings, and decisions in effect on the

2    date hereof and upon certain proposed and temporary regulations, all of which are subject to change

3    (possibly with retroactive effect) by legislation, administrative action or judicial decision.

4    Moreover, due to a lack of definitive judicial or administrative authority and interpretation,

5    substantial uncertainties exist with respect to various tax consequences of the Plan as discussed

6    herein.  No further rulings have been or are expected to be requested from the IRS or any state tax

7    agency concerning any of the tax matters described herein.  There can be no assurance that the IRS

8    or any state tax agency will not challenge the positions taken with respect to any of the issues

9    addressed herein or that a court of competent jurisdiction would not sustain such a challenge.

10    The amount of tax liabilities, if any, will be affected by any deduction the Debtor or its Estate

11    will be entitled to during the year.  The Debtor cannot estimate the amount of tax liabilities that will

12    be incurred.

13    **V.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

14    PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

15    SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

16    CONFIRMING A CHAPTER 11 PLAN IS VERY COMPLEX.  The following discussion is

17    intended solely for the purpose of alerting readers about basic confirmation issues, which they may

18    wish to consider, as well as certain deadlines for filing Claims.  The Debtor CANNOT and DOES

19    NOT represent that the discussion contained below is a complete summary of the law on this topic.

20    Many requirements must be met before the Court can confirm a Plan.  Some of the

21    requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

22    the Plan pays Creditors at least as much as Creditors would receive in a Chapter 7 liquidation, and

23    whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

24    **A.    Who May Vote Or Object**

25    **1.    Who May Object To Confirmation Of The Plan**

26    Any party in interest may object to the confirmation of the Plan, but as explained below not

27    everyone is entitled to vote to accept or reject the Plan.

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

52

Disclosure Statement TSSI 001 v1

2.      **Who May Vote To Accept The Plan**

A Creditor has a right to vote for or against the Plan if that Creditor has a Claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

3.      **What Is An Allowed Claim**

As noted above, a Creditor or holder of Equity Interests must first have an Allowed Claim or interest to have the right to vote. Generally, any Proof of Claim or interest will be allowed, unless a party in interest brings a motion objecting to the Claim. When an objection to a Claim or interest is filed, the Creditor or interest holder holding the Claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the Claim for voting purposes.

**THE BAR DATE FOR FILING A PROOF CLAIM IN THIS CASE IS NOVEMBER 15, 2018 FOR NON-GOVERNMENTAL ENTITIES AND MARCH 31, 2018 FOR GOVERNMENTAL ENTITIES**. A Creditor may have an Allowed Claim even if a proof of Claim was not timely filed. A Claim is deemed allowed if (i) it is scheduled on the Debtor's Schedules and such Claim is not scheduled as disputed, contingent, or unliquidated, and (ii) no party in interest has objected to the Claim.

4.      **What Is An Impaired Claim**

As noted above, an Allowed Claim only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured Creditors is impaired if the Plan fails to pay the members of that class 100% of what they are owed. Here, General Unsecured Claims are impaired, because they will not be paid in full on the Effective Date.

Parties who dispute the Plan's characterization of their Claim as being impaired or unimpaired may file an objection to the Plan contending that the Plan has incorrectly characterized their Claim.

5.      **Who Is Not Entitled To Vote**

The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in unimpaired classes; (3) Claims entitled to priority pursuant to Code Sections 507(a)(2), 507(a)(3), and 507(a)(8); and (4) Claims in classes that do not receive or retain

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

53

Disclosure Statement TSSI 001 v1

1  any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes

2  are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Code Sections

3  507(a)(2), 507(a)(3), and (a)(8) are not entitled to vote because such Claims are not placed in classes

4  and they are required to receive certain treatment specified by the Code.  Claims in classes that do

5  not receive or retain any value under the Plan do not vote because such classes are deemed to have

6  rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY

7  STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

8        **6.**     **<u>Who Can Vote In More Than One Class</u>**

9       A Creditor whose Claim has been allowed in part as a Secured Claim and in part as a General

10  Unsecured Claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the

11  secured part of the Claim and another ballot for the unsecured Claim.

12        **7.**     **<u>Votes Necessary To Confirm The Plan</u>**

13       If impaired classes exist, the Court cannot confirm the Plan unless (i) at least one impaired

14  class has accepted the Plan without counting the votes of any insiders within that class, and (ii) all

15  impaired classes have voted to accept the Plan, unless that Plan is eligible to be confirmed by

16  "cramdown" on non-accepting classes, as discussed below.

17        **8.**     **<u>Votes Necessary For A Class To Accept The Plan</u>**

18       A class of Claims is considered to have accepted the Plan when more than one-half (1/2) in

19  number and at least two-thirds (2/3) in dollar amount of the Claims which actually voted, voted in

20  favor of the Plan.

21        **9.**     **<u>Treatment Of Non-Accepting Classes</u>**

22       As noted above, even if all impaired classes do not accept the proposed Plan, the Court may

23  nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the

24  Code.  The process by which non-accepting classes are forced to be bound by the terms of a Plan is

25  commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on non-

26  accepting classes of Claims if it meets all consensual requirements except the voting requirements

27  of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable"

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

54

Disclosure Statement TSSI 001 v1

1  toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. Section

2  1129(b) and applicable case law.

3  　　　　If an impaired class votes against the Plan, confirmation of the Plan is still possible

4  (cramdown) so long as the Plan is fair and equitable and the non-consenting class is afforded certain

5  treatment defined by the Code.  That certain treatment may be very broadly defined as giving a

6  claimant the "full value" of his claim.  Such value is determined by the Court and balanced against

7  the treatment afforded the dissenting class of creditors.  If the latter is equal to or greater than the

8  former, the Plan may be confirmed despite the objection of that dissenting class, depending upon

9  the treatment of junior claims.  In particular, senior claims must be satisfied in full prior to payment

10  of junior claims, unless the holder of senior claims agree to different treatment.  This principle,

11  commonly known as the "absolute priority rule," applies only in cases when a class of unsecured

12  claims is impaired and does not accept the Plan.  In that event, the absolute priority rule does not

13  apply to all classes of unsecured claims, but only to the dissenting class and classes junior to the

14  dissenting class.

15  　　　**10.**　　**Request For Confirmation Despite Nonacceptance by Impaired Class(es)**

16  　　　　The Debtor will ask the Court to confirm the Plan by cramdown on impaired Classes if such

17  Classes do not vote to accept the Plan.

18  **B.**　　**Liquidation Analysis**

19  　　　　Another confirmation requirement is the "Best Interest Test", which requires a liquidation

20  analysis.  Under the Best Interest Test, if a Claimant is in an impaired class and that Claimant does

21  not vote to accept the Plan, then that Claimant must receive or retain under the Plan property of a

22  value not less than the amount that such holder would receive or retain if the Debtor's assets were

23  liquidated under Chapter 7 of the Bankruptcy Code.

24  　　　　In a Chapter 7 case, a debtor's assets are usually sold by a Chapter 7 trustee.  Secured

25  Creditors are paid first from the sale proceeds of properties on which the secured Creditor has a lien.

26  Administrative Claims are paid next.  Next, unsecured Creditors are paid from any remaining sale

27  proceeds, according to their rights to priority.  Unsecured Creditors with the same priority share in

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

Disclosure Statement TSSI 001 v1

1   proportion to the amount of their Allowed Claim in relationship to the amount of total allowed

2   unsecured Claims.

3          For the Court to be able to confirm the Plan, the Court must find that all Creditors who do

4   not accept the Plan will receive at least as much under the Plan as such holders would receive under

5   a Chapter 7 liquidation.  The Debtor maintains that this requirement is met here.  If no chapter 11

6   plan can be confirmed, the Debtor's chapter 11 case may be converted to a case under chapter 7 of

7   the Bankruptcy Code to liquidate the assets of the Debtor for distribution in accordance with the

8   priorities established by the Bankruptcy Code. The Debtor believes that liquidation under chapter 7

9   would result in significantly lower distributions being made to creditors than those provided for in

10  the Plan because, among other reasons, (1) additional administrative expenses would be incurred in

11  a chapter 7 liquidation, specifically those of a chapter 7 trustee charging statutory fees of up to 3%

12  of disbursements and any costs of new counsel to the chapter 7 trustee to become familiar with the

13  facts and circumstances of this Case, and (2) the additional delay in distributions that would occur

14  if the Debtor's chapter 11 case is converted to a case under chapter 7.

15         In a Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy

16  estate; however, through the Plan, no trustee's compensation and expenses will be incurred.  The

17  trustee's potential rates are significant because any amount, even 2-3%, would be an added cost to

18  the Estate that would not be born if the Plan is confirmed as-is.

19         In addition, because the Chapter 7 Trustee will replace the Professionals currently employed

20  by the Estate, the Chapter 7 Trustee's new professionals will burden the Estate with substantial fees

21  to become familiar with the issues of this Case. Although these fees are difficult to estimate, they

22  could result in additional administrative expenses of approximately $100,000 more to assist the

23  Trustee in pursuit of the litigation claims of the Estate and to simply familiarize themselves with

24  what the current Debtor and its counsel already know.  Based upon the foregoing, the estimate for

25  liquidation analysis for the Chapter 7 administrative expenses has been conservatively estimated at

26  $100,000 (Trustee's compensation and expenses plus the compensation and expenses of his

27  professionals).

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

56

Disclosure Statement TSSI 001 v1

Under the Best Interests Test, all that is required is for Creditors to receive as much as they would under Chapter 7 of the Bankruptcy Code.  Here, the Debtor believes the Best Interests Test has been met in that under the Plan, Creditors will receive as much or more than they would receive under a Chapter 7 liquidation.

Below is a demonstration, in balance sheet format, that all Creditors will receive at least as much under the Plan as such Creditor would receive under a Chapter 7 liquidation.  The information regarding value of the assets has been taken from the documents and pleadings filed in the Debtor's Case.

### ASSETS VALUED AT LIQUIDATION VALUES

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE |
|---|---|
| Cash on Hand  - Cash from the Sale Carve-Out | $350,000 |
| Cash on Hand – Cash from the IRS Refund | $151,000 |
| Liquidation of the Lenovo Assets<br>If liquidated by a Chapter 7 Trustee, the Debtor expects the sale price will be less than if the Debtor can liquidate the Lenovo Assets | $200,000 |
| Buyer Additional Consideration | $135,452.67 |
| Avoidance Actions | $N/A |
| Franchise Tax Board Recovery | $N/A |
| **Total Assets At Liquidation Value** | $836,452.67 |
| **LESS LIABILITIES IN CHAPTER 7 CASE** | |
| Less: Chapter 7 trustee's fees and expenses | ($100,000) |
| Less: Chapter 11 administrative expenses – estimated | ($0) |
| Less: Priority wage claims | $ 89,604.36 |
| **(1) Balance for General Unsecured Claims** | $646,848.31 |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

57

Disclosure Statement TSSI 001 v1

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE |
|---|---|
| **(2) Total amount of Unsecured Claims (Approximate)** (Includes Disputed Claims) | **$10,000,000** |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION:** | 6.47% |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:** | 8% to 12% |

| Amount of Funds Available | $646,848.31 |
|---|---|
| Total Unsecured Creditors | $10,000,000 |
| Estimated Distribution Percentage | 6.47% |

| Amount of Funds Available | $1,135,000 |
|---|---|
| Less Administrative | $.00 |
| Total Unsecured Creditors | $10,000,000 |
| Estimated Distribution Percentage | 8% to 12% |

Creditors receive more favorable treatment under the Plan. If no chapter 11 plan can be confirmed, the Debtor's chapter 11 case may be converted to a case under chapter 7 of the Bankruptcy Code to liquidate the assets of the Debtor for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtor believes that liquidation under chapter 7 would result in lower distributions being made to creditors than those provided for in the Plan because, among other reasons, (1) additional administrative expenses would be incurred in a chapter 7 liquidation, specifically those of a chapter 7 trustee charging statutory fees of up to 3% of disbursements and any costs of counsel to the chapter 7 trustee to become familiar with the facts and circumstances of this Case, (2) the additional delay in distributions that would occur if the Debtor's chapter 11 case was converted to a case under chapter 7, and (3) the priority status of the insiders' Priority Non-Tax Claims will be not waived, resulting in a reduction of funds for payment of General Unsecured Claims.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

58

Disclosure Statement TSSI 001 v1

1       The Debtor has considered the options and has concluded that the Plan offers the best and

2 highest recoveries for Creditors. The Debtor has concluded that the Plan provides greater potential

3 recoveries for Creditors than any feasible alternative.

4 **C.**      <u>**Feasibility**</u>

5       Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan is not

6 likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor

7 or any successors to the Debtor under the Plan, unless such liquidation or reorganization is proposed

8 in the Plan. The Plan provides for a liquidation of the Debtor's remaining assets and a distribution

9 of the Cash proceeds to Creditors in accordance with the priority scheme of the Bankruptcy Code

10 and the terms of the Plan.  The Debtor will not be conducting any business operations after the

11 Effective Date.  The ability to make distributions described in the Plan therefore does not depend

12 on future earnings or operations of the Debtor, but only on the orderly liquidation of the Debtor's

13 remaining assets. Accordingly, the Debtor believes that the Plan is feasible and meets the

14 requirements of section 1129(a)(11) of the Bankruptcy Code.

15       YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL

16 ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL

17 STATEMENTS.

18         **VI.**     <u>**EFFECT OF CONFIRMATION OF THE PLAN**</u>

19 **A.**      <u>**Discharge**</u>

20       Because this is a liquidating plan, as provided in Code Section 1141, the Debtor shall not be

21 discharged of liability for payment of debts incurred before confirmation of the Plan.

22 **B.**      <u>**Exculpation**</u>

23       Upon the Effective Date, except as expressly set forth otherwise in the Plan, the Debtor, the

24 Reorganized Debtor, professionals with a court order approving employment, the Disbursing Agent,

25 and/or the Disbursing Agent's professionals, shall be deemed to have no liability for any act or

26 omission in connection with, or arising out of the pursuit of approval of a disclosure statement; the

27 negotiation, preparation, solicitation of acceptance or rejection of the plan and pursuit of plan

28 confirmation; the consummation and/or administration of the Plan; the post-petition pursuit of offers

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

59

Disclosure Statement TSSI 001 v1

1  to sell assets; the property to be distributed under the Plan; any contract, instrument, document or

2  other agreement entered into pursuant thereto through and including the Effective Date or as

3  contemplated by the Plan, except for liability: (a) for damages proximately caused by (i) intentional

4  misconduct as finally determined by a Final Order of the Bankruptcy Court or (ii) gross negligence

5  in connection with (1) implementing the Distribution provisions of the Plan and (2) the making or

6  withholding of Distributions pursuant to the Plan; (b) other than liability resulting from the order of

7  payment of any such Distributions if such order of payment is not expressly set forth in the Plan.

8      Notwithstanding the foregoing, nothing herein shall release the Reorganized Debtor from its

9  duties and obligations under the Plan.  Each released person shall in all respects be entitled to

10  reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

11  **C.    Vesting of the Post-Confirmation Estate**

12      Except as provided elsewhere in the Plan, on the Effective Date, the property of the Post-

13  Confirmation Estate is to be administered by the Disbursing Agent pursuant to the Plan free and

14  clear of any Claims, liens, encumbrances, or interests of Creditors, holders of Equity Interests,

15  parties-in-interest, and other entities. After the Confirmation Date, the sale of any property of the

16  Post-Confirmation Estate shall not be subject to or require Court approval.

17      From and after the Effective Date, the Disbursing Agent on behalf of the Post-Confirmation

18  Estate, may acquire and dispose of property and settle and compromise claims without supervision

19  by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules,

20  other than restrictions expressly imposed by the Plan, the Confirmation Order, and any document,

21  agreement, or instrument delivered in connection therewith.

22      Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded

23  in the Plan and the treatment of all Claims in the Plan will be in exchange for and in complete

24  satisfaction, discharge, and release of all Claims (including Administrative Claims and any interest

25  accrued on any Claim from and after the Petition Date) against the Debtor and any of its assets.

26  **D.    Modification of the Plan**

27      The Debtor may modify the Plan at any time before confirmation.  However, the Court may

28  require a new disclosure statement and/or re-voting on the Plan.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

60

Disclosure Statement TSSI 001 v1

1    The Disbursing Agent may also seek to modify the Plan at any time after confirmation only

2   if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the

3   proposed modifications after notice and a hearing.

4    If the Bankruptcy Court determines that a post-confirmation modification of the Plan is in

5   the best interest of the Estate and the Creditors, even after substantial consummation of the Plan,

6   then, notwithstanding the provisions of Section 1127(b) of the Bankruptcy Code, the Bankruptcy

7   Court may authorize such modification of the Plan, after notice and a hearing, in such manner and

8   under such conditions, as the Bankruptcy Court deems appropriate.   Such modifications shall not

9   include any change to the injunction pursuant to Section 105 of the Bankruptcy Code.

10   **E.    Post-Confirmation Status Reports**

11    Within 120 days of the entry of the order confirming the Plan, the Disbursing Agent shall

12   file a status report with the Bankruptcy Court explaining what progress has been made toward

13   consummation of the confirmed Plan.  The status report shall be served on the United States Trustee

14   and those parties who have requested special notice in the Case.  Further status reports shall be filed

15   every 120 days and served on the same entities.

16   **F.    Post-Confirmation Conversion/Dismissal**

17    A Creditor or party in interest may bring a motion to convert or dismiss the case under

18   Section 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the

19   Bankruptcy Court orders the case converted to Chapter 7 after the Plan is confirmed, then all

20   property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant

21   to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the

22   revested property, but only to the extent that relief from stay was not previously authorized by the

23   Court during this case.  The order confirming the Plan may also be revoked under very limited

24   circumstances, but such revocation shall not shall include any revocation or change to the injunction

25   pursuant to Section 105 of the Bankruptcy Code.  The Court may revoke the order if the order of

26   confirmation was procured by fraud and if a party in interest brings an adversary proceeding to

27   revoke confirmation within 180 days after the entry of the order of confirmation.

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

61

Disclosure Statement TSSI 001 v1

1  G.    **Substantial Consummation**

2        Upon the Effective Date, the Plan will be deemed substantially consummated under

3  Bankruptcy Code sections 1101 and 1127(b).

4  Dated: October 29, 2018

5                          **TECHNOLOGY SOLUTIONS & SERVICES, INC.**

6

7                          _____

8                          Julio C. Garcia, CFO

9  **SHULMAN HODGES & BASTIAN LLP**

10  /s/ Leonard M. Shulman

11  Leonard M. Shulman
    Melissa Davis Lowe
12  Ryan Baggs
    Proposed Attorneys for Technology Solutions & Services,
13  Inc., the Debtor and Debtor in Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

62

Disclosure Statement TSSI 001 v1

# DECLARATION

## DECLARATION OF JULIO GARCIA, JR.

I, Julio Garcia, Jr. , declare:

1.     I am the CFO of Technology Solutions & Services, Inc. the debtor and debtor in possession ("Debtor"). I am over the age of 18 and I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto. I am also personally familiar with, and am custodian of, the records of the Debtor as they pertain to the financial records set forth herein. The records of the Debtor are made by employees or agents of the Debtor who report to me and who have a business duty to enter the records of the Debtor accurately and at or near the time of the event which they record

2.     I make this declaration in support of approval of the Disclosure Statement for the Chapter 11 Liquidating Plan Proposed by the Debtor ("Disclosure Statement").

3.     I have personal knowledge of the matters set forth in this Declaration and if called upon to testify, I could and would testify competently thereto.

4.     I have read the Disclosure Statement, to the best of my knowledge, all of the information contained therein is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 29, 2018, at San Bernardino, California.

Julio Garcia, Jr.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

63

Disclosure Statement TSSI 001 v1

# EXHIBIT 1-A

## Payments Totaling Made to Creditors Ninety Days
## Prior to the Petition Date

Case 6:18-bk-18339-MH    Doc 74    Filed 10/02/18    Entered 10/02/18 16:14:12    Desc
Main Document    Page 58 of 93

TECHNOLOGY SOLUTIONS & SERVICES, INC.

Statement of Financial Affairs, Item 3, Certain payments or transfers to creditors within 90 days before filing
this case

# Exhibit 1-A

**Technology Solutions Services, Inc**
**Check Register**
**For the Period From Jun 15, 2018 to Sep 15, 2018**

Filter Criteria includes:

| Check # | Date | Payee | Cash Account | Amount | |
|---|---|---|---|---|---|
| 30117 | 7/1/18 | AETNA | 10350 | 2,086.48 | |
| 30237 | 8/10/18 | AETNA | 10350 | 13,253.46 | |
| 30244 | 8/16/18 | AETNA | 10350 | 708.25 | |
| 30245 | 8/16/18 | AETNA | 10350 | 857.07 | |
| 30303 | 9/7/18 | AETNA | 10350 | 8,766.18 | 25,671.44 |
| 30099 | 6/22/18 | ATLANTIC SEMICONDUCTOR | 10350 | 9,725.00 | |
| 30149 | 7/13/18 | ATLANTIC SEMICONDUCTOR | 10350 | 5,665.00 | |
| 30187 | 7/26/18 | ATLANTIC SEMICONDUCTOR | 10350 | 2,870.00 | |
| 30211 | 8/10/18 | ATLANTIC SEMICONDUCTOR | 10350 | 7,035.00 | |
| 30257 | 8/24/18 | ATLANTIC SEMICONDUCTOR | 10350 | 6,615.00 | 31,910.00 |
| 30138 | 7/13/18 | CHEVRON & TEXACO BUSINESS CARD | 10350 | 2,682.41 | |
| 30242 | 8/15/18 | CHEVRON & TEXACO BUSINESS CARD | 10350 | 2,858.41 | |
| 30309 | 9/13/18 | CHEVRON & TEXACO BUSINESS CARD | 10350 | 2,276.90 | 7,817.72 |
| D2D6/15/18 | 6/15/18 | DEAL2DEAL MARKETING GROUP INC | 10350 | 45,000.00 | |
| 30158 | 7/17/18 | DEAL2DEAL MARKETING GROUP INC | 10350 | 45,000.00 | 90,000.00 |
| 30108 | 6/29/18 | DIGI PRINTING SOLUTIONS | 10350 | 7,786.00 | |
| 30156 | 7/13/18 | DIGI PRINTING SOLUTIONS | 10350 | 3,780.00 | |
| 30190 | 7/26/18 | DIGI PRINTING SOLUTIONS | 10350 | 6,050.00 | |
| 30203 | 8/3/18 | DIGI PRINTING SOLUTIONS | 10350 | 5,040.00 | |
| 30213 | 8/10/18 | DIGI PRINTING SOLUTIONS | 10350 | 1,430.51 | |
| 30258 | 8/24/18 | DIGI PRINTING SOLUTIONS | 10350 | 9,160.00 | 33,246.51 |
| 30132 | 7/2/18 | ECOM DIRECT, INC. | 10350 | 4,987.70 | |
| 30159 | 7/17/18 | ECOM DIRECT INC. | 10350 | 11,000.00 | 15,987.70 |
| eesource6/29/18 | 6/29/18 | EESOURCE CORP. | 10350 | 26,315.00 | |
| EE SOUSRCES8/ | 8/16/18 | EESOURCE CORP. | 10350 | 14,005.00 | 40,320.00 |
| 30100 | 6/22/18 | EPES LOGISTICS SERVICES INC. | 10350 | 11,956.62 | |
| 30111 | 7/1/18 | EPES LOGISTICS SERVICES INC. | 10350 | 3,669.77 | |
| 30115 | 7/1/18 | EPES LOGISTICS SERVICES INC. | 10350 | 2,693.92 | |
| 30151 | 7/13/18 | EPES LOGISTICS SERVICES INC. | 10350 | 4,352.74 | |
| 30189 | 7/26/18 | EPES LOGISTICS SERVICES INC. | 10350 | 5,051.01 | |
| 30194 | 7/26/18 | EPES LOGISTICS SERVICES INC. | 10350 | 3,754.50 | |
| 30212 | 8/10/18 | EPES LOGISTICS SERVICES INC. | 10350 | 4,611.65 | |
| 30218 | 8/10/18 | EPES LOGISTICS SERVICES INC. | 10350 | 2,215.97 | |
| 30259 | 8/24/18 | EPES LOGISTICS SERVICES INC. | 10350 | 3,986.40 | |
| 30266 | 8/24/18 | EPES LOGISTICS SERVICES INC. | 10350 | 3,468.58 | |
| 30294 | 9/7/18 | EPES LOGISTICS SERVICES INC. | 10350 | 2,069.82 | 47,830.98 |
| 30122 | 7/1/18 | FEDEX | 10350 | 512.78 | |
| 30142 | 7/13/18 | FEDEX | 10350 | 705.61 | |
| 30183 | 7/26/18 | FEDEX | 10350 | 194.52 | |
| 30229 | 8/10/18 | FEDEX | 10350 | 409.73 | |
| 30262 | 8/24/18 | FEDEX | 10350 | 134.85 | |
| 30279 | 8/24/18 | FEDEX | 10350 | 14,633.88 | 16,591.37 |
| 30079 | 6/15/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 72,800.81 | |
| 30098 | 6/22/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 45,553.63 | |
| 30137 | 7/13/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 55,997.02 | |
| 30165 | 7/19/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 24,092.73 | |
| 30176 | 7/26/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 73,478.53 | |
| 30202 | 8/7/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 32,655.84 | |
| 30239 | 8/10/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 19,340.56 | |
| 30248 | 8/16/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 68,850.61 | |
| 30256 | 8/24/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 33,363.71 | |
| 30288 | 9/1/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 40,219.27 | |

# Exhibit 1-A

**Technology Solutions Services, Inc**
Check Register
For the Period From Jun 15, 2018 to Sep 15, 2018

Filter Criteria includes:

| Check # | Date | Payee | Cash Account | Amount | |
|---------|------|-------|--------------|--------|---|
| 30293 | 9/7/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 40,799.23 | |
| 30321 | 9/14/18 | GLOBAL CONTAINERS & CUSTOM PACKAING | 10350 | 43,029.65 | 550,181.59 |
| | | | | | |
| 30101 | 6/22/18 | GLOBAL TRANZ | 10350 | 2,600.00 | |
| 30116 | 7/1/18 | GLOBAL TRANZ | 10350 | 2,600.00 | |
| 30152 | 7/13/18 | GLOBAL TRANZ | 10350 | 2,600.00 | |
| 30155 | 7/13/18 | GLOBAL TRANZ | 10350 | 2,600.00 | |
| 30188 | 7/26/18 | GLOBAL TRANZ | 10350 | 2,600.00 | |
| 30193 | 7/26/18 | GLOBAL TRANZ | 10350 | 2,600.00 | |
| 30214 | 8/10/18 | GLOBAL TRANZ | 10350 | 3,300.00 | |
| 30217 | 8/10/18 | GLOBAL TRANZ | 10350 | 2,600.00 | |
| 30261 | 8/24/18 | GLOBAL TRANZ | 10350 | 2,600.00 | |
| 30265 | 8/24/18 | GLOBAL TRANZ | 10350 | 2,800.00 | |
| 30296 | 9/7/18 | GLOBAL TRANZ | 10350 | 2,600.00 | 29,500.00 |
| | | | | | |
| 30170 | 7/23/18 | GWH Properties LLp | 10350 | 10,000.00 | 10,000.00 |
| | | | | | |
| 30215 | 8/10/18 | HERMAN PACKAGING COMPANY | 10350 | 2,211.00 | |
| 30260 | 8/24/18 | HERMAN PACKAGING COMPANY | 10350 | 1,729.35 | |
| 30297 | 9/7/18 | HERMAN PACKAGING COMPANY | 10350 | 1,787.10 | |
| 30124 | 7/1/18 | HERNANDEZ BROKERS, LLC | 10350 | 1,467.17 | |
| 30145 | 7/13/18 | HERNANDEZ BROKERS, LLC | 10350 | 1,355.20 | |
| 30230 | 8/10/18 | HERNANDEZ BROKERS, LLC | 10350 | 5,572.79 | |
| 30317 | 9/14/18 | HERNANDEZ BROKERS, LLC | 10350 | 3,299.03 | 17,421.64 |
| | | | | | |
| 30112 | 7/1/18 | HOUSTON FOAM PLASTICS | 10350 | 6,398.50 | |
| 30167 | 7/20/18 | HOUSTON FOAM PLASTICS | 10350 | 5,536.75 | |
| 30191 | 7/26/18 | HOUSTON FOAM PLASTICS | 10350 | 3,438.50 | |
| 30240 | 8/8/18 | HOUSTON FOAM PLASTICS | 10350 | 9,887.55 | |
| 30216 | 8/10/18 | HOUSTON FOAM PLASTICS | 10350 | 4,867.32 | |
| 30263 | 8/24/18 | HOUSTON FOAM PLASTICS | 10350 | 1,735.00 | |
| 30295 | 9/7/18 | HOUSTON FOAM PLASTICS | 10350 | 5,103.00 | 36,966.62 |
| | | | | | |
| 30078 | 6/15/18 | HP INC. | 10350 | 1,588,614.28 | |
| 30129 | 7/1/18 | HP INC. | 10350 | 364,454.00 | |
| 30161 | 7/18/18 | HP INC. | 10350 | 327,855.00 | |
| 30162 | 7/18/18 | HP INC. | 10350 | 237,532.02 | |
| 30169 | 7/20/18 | HP INC. | 10350 | 400,000.00 | |
| 30247 | 8/16/18 | HP INC. | 10350 | 96,903.38 | |
| 30310 | 9/13/18 | HP INC. | 10350 | 250,000.00 | |
| HP-LA 6/15/18 | 6/15/18 | Hewlett-Packard Latin America | 10350 | 40,200.00 | |
| HP-LA-MX6/15/18 | 6/15/18 | Hewlett-Packard Latin America | 10350 | 40,200.00 | |
| HP-LA-MX6/26/18 | 6/26/18 | Hewlett-Packard Latin America | 10350 | 12,628.00 | |
| HP-LA-MX6/29/18 | 6/29/18 | Hewlett-Packard Latin America | 10350 | 14,848.00 | |
| HP-LA | 7/23/18 | Hewlett-Packard Latin America | 10350 | 10,902.00 | |
| hp-LA8/10/18 | 8/10/18 | Hewlett-Packard Latin America | 10350 | 2,350.00 | |
| HP-LA8/16/18 | 8/16/18 | Hewlett-Packard Latin America | 10350 | 14,500.00 | |
| HP-LA 8/31/18 | 8/31/18 | Hewlett-Packard Latin America | 10350 | 9,120.00 | 3,410,106.68 |
| | | | | | |
| LAPTOP PLZ7/23/ | 7/23/18 | LAPTOP PLAZA INC. | 10350 | 26,298.95 | 26,298.95 |
| | | | | | |
| 30125 | 7/1/18 | PACIFIC RIM DISTRIBUTION LLC | 10350 | 13,176.23 | |
| 30233 | 8/10/18 | PACIFIC RIM DISTRIBUTION LLC | 10350 | 13,176.23 | |
| 30241 | 8/14/18 | PACIFIC RIM DISTRIBUTION LLC | 10350 | 790.57 | 27,143.03 |
| | | | | | |
| quanta 7/18/18 | 7/18/18 | QUANTA COMPUTER INC. | 10350 | 16,417.95 | |
| quanta7/23/18 | 7/23/18 | QUANTA COMPUTER INC. | 10350 | 14,173.75 | |
| QUANTA8/16/18 | 8/16/18 | QUANTA COMPUTER INC. | 10350 | 19,403.40 | |
| quanta8/24/18 | 8/24/18 | QUANTA COMPUTER INC. | 10350 | 11,353.70 | 61,348.80 |
| | | | | | |
| 30102 | 6/22/18 | RM CUSTOMHOUSE BROKERS | 10350 | 305.67 | |
| 30114 | 7/1/18 | RM CUSTOMHOUSE BROKERS | 10350 | 1,277.49 | |

# Exhibit 1-A

Technology Solutions Services, Inc
Check Register
For the Period From Jun 15, 2018 to Sep 15, 2018

Filter Criteria includes:

| Check # | Date | Payee | Cash Account | Amount | |
|---------|------|-------|--------------|--------|---|
| 30153 | 7/13/18 | RM CUSTOMHOUSE BROKERS | 10350 | 358.11 | |
| 30192 | 7/26/18 | RM CUSTOMHOUSE BROKERS | 10350 | 1,753.05 | |
| 30219 | 8/10/18 | RM CUSTOMHOUSE BROKERS | 10350 | 1,053.38 | |
| 30264 | 8/24/18 | RM CUSTOMHOUSE BROKERS | 10350 | 880.91 | |
| 30298 | 9/7/18 | RM CUSTOMHOUSE BROKERS | 10350 | 2,693.60 | 8,322.21 |
| | | | | | |
| 30081 | 6/15/18 | SHULMAN HODGES & BASTIAN LLP | 10350 | 10,000.00 | |
| 30238 | 8/10/18 | SHULMAN HODGES & BASTIAN LLP | 10350 | 25,000.00 | |
| shulman9/7/18 | 9/7/18 | SHULMAN HODGES & BASTIAN LLP | 10350 | 30,000.00 | |
| retainer 9/12/18 | 9/12/18 | SHULMAN HODGES & BASTIAN LLP | 10350 | 20,000.00 | 85,000.00 |
| | | | | | |
| 30126 | 7/1/18 | STAPLETON GROUP | 10350 | 10,315.00 | |
| STAPELTON7/13/ | 7/13/18 | STAPLETON GROUP | 10350 | 10,315.00 | |
| 30184 | 7/26/18 | STAPLETON GROUP | 10350 | 2,655.00 | |
| 30289 | 9/5/18 | STAPLETON GROUP | 10350 | 13,990.00 | 37,275.00 |
| | | | | | |
| 30195 | 7/26/18 | TMX LOGISTIC INC | 10350 | 8,501.10 | 8,501.10 |
| | | | | | |
| wistron7/24/18 | 7/24/18 | WISTRON CORPORATION | 10350 | 18,086.90 | |
| WISTRON8/16/18 | 8/16/18 | WISTRON CORPORATION | 10350 | 23,344.45 | 41,431.35 |
| | | | | | |
| XPC half theinvoic | 6/21/18 | XPC, S.A. DE C.V. | 10350 | 31,500.00 | |
| XPC 6/29/18 | 6/29/18 | XPC, S.A. DE C.V. | 10350 | 31,500.00 | |
| XPC7/19/18 | 7/19/18 | XPC, S.A. DE C.V. | 10350 | 55,500.00 | |
| XPC8/3/18 | 8/3/18 | XPC, S.A. DE C.V. | 10350 | 31,500.00 | |
| XPC8/16/18 | 8/16/18 | XPC, S.A. DE C.V. | 10350 | 63,000.00 | |
| xpc 8/23/18 | 8/23/18 | XPC, S.A. DE C.V. | 10350 | 31,500.00 | |
| xpc 8/31/18 | 8/31/18 | XPC, S.A. DE C.V. | 10350 | 31,500.00 | |
| xpc 9/7/18 | 9/7/18 | XPC, S.A. DE C.V. | 10350 | 31,500.00 | |
| xpc9/13/18 | 9/13/18 | XPC, S.A. DE C.V. | 10350 | 31,500.00 | 339,000.00 |
| | | | | | |
| **Total** | | | | **4,997,872.69** | **4,997,872.69** |

# Exhibit 1-A

**EXHIBIT 1-B**

**Payments to Insiders Made One Year Prior to the
Petition Date**

Case 6:18-bk-18339-MH   Doc 44   Filed 10/02/18   Entered 10/02/18 16:14:12   Desc
Main Document    Page 32 of 93

TECHNOLOGY SOLUTIONS & SERVICES, INC.

Statement of Financial Affairs, Item 4, Payments or other transfers of property made within 1 year before filing
this case that benefitted any insider

# Exhibit 1-B

## Technology Solutions Services, Inc
### Check Register
### For the Period From Sep 1, 2017 to Aug 31, 2018

Filter Criteria includes: 1) Vendor ID's from HUANG to HUANG. Report order is by Date.

| Check # | Date | Payee | Cash Account | | Amount | |
|---|---|---|---|---|---|---|
| 5033 | 9/1/17 | ERIC HUANG | 10360 | | 4,208.43 | |
| 5055 | 9/15/17 | ERIC HUANG | 10360 | | 4,208.43 | |
| 5077 | 9/29/17 | ERIC HUANG | 10360 | | 4,262.52 | 12,679.38 |
| 5099 | 10/13/17 | ERIC HUANG | 10360 | | 4,263.82 | |
| 5121 | 10/27/17 | ERIC HUANG | 10360 | | 4,389.72 | 8,653.54 |
| 5143 | 11/10/17 | ERIC HUANG | 10360 | | 4,645.35 | |
| 5165 | 11/24/17 | ERIC HUANG | 10360 | | 4,645.35 | 9,290.70 |
| 5186 | 12/8/17 | ERIC HUANG | 10360 | | 4,645.35 | |
| 5208 | 12/22/17 | ERIC HUANG | 10360 | | 4,645.35 | |
| 5233 | 12/29/17 | ERIC HUANG | 10360 | | 4,645.35 | |
| 5234 | 12/29/17 | ERIC HUANG | 10360 | | 2,620.22 | 16,556.27 |
| 5263 | 1/19/18 | ERIC HUANG | 10360 | | 4,385.12 | 4,385.12 |
| 5283 | 2/2/18 | ERIC HUANG | 10360 | | 4,385.12 | |
| 5302 | 2/16/18 | ERIC HUANG | 10360 | | 4,385.12 | 8,770.24 |
| 5324 | 3/2/18 | ERIC HUANG | 10360 | | 4,385.13 | |
| 5343 | 3/16/18 | ERIC HUANG | 10360 | | 4,385.12 | |
| 5362 | 3/30/18 | ERIC HUANG | 10360 | | 4,385.12 | 13,155.37 |
| 5380 | 4/13/18 | ERIC HUANG | 10360 | | 4,385.11 | |
| 29941 | 4/24/18 | ERIC HUANG | 10350 | Travel Exp | 812.97 | |
| 5398 | 4/27/18 | ERIC HUANG | 10360 | | 4,385.12 | 9,583.20 |
| 5416 | 5/11/18 | ERIC HUANG | 10360 | | 4,385.12 | |
| 5434 | 5/25/18 | ERIC HUANG | 10360 | | 4,385.12 | |
| 30030 | 5/29/18 | ERIC HUANG | 10350 | | 1,197.54 | 9,967.78 |
| 5452 | 6/8/18 | ERIC HUANG | 10360 | | 4,385.12 | |
| 5470 | 6/22/18 | ERIC HUANG | 10360 | | 4,385.13 | |
| 30103 | 6/25/18 | ERIC HUANG | 10350 | Travel Exp | 845.82 | 9,616.07 |
| 5488 | 7/6/18 | ERIC HUANG | 10360 | | 4,385.12 | |
| 5506 | 7/20/18 | ERIC HUANG | 10360 | | 4,385.12 | 8,770.24 |
| 5524 | 8/3/18 | ERIC HUANG | 10360 | | 4,385.12 | |
| 5542 | 8/17/18 | ERIC HUANG | 10360 | | 4,385.12 | |
| 5560 | 8/31/18 | ERIC HUANG | 10360 | | 4,385.12 | |
| 30208 | 8/8/18 | ERIC HUANG | 10350 | Travel Exp | 1,365.06 | |
| 30282 | 8/28/18 | ERIC HUANG | 10350 | Travel Exp | 1,606.71 | 16,127.13 |
| **Total** | | | | | **127,555.04** | **127,555.04** |

# Exhibit 1-B

Technology Solutions Services, Inc
Check Register
For the Period From Sep 1, 2017 to Aug 31, 2018

Filter Criteria includes: 1) Vendor ID's from GARCIA SR to GARCIA,...

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| 5037 | 9/1/17 | JULIO C GARCIA | 10360 | 6,588.81 |
| 5059 | 9/15/17 | JULIO C GARCIA | 10360 | 6,588.82 |
| 5081 | 9/29/17 | JULIO C GARCIA | 10360 | 6,588.81 |
| 29295 | 10/12/17 | JULIO C GARCIA | 10350 | 10,000.00 |
| 5103 | 10/13/17 | JULIO C GARCIA | 10360 | 6,588.81 |
| 29300 | 10/16/17 | JULIO C GARCIA | 10350 | 2,350.00 |
| 5125 | 10/27/17 | JULIO C GARCIA | 10360 | 6,580.95 |
| 29339 | 11/6/17 | JULIO C GARCIA | 10350 | 2,354.00 |
| 5147 | 11/10/17 | JULIO C GARCIA | 10360 | 6,502.73 |
| 5169 | 11/24/17 | JULIO C GARCIA | 10350 | 2,380.00 |
| 29457 | 12/4/17 | JULIO C GARCIA | 10360 | 6,502.73 |
| 5190 | 12/8/17 | JULIO C GARCIA | 10350 | 10,000.00 |
| 29499 | 12/13/17 | JULIO C GARCIA | 10360 | 6,502.72 |
| 5212 | 12/22/17 | JULIO C GARCIA | 10360 | 6,502.72 |
| 5241 | 12/29/17 | JULIO C GARCIA | 10360 | 3,646.18 |
| 5242 | 1/19/18 | JULIO C GARCIA | 10350 | 10,000.00 |
| 29602 | 1/19/18 | JULIO C GARCIA | 10360 | 6,249.98 |
| 5267 | 2/2/18 | JULIO C GARCIA | 10350 | 2,354.00 |
| 29664 | 2/2/18 | JULIO C GARCIA | 10360 | 6,249.97 |
| 5287 | 2/13/18 | JULIO C GARCIA | 10350 | 10,000.00 |
| 29716 | 2/16/18 | JULIO C GARCIA | 10360 | 6,249.99 |
| 5306 | 3/2/18 | JULIO C GARCIA | 10360 | 6,249.98 |
| 5328 | 3/16/18 | JULIO C GARCIA | 10360 | 6,249.97 |
| 5347 | 3/30/18 | JULIO C GARCIA | 10360 | 6,249.98 |
| 5366 | 4/13/18 | JULIO C GARCIA | 10360 | 6,249.98 |
| 5384 | 4/17/18 | JULIO C GARCIA | 10350 | 2,400.00 |
| 29919 | 4/27/18 | JULIO C GARCIA | 10360 | 6,249.98 |
| 5402 | 5/11/18 | JULIO C GARCIA | 10360 | 6,249.98 |
| 5420 | 5/25/18 | JULIO C GARCIA | 10360 | 6,249.97 |
| 5438 | 6/8/18 | JULIO C GARCIA | 10360 | 6,249.98 |
| 5456 | 6/22/18 | JULIO C GARCIA | 10360 | 6,249.98 |
| 5474 | 7/6/18 | JULIO C GARCIA | 10360 | 6,343.76 |
| 5492 | 7/20/18 | JULIO C GARCIA | 10360 | 6,687.58 |
| 5510 | 8/3/18 | JULIO C GARCIA | 10360 | 6,938.68 |
| 5528 | 8/17/18 | JULIO C GARCIA | 10360 | 6,938.68 |
| 5546 | 8/31/18 | JULIO C GARCIA | 10360 | 6,938.68 |
| 5564 | | | | |

total                                                          229,781.12

9/5/2018 at 4:26 PM

# Exhibit 1-B

**Technology Solutions Services, Inc**

**Check Register**

**For the Period From Sep 1, 2017 to Aug 31, 2018**

Filter Criteria includes: 1) Vendor ID's from GARCIA SR to GARCIA,...

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| 5034 | 9/1/17 | JULIO C GARCIA | 10360 | 3,751.56 |
| 5056 | 9/15/17 | JULIO C GARCIA | 10360 | 3,751.56 |
| 5078 | 9/29/17 | JULIO C GARCIA | 10360 | 3,751.56 |
| 5100 | 10/13/17 | JULIO C GARCIA | 10360 | 3,782.83 |
| 5122 | 10/27/17 | JULIO C GARCIA | 10360 | 3,803.03 |
| 5144 | 11/10/17 | JULIO C GARCIA | 10360 | 3,803.04 |
| 5166 | 11/24/17 | JULIO C GARCIA | 10360 | 4,072.25 |
| 5187 | 12/8/17 | JULIO C GARCIA | 10360 | 4,157.62 |
| 5209 | 12/22/17 | JULIO C GARCIA | 10360 | 4,157.62 |
| 5235 | 12/29/17 | JULIO C GARCIA | 10360 | 4,157.62 |
| 5236 | 12/29/17 | JULIO C GARCIA | 10360 | 2,326.02 |
| 5240 | 12/29/17 | JULIO C GARCIA | 10360 | 2,405.65 |
| 5264 | 1/19/18 | JULIO C GARCIA | 10360 | 3,919.80 |
| 5284 | 2/2/18 | JULIO C GARCIA | 10360 | 3,919.80 |
| 5303 | 2/16/18 | JULIO C GARCIA | 10360 | 3,919.79 |
| 5325 | 3/2/18 | JULIO C GARCIA | 10360 | 3,919.80 |
| 5344 | 3/16/18 | JULIO C GARCIA | 10360 | 3,919.81 |
| 5363 | 3/30/18 | JULIO C GARCIA | 10360 | 3,919.80 |
| 5381 | 4/13/18 | JULIO C GARCIA | 10360 | 3,919.79 |
| 5399 | 4/27/18 | JULIO C GARCIA | 10360 | 3,919.80 |
| 5417 | 5/11/18 | JULIO C GARCIA | 10360 | 3,919.80 |
| 5435 | 5/25/18 | JULIO C GARCIA | 10360 | 3,919.80 |
| 5453 | 6/8/18 | JULIO C GARCIA | 10360 | 3,919.80 |
| 5471 | 6/22/18 | JULIO C GARCIA | 10360 | 3,919.79 |
| 5489 | 7/6/18 | JULIO C GARCIA | 10360 | 3,919.81 |
| 30164 | 7/19/18 | JULIO C GARCIA | 10350 | 25,000.00 |
| 5507 | 7/20/18 | JULIO C GARCIA | 10360 | 3,949.35 |
| 5525 | 8/3/18 | JULIO C GARCIA | 10360 | 3,919.80 |
| 5543 | 8/17/18 | JULIO C GARCIA | 10360 | 3,919.79 |
| 5561 | 8/31/18 | JULIO C GARCIA | 10360 | 3,919.80 |

Total                               135,586.49

# Exhibit 1-B

Technology Solutions Services, Inc
Check Register
For the Period From Sep 1, 2017 to Aug 31, 2018

Filter Criteria includes: 1) Vendor ID's from GARCIA SR to GARCIA,,,.

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| 5036 | 9/1/17 | HUMBERTO A GARCIA | 10360 | 3,860.57 |
| 29170 | 9/8/17 | HUMBERTO A GARCIA | 10350 | 2,011.83 |
| 5058 | 9/15/17 | HUMBERTO A GARCIA | 10360 | 3,860.57 |
| 5080 | 9/29/17 | HUMBERTO A GARCIA | 10360 | 3,860.57 |
| 5102 | 10/13/17 | HUMBERTO A GARCIA | 10360 | 3,891.84 |
| 5124 | 10/27/17 | HUMBERTO A GARCIA | 10360 | 3,912.04 |
| 5146 | 11/10/17 | HUMBERTO A GARCIA | 10360 | 3,912.05 |
| 5168 | 11/24/17 | HUMBERTO A GARCIA | 10360 | 4,181.26 |
| 5189 | 12/8/17 | HUMBERTO A GARCIA | 10360 | 4,266.63 |
| 5211 | 12/22/17 | HUMBERTO A GARCIA | 10360 | 4,266.63 |
| 5239 | 12/29/17 | HUMBERTO A GARCIA | 10360 | 4,266.63 |
| 5266 | 1/19/18 | HUMBERTO A GARCIA | 10360 | 4,031.64 |
| 29656 | 1/30/18 | HUMBERTO A GARCIA | 10350 | 4,242.58 |
| 5286 | 2/2/18 | HUMBERTO A GARCIA | 10360 | 4,031.64 |
| 5305 | 2/16/18 | HUMBERTO A GARCIA | 10360 | 4,031.63 |
| 5327 | 3/2/18 | HUMBERTO A GARCIA | 10360 | 4,031.64 |
| 5346 | 3/16/18 | HUMBERTO A GARCIA | 10360 | 4,031.65 |
| 5365 | 3/30/18 | HUMBERTO A GARCIA | 10360 | 4,031.64 |
| 5383 | 4/13/18 | HUMBERTO A GARCIA | 10360 | 4,031.63 |
| 5401 | 4/27/18 | HUMBERTO A GARCIA | 10360 | 4,031.64 |
| 29958 | 4/30/18 | HUMBERTO A GARCIA | 10350 | 2,534.64 |
| 5419 | 5/11/18 | HUMBERTO A GARCIA | 10360 | 4,031.64 |
| 5437 | 5/25/18 | HUMBERTO A GARCIA | 10360 | 4,168.12 |
| 5455 | 6/8/18 | HUMBERTO A GARCIA | 10360 | 4,168.12 |
| 5473 | 6/22/18 | HUMBERTO A GARCIA | 10360 | 4,168.11 |
| 5491 | 7/6/18 | HUMBERTO A GARCIA | 10360 | 4,168.13 |
| 5509 | 7/20/18 | HUMBERTO A GARCIA | 10360 | 4,168.12 |
| 5527 | 8/3/18 | HUMBERTO A GARCIA | 10360 | 4,168.12 |
| 5545 | 8/17/18 | HUMBERTO A GARCIA | 10360 | 4,168.11 |
| 5563 | 8/31/18 | HUMBERTO A GARCIA | 10360 | 4,168.12 |
| Total | | | | 118,697.54 |

# Exhibit 1-B

**Technology Solutions Services, Inc**

Check Register

**For the Period From Sep 1, 2017 to Aug 31, 2018**

Filter Criteria includes: 1) Vendor ID's from SKUBA to SKUBA.

| Check # | Date | Payee | Cash Account | Amount |
|---|---|---|---|---|
| 5035 | 9/1/17 | PETER SKUBA | 10360 | 3,992.20 |
| 5057 | 9/15/17 | PETER SKUBA | 10360 | 3,992.21 |
| 5079 | 9/29/17 | PETER SKUBA | 10360 | 3,992.21 |
| 5101 | 10/13/17 | PETER SKUBA | 10360 | 4,032.47 |
| 5123 | 10/27/17 | PETER SKUBA | 10360 | 4,044.13 |
| 5145 | 11/10/17 | PETER SKUBA | 10360 | 4,044.13 |
| 5167 | 11/24/17 | PETER SKUBA | 10360 | 4,384.64 |
| 5188 | 12/8/17 | PETER SKUBA | 10360 | 4,401.82 |
| 5210 | 12/22/17 | PETER SKUBA | 10360 | 4,401.81 |
| 5237 | 12/29/17 | PETER SKUBA | 10360 | 4,401.82 |
| 5238 | 12/29/17 | PETER SKUBA | 10360 | 2,472.25 |
| 5265 | 1/19/18 | PETER SKUBA | 10360 | 4,157.74 |
| 5285 | 2/2/18 | PETER SKUBA | 10360 | 4,157.74 |
| 5304 | 2/16/18 | PETER SKUBA | 10360 | 4,157.74 |
| 5326 | 3/2/18 | PETER SKUBA | 10360 | 4,157.74 |
| 5345 | 3/16/18 | PETER SKUBA | 10360 | 4,157.75 |
| 5364 | 3/30/18 | PETER SKUBA | 10360 | 4,157.75 |
| 5382 | 4/13/18 | PETER SKUBA | 10360 | 4,157.73 |
| 5400 | 4/27/18 | PETER SKUBA | 10360 | 4,157.75 |
| 5418 | 5/11/18 | PETER SKUBA | 10360 | 4,157.75 |
| 5436 | 5/25/18 | PETER SKUBA | 10360 | 4,157.74 |
| 5454 | 6/8/18 | PETER SKUBA | 10360 | 4,157.75 |
| 5472 | 6/22/18 | PETER SKUBA | 10360 | 4,157.73 |
| 5490 | 7/6/18 | PETER SKUBA | 10360 | 4,157.75 |
| 5508 | 7/20/18 | PETER SKUBA | 10360 | 4,157.75 |
| 5526 | 8/3/18 | PETER SKUBA | 10360 | 4,157.74 |
| 5544 | 8/17/18 | PETER SKUBA | 10360 | 4,157.74 |
| 5562 | 8/31/18 | PETER SKUBA | 10360 | 4,157.74 |
| **Total** | | | | **114,841.33** |

9/5/2018 at 4:28 PM

# Exhibit 1-B

**Technology Solutions Services, Inc**

Check Register

**For the Period From Sep 1, 2017 to Aug 31, 2018**

Filter Criteria includes: 1) Vendor ID's from GARCIA to GARCIA.

| Check # | Date | Payee | Cash Account | Amount |
|---|---|---|---|---|
| 5032 | 9/1/17 | BLANCA GARCIA | 10360 | 4,076.80 |
| 5054 | 9/15/17 | BLANCA GARCIA | 10360 | 4,076.81 |
| 5076 | 9/29/17 | BLANCA GARCIA | 10360 | 4,122.35 |
| 29263 | 10/4/17 | BLANCA GARCIA | 10350 | 100,000.00 |
| 5098 | 10/13/17 | BLANCA GARCIA | 10360 | 4,131.74 |
| 5120 | 10/27/17 | BLANCA GARCIA | 10360 | 4,192.55 |
| 5142 | 11/10/17 | BLANCA GARCIA | 10360 | 4,510.17 |
| 5164 | 11/24/17 | BLANCA GARCIA | 10360 | 4,510.18 |
| 5185 | 12/8/17 | BLANCA GARCIA | 10360 | 4,510.17 |
| 5207 | 12/22/17 | BLANCA GARCIA | 10360 | 4,510.17 |
| 5231 | 12/29/17 | BLANCA GARCIA | 10360 | 4,510.18 |
| 5232 | 12/29/17 | BLANCA GARCIA | 10360 | 2,553.62 |
| 5262 | 1/19/18 | BLANCA GARCIA | 10360 | 4,259.01 |
| 5282 | 2/2/18 | BLANCA GARCIA | 10360 | 4,259.02 |
| 5301 | 2/16/18 | BLANCA GARCIA | 10360 | 4,259.01 |
| 5323 | 3/2/18 | BLANCA GARCIA | 10360 | 4,259.03 |
| 5342 | 3/16/18 | BLANCA GARCIA | 10360 | 4,259.01 |
| 5361 | 3/30/18 | BLANCA GARCIA | 10360 | 4,259.02 |
| 5379 | 4/13/18 | BLANCA GARCIA | 10360 | 4,259.01 |
| 5397 | 4/27/18 | BLANCA GARCIA | 10360 | 4,259.01 |
| 5415 | 5/11/18 | BLANCA GARCIA | 10360 | 4,259.02 |
| 5433 | 5/25/18 | BLANCA GARCIA | 10360 | 4,259.01 |
| 5451 | 6/8/18 | BLANCA GARCIA | 10360 | 4,259.02 |
| 5469 | 6/22/18 | BLANCA GARCIA | 10360 | 4,259.02 |
| 5487 | 7/6/18 | BLANCA GARCIA | 10360 | 4,259.01 |
| 5505 | 7/20/18 | BLANCA GARCIA | 10360 | 4,259.02 |
| 30200 | 8/2/18 | BLANCA GARCIA | 10350 | 22.48 |
| 5523 | 8/3/18 | BLANCA GARCIA | 10360 | 4,259.01 |
| 5541 | 8/17/18 | BLANCA GARCIA | 10360 | 4,259.02 |
| 5559 | 8/31/18 | BLANCA GARCIA | 10360 | 4,259.01 |
| Total | | | | 218,130.48 |

9/5/2018 at 4:30 PM

# Exhibit 1-B

## Technology Solutions Services, Inc

### Check Register

### For the Period From Sep 1, 2017 to Aug 31, 2018

Filter Criteria includes: 1) Vendor ID's from ANAVIM to ANAVIM.

| Check # | Date | Payee | Cash Acco | Amount |
|---|---|---|---|---|
| 5021 | 9/1/17 | FRED ANAVIM | 10360 | 3,359.03 |
| 29207 | 9/12/17 | FRED ANAVIM | 10350 | 251.00 |
| 5043 | 9/15/17 | FRED ANAVIM | 10360 | 3,359.04 |
| 29217 | 9/20/17 | FRED ANAVIM | 10350 | 724.20 |
| 29242 | 9/26/17 | FRED ANAVIM | 10350 | 20,000.00 |
| 5065 | 9/29/17 | FRED ANAVIM | 10360 | 3,359.02 |
| 29286 | 10/11/17 | FRED ANAVIM | 10350 | 203.00 |
| 5087 | 10/13/17 | FRED ANAVIM | 10360 | 3,359.03 |
| 5109 | 10/27/17 | FRED ANAVIM | 10360 | 3,359.03 |
| 5131 | 11/10/17 | FRED ANAVIM | 10360 | 3,359.02 |
| 29398 | 11/16/17 | FRED ANAVIM | 10350 | 178.00 |
| 29419 | 11/24/17 | FRED ANAVIM | 10350 | 708.25 |
| 29420 | 11/24/17 | FRED ANAVIM | 10350 | 857.07 |
| 5153 | 11/24/17 | FRED ANAVIM | 10360 | 3,359.04 |
| 29490 | 12/8/17 | FRED ANAVIM | 10350 | 168.90 |
| 29491 | 12/8/17 | FRED ANAVIM | 10350 | 168.90 |
| 29492 | 12/8/17 | FRED ANAVIM | 10350 | 125.00 |
| 5175 | 12/8/17 | FRED ANAVIM | 10360 | 3,359.02 |
| 5196 | 12/22/17 | FRED ANAVIM | 10360 | 3,388.16 |
| 5219 | 12/29/17 | FRED ANAVIM | 10360 | 3,400.12 |
| 5220 | 12/29/17 | FRED ANAVIM | 10360 | 1,906.32 |
| 29576 | 1/5/18 | FRED ANAVIM | 10350 | 174.00 |
| 5251 | 1/19/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 5271 | 2/2/18 | FRED ANAVIM | 10360 | 3,485.95 |
| 29713 | 2/13/18 | FRED ANAVIM | 10350 | 857.07 |
| 29714 | 2/13/18 | FRED ANAVIM | 10350 | 708.25 |
| 5291 | 2/16/18 | FRED ANAVIM | 10360 | 3,485.97 |
| 29732 | 2/23/18 | FRED ANAVIM | 10350 | 168.50 |
| 5310 | 3/2/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 5331 | 3/16/18 | FRED ANAVIM | 10360 | 3,485.95 |
| 29828 | 3/23/18 | FRED ANAVIM | 10350 | 337.80 |
| 5350 | 3/30/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 29873 | 4/3/18 | FRED ANAVIM | 10350 | 192.00 |
| 5368 | 4/13/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 5386 | 4/27/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 5404 | 5/11/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 29978 | 5/14/18 | FRED ANAVIM | 10350 | 105.00 |
| 29982 | 5/16/18 | FRED ANAVIM | 10350 | 857.07 |
| 29983 | 5/16/18 | FRED ANAVIM | 10350 | 708.25 |
| 5422 | 5/25/18 | FRED ANAVIM | 10360 | 3,485.95 |
| 30067 | 6/8/18 | FRED ANAVIM | 10350 | 105.00 |
| 5440 | 6/8/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 5458 | 6/22/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 30131 | 7/2/18 | FRED ANAVIM | 10350 | 337.80 |
| 5476 | 7/6/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 30154 | 7/13/18 | FRED ANAVIM | 10350 | 111.00 |
| 30163 | 7/18/18 | FRED ANAVIM | 10350 | 25,000.00 |
| 5494 | 7/20/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 30206 | 8/3/18 | FRED ANAVIM | 10350 | 234.00 |
| 5512 | 8/3/18 | FRED ANAVIM | 10360 | 3,485.96 |
| 30244 | 8/16/18 | FRED ANAVIM | 10350 | 708.25 |
| 30245 | 8/16/18 | FRED ANAVIM | 10350 | 857.07 |
| 5530 | 8/17/18 | FRED ANAVIM | 10360 | 3,485.95 |
| 5548 | 8/31/18 | FRED ANAVIM | 10360 | 3,485.96 |

| Total | | | | 149,673.50 |

# Exhibit 1-B

# EXHIBIT 2

# Sale Order

1  Leonard M. Shulman - Bar No. 126349
   Melissa Davis Lowe - Bar No. 245521
2  **SHULMAN HODGES & BASTIAN LLP**
   100 Spectrum Center Drive, Suite 600
3  Irvine, California 92618
   Telephone:    (949) 340-3400
4  Facsimile:    (949) 340-3000
   Email:        LShulman@shbllp.com
5                MLowe@shbllp.com

6  Proposed Bankruptcy Counsel for Technology
   Solutions & Services, Inc., Debtor and Debtor in
7  Possession

FILED & ENTERED

OCT 24 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY cargill      DEPUTY CLERK

CHANGES MADE BY COURT

8              **UNITED STATES BANKRUPTCY COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

10

11  In re                                Case No. 6:18-bk-18339 MH

12  **TECHNOLOGY SOLUTIONS &**            Chapter 11
    **SERVICES, INC., a California corporation,**
13                                        **ORDER GRANTING DEBTOR AND**
            Debtor.                       **DEBTOR IN POSSESSION'S MOTION**
14                                        **FOR ORDER:**

15                                        **(1) APPROVING THE SALE OF**
                                              **SUBSTANTIALLY ALL OF THE**
16                                            **ASSETS OF THE ESTATE FREE**
                                              **AND CLEAR OF LIENS PURSUANT**
17                                            **TO BANKRUPTCY CODE §§**
                                              **363(b)(1);**
18                                        **(2) APPROVING THE ASSUMPTION**
                                              **AND ASSIGNMENT OF**
19                                            **EXECUTORY CONTRACTS; AND**
                                          **(3) GRANTING RELATED RELIEF**
20

21                                        Hearing:
                                          Date:   October 23, 2018
22                                        Time:   2:00 p.m.
                                          Place:  Courtroom 303
23                                                 3420 Twelfth Street
                                                   Riverside, CA 92501
24

25        The Motion of Technology Solutions & Services, Inc., a California corporation, the debtor

26  and debtor in possession herein ("Debtor") for an order: (1) Approving the Sale of Substantially All

27  of the Assets of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code Section 363(b)(1)

28  and (f) and Subject to Overbids; (2) Approving the Assumption and Assignment of Executory

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

5438-001

**Exhibit 2**

1

1  Contracts; and (3) Granting Related Relief ("Motion") (docket number 8) came on for shortened

2  time and continued hearing on October 17, 2018, the Honorable Mark D. Houle, United States

3  Bankruptcy Judge presiding.

4      The Debtor appeared through its counsel, Shulman Hodges & Bastian LLP, by Melissa

5  Davis Lowe.  Other parties appeared as reflected in the Court's record.

6      Having considered the Motion, the declarations and other evidence submitted in support of

7  the Motion, all objections and replies thereto, the record and proceedings in the Debtor's bankruptcy

8  case, the arguments of counsel at the hearing, and for other good cause shown,

9      IT IS HEREBY FOUND AND DETERMINED THAT:

10     A.     Proper, timely, adequate, and sufficient notice of the Motion, and of the proposed

11  relief described therein, was given by the Debtor and such notice was reasonable and appropriate

12  under the circumstances and comports in all regards with the requirements of due process, section

13  102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, and 6004.

14     B.     The Debtor has entered into that certain Asset Purchase Agreement filed on October

15  15, 2018 ("Agreement") with Valu Tech Outsourcing, LLC, or its assignee ("Purchaser"), as

16  purchaser, on the terms and conditions more fully set forth in the Agreement and incorporated

17  herein by reference.  In the Agreement, Debtor agreed to sell to Purchaser all of Debtor's rights, title

18  and interest in and to the Purchased Assets in exchange for the Purchase Price, as those terms are

19  defined in the Agreement.

20     C.     A reasonable opportunity to object or be heard regarding the relief requested in the

21  Motion has been afforded to all interested persons and entities.

22     D.     The execution and delivery of the Agreement by the Debtor, and the consummation

23  of the transactions contemplated thereby, including the provisions thereof with respect to the

24  conveyance and assignment of the Purchased Assets free and clear of liens, is in the best interests of

25  the Debtor, its creditors, and its bankruptcy estate ("Estate").  The total consideration to be realized

26  by the Debtor under the Agreement represents fair consideration and reasonably equivalent value.

27  As a result, there exists good and sufficient business justification to consummate the transactions

28  contemplated by the Agreement pursuant to sections 105, 363, and 365 of the Bankruptcy Code.

# Exhibit 2

E.      The conveyance and assignment of the Purchased Assets pursuant to the Agreement will be a legal, valid, and effective transfer of the Purchased Assets to the Purchaser, and will vest the Purchaser with all right, title and interest of the Debtor in and to the Purchased Assets free and clear of all liens, claims and interests of Bank of America, N.A., and the Internal Revenue Service (collectively, "Lienholders").

F.      Sale of the Purchased Assets free and clear of all liens is appropriate under section 363(f) in that (a) the Lienholders have consented (or by their failure to object to the sale are deemed to have consented) to the transfer of the Purchased Assets free and clear of their respective prepetition and postpetition liens pursuant to section 363(f)(2) of the Bankruptcy Code; and/or (b) each lien, including, but not limited to the IRS Lien,[1] is subject to a bona fide dispute and as such, the Purchased Assets can be sold free and clear of such liens pursuant to section 363(f)(4).  As a result, all Lienholders shall be forever barred from asserting their liens or any claims against the Purchaser, its nominees, designees, successors and assigns, and the Purchased Assets.

G.      The assumption, assignment, sale and transfer of the contracts and leases assumed under the Agreement ("Assumed Contracts") to the Purchaser is or will be a legal, valid and effective transfer, and will vest the Purchaser with all right, title and interest in and to the Assumed Contracts, free and clear of all liens.

H.      Adequate assurance exists that the Purchaser will fully perform all future obligations under the Assumed Contracts being assumed and assigned to the Purchaser.

I.      The Agreement was negotiated, proposed, and entered into by the parties, in good faith, and from arm's-length bargaining positions.  The Purchaser is not an "insider" of the Debtor within the meaning of section 101(31) of the Bankruptcy Code, and Purchaser is unrelated to the Debtor in that there is no substantial similarity between or among the ultimate shareholders of the Debtor and the Purchaser.  As a result, upon consummation of the transactions contemplated by the Agreement, the Purchaser will be a purchaser in "good faith" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to the protections afforded thereby.  Neither the

---

[1] Any capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

# Exhibit 2

1  Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Agreement, or

2  the transfers contemplated thereby, to be avoided under Bankruptcy Code section 363(n).  If the

3  Debtor consummates the transactions contemplated by the Agreement absent a stay pending appeal

4  of this Order, the reversal or modification on appeal of this Order shall not affect the validity of the

5  contemplated transactions.

6      NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS

7  FOLLOWS

8      1.    Pursuant to Sections 105, 363(b) and (f) of the Bankruptcy Code, the Motion is

9  granted, and the Debtor is authorized to sell the Purchased Assets to Purchaser free and clear of all

10  liens and claims of Lienholders pursuant to the terms of this Order and the Agreement.

11      2.    The terms and conditions of, and the transactions contemplated by, the Agreement

12  between the Debtor and the Purchaser are hereby authorized and approved; and, pursuant to sections

13  105 and 363 of the Bankruptcy Code, the Debtor, including those designated by the Debtor, hereby

14  is fully authorized and empowered to (a) execute, deliver, perform under, consummate, and

15  implement the Agreement, (b) execute all additional instruments and documents of any kind or

16  nature whatsoever that may be reasonably necessary or desirable to implement the Agreement and

17  the transactions contemplated thereby, including, without limitation, sale and assignment

18  documents, bills of sale and closing statements, and amendments to the Assumed Contracts, (c) take

19  all further actions as may be necessary or appropriate for the purpose of assigning, transferring,

20  granting or conveying its interest in the Purchased Assets to the Purchaser as contemplated by the

21  Agreement, and (d) take such other and further steps as are contemplated thereby to fulfill their

22  obligations thereunder or as may be necessary to effectuate the terms of this Order.

23      3.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, and Bankruptcy Rule

24  6004, upon the closing of the Agreement, the Purchased Assets shall be sold, transferred, and

25  assigned to the Purchaser free and clear of all liens and claims of Lienholders.  Notwithstanding

26  anything to the contrary contained in this Order or in the Agreement, the following assets are

27  excluded from the Purchased Assets and will not be conveyed or transferred pursuant to this Order:

28  (i) the Refurbish-Surplus Product Agreement by and between Lenovo (United States) Inc. (together

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

# Exhibit 2
4

1   with its affiliates, collectively, "Lenovo") and Technology Solutions & Services, Inc., effective as

2   of September 17, 2015 (the "Lenovo Agreement"), (ii) all Lenovo products, devices, parts, or

3   related assets, wherever located (the "Lenovo Assets").  Neither the Lenovo Agreement nor the

4   Lenovo Assets may be transferred, moved or otherwise disposed of absent compliance with all

5   applicable laws and regulations in connection with such transfer and disposition and (A) written

6   agreement with Lenovo, or (B) further order of this Court following at least 10 days prior notice (or

7   such lesser period as may be agreed to by Lenovo), and an opportunity to object and be heard for

8   Lenovo.  All of the Lenovo Assets shall be removed from the Juarez facility by the time of the

9   closing of the sale related to the assets of Technology Solutions & Services SA De CV.

10        4.     Bank of America, N.A., ("Bank") shall receive the sum of Seven Million Dollars

11   ($7,000,000.00) directly from the Buyer immediately upon the Closing of the sale pursuant to the

12   terms set forth in the Agreement, that, with the collateral to be realized and retained by Bank

13   pursuant to the provisions of Paragraph 7 of this Order, shall be  in full satisfaction of any and all of

14   Bank's  liens, claims or encumbrances against the Debtor.

15        5.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy

16   Rule 6004 and 6006, and in accordance with the Agreement, the Debtor is hereby authorized,

17   effective as of the Closing, to sell, assume and assign to Purchaser the Assumed Contracts, with the

18   exception of the Lexus RX350 which will not be assumed and assigned to the Purchaser.  Effective

19   as of the Closing, and upon Purchaser's payment of any cure amounts (or such amounts as agreed by

20   Purchaser and any counterparty), the Assumed Contracts shall be, and are (a) in full force and effect,

21   with no defaults thereunder that need to be cured in connection with any assumption and assignment

22   by the Debtor, and (b) valid, binding, and enforceable in accordance with their terms upon

23   assignment to the Purchaser, notwithstanding any provision in any such Assumed Contract

24   (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that

25   prohibits, restricts or conditions such assignment or transfer.  Without limiting the foregoing, the

26   Assumed Contracts will include three business critical contracts with HP Inc. ("HP") formerly

27   known as Hewlett Packard Company (collectively, the "HP Agreements").  The first, the HP

28   Returns Program Purchase Agreement between Technology Solutions & Services, Inc. and Hewlett

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

# Exhibit 2

5

Packard Company dated on or about October 17, 2005 (the "Return Program Agreement"). The second, the Standard Services Agreement between the Debtor and Hewlett Packard Company dated on or about November 1, 2010 (the "Service Agreement"). The third is the "Electronic Equipment Asset Recovery Agreement" dated as of January 16, 2009 between Hewlett Packard Company and the Debtor. For clarity, the assumption and assignment of the HP Agreements includes the rights and duties of any affiliate of the Debtor, including its Mexico subsidiary, which are parties to or perform or receive services under the HP Agreements.

6.     As a result of the foregoing, the Lienholders are forever barred and estopped from asserting any liens or claims against the Purchaser, the Purchased Assets, or any other assets of the Purchaser. This Court shall retain exclusive jurisdiction to enforce this Order and to bar the enforcement or assertion of any liens or claims against the Purchaser or the Purchased Assets by Lienholders.

7.     The consideration provided by the Purchaser for the Purchased Assets under the Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code.

8.     The failure specifically to include any particular provisions of the Agreement in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Agreement be approved in its entirety.

9.     The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment, or supplement is not material. The Agreement, and all transactions contemplated thereby, shall be binding upon any successors in interest, including without limitation any chapter 11 trustee, chapter 7 trustee or other responsible officer appointed for any of the parties thereto.

10.     The Purchaser is hereby granted the benefits and protections of section 363(m) of the Bankruptcy Code, as a good faith purchaser and assignee, in connection with Purchased Assets. No portion of the Purchased Assets to be sold, assumed and assigned, or assigned pursuant to the Agreement, shall be severable for mootness or any other purpose from any other portion of the

# Exhibit 2

1    Purchased Assets, and the sale of the Purchased Assets shall constitute but one non-severable

2    transaction under section 363 of the Bankruptcy Code

3         11.    This Order shall be effective immediately upon its entry, and the 14-day stay

4    provisions included in Bankruptcy Rule 6004(h) and 6006(d) are hereby waived.

5         12.    The Debtor is hereby authorized, empowered, and directed to (1) perform under,

6    consummate, and implement the Agreement, (2) execute all additional instruments and documents

7    that may be reasonably necessary or desirable to implement the Agreement and the transactions

8    contemplated thereby, (3) take all further actions as may be necessary or appropriate for the

9    purposes of assigning, transferring, granting, conveying, encumbering or transferring the Purchased

10   Assets as contemplated by the Agreement, and (4) take such other and further steps as are

11   contemplated by the Agreement or reasonably required to fulfill the Debtor's obligations under the

12   Agreement, all without further order of the Court.

13

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26

27

28

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

# Exhibit 2

7

13.    This Court hereafter shall and does retain exclusive jurisdiction: (a) to interpret, construe, enforce and implement the terms and provisions of the Agreement and this Order, all amendments thereto, any waivers and consents thereunder, any agreements executed in connection therewith, and any and all disputes that may arise under the Agreement or this Order as between the Debtor and the Purchaser; (b) to hear and determine any and all disputes between the Debtor and/or the Purchaser, as the case may be, and any third parties relating to the Agreement; (c) compel delivery and payment of the consideration provided for under the Agreement; (d) resolve any disputes, controversies or Claims arising out of or relating to the Agreement; and (e) interpret, implement, and enforce the provisions of this Order; provided, however, that in the event that this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this clause, or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

# # #

Date: October 24, 2018

Mark Houle
United States Bankruptcy Judge

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

# Exhibit 2

8

# EXHIBIT 3

# General Unsecured Claims

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| ADB Office Solutions<br>180 Vander St<br>Corona, CA 92880 | | | | | | | | $   .00 | $   .00 | $   .00 |
| Aetna<br>PO Box 67109<br>Harrisburg, PA  17106-7103 | $17,532.36 | | | | | | | $   .00 | $   .00 | $17,532.36 |
| American Express Travel Related Services Company Inc<br>PO Box 3001<br>Malvern, PA 19355-0701 | $767,036.76 | | | | 1 | 10/5/2018 | $767,036.76 | $   .00 | $   .00 | $767,036.76 |
| American Express Travel Related Services Company Inc<br>Box 0001<br>Los Angeles, CA 90096-8000 | $   .00 | | | | | | | | | |
| ATLANTIC SEMICONDUCTOR<br>9 Centennial Drive<br>Peabody MA 01960 | $82,589.00 | | | | TBD | | $82,676.00 | $   .00 | $   .00 | $82,676.00 |
| Atradius Collections<br>3500 Lacey Road, Suite 220<br>Downers Grove, IL 60515 | $   .00 | | | | | | | $   .00 | $   .00 | $   .00 |

# Exhibit 3

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Aztec Global Solutions Inc<br>1201 Activity Drive<br>Vista, CA 92081-8510 | $7,750.00 | | | | 8 | 10/23/2018 | $15,650.00 | $   .00 | $   .00 | $15,650.00 |
| Bank of America NA<br>CA9-702-03-93<br>101 S Marengo Ave 3rd Floor<br>Pasadena, CA 91101-2428 | $12,292,722.72 | X | | | | | | $12,292,722.72 | $   .00 | $   .00 |
| Blanca Garcia<br>3815 Valencia Ave<br>San Bernardino, CA  92404 | $787,846.99 | | | | | | | $   .00 | $   .00 | $787,846.99 |
| Blanca Garcia<br>3815 Valencia Ave<br>San Bernardino, CA  92404 | $25,554.10 | | | | | | | $   .00 | $12,850.00 | $12,704.10 |
| BMW Financial<br>Services NA LLC<br>c/o AIS Portfolio Services LP<br>4515 Santa Fe Ave Dept APS<br>Oklahoma City, OK 73118 | | X | | | 5 | 10/20/2018 | $5,207.92 | $   .00 | $   .00 | $5,207.92 |
| California Department of Tax<br>and Fee Administration<br>Account Information Group,<br>MIC:29<br>PO Box 942879<br>Sacramento, CA 94279-0029 | | | | | | | | $   .00 | $   .00 | $   .00 |

# Exhibit 3

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| California Franchise Tax Board Bankruptcy Section, MS: A-340 PO Box 2952 Sacramento, CA 95812-2952 | $351,065.73 | | | | | | | $  .00 | $351,065.73 | $  .00 |
| California State Board of Equalization Special Operations Branch, MIC: 55 PO Box 942879 Sacramento, CA 94279-0055 | | | | | | | | $  .00 | $  .00 | $  .00 |
| DIGI PRINTING SOLUTIONS PO Box 1161 Richmond TX 77406-1161 | $20,430.00 | | | | | | | $  .00 | $  .00 | $20,430.00 |
| Easy Tech 3605 Valencia Ave San Bernardino, CA  92404 | $1,545,862.74 | | | | | | | $  .00 | $  .00 | $1,545,862.74 |
| EESOURCE CORP 27851 Mazagon Mission Viejo, CA 92692 | $46,465.00 | | | | 7 | 10/22/2018 | $46,465.00 | $  .00 | $  .00 | $46,465.00 |
| EESOURCE CORP 5F, 50 Minquan Rd., Xindian Dis New Taipei City Taiwan 23141 | $  .00 | | | | | | | | | |

# Exhibit 3

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| EPES LOGISTICS SERVICES INC<br>201 Mccullogh Drive Suite 310<br>Charlotte, NC 28262 | $55,164.73 | | | | | | | $    .00 | $    .00 | $55,164.73 |
| Ephone Supply Co.<br>Dept 906-196 High Rd<br>Wood Green<br>London N228HH | $17,993.50 | | | | | | | $    .00 | $    .00 | $17,993.50 |
| Eric Huang<br>12479 Farnborough Ct<br>Mira Loma, CA  91752 | $26,310.72 | | | | | | $26,310.72 | $    .00 | $12,850.00 | $13,460.72 |
| FEDEX<br>3965 Airways Blvd,  Module G, 3rd Floor<br>Memphis, TN 38116-5017 | $16,191.25 | | | | 9 | 10/26/2018 | $16,589.62 | $    .00 | $    .00 | $16,589.62 |
| Fred Anavim<br>102 Ambling<br>Brea, CA  92821 | $ 484.80 | | | | | | | $    .00 | $    .00 | $ 484.80 |
| Fred Anavim<br>102 Ambling<br>Brea, CA  92821 | $20,915.77 | | | | | | | $    .00 | $12,850.00 | $8,065.77 |

# Exhibit 3

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| GLOBAL CONTAINERS & CUSTOM PACKAGING 1555 Goodyear Drive Suite B El Paso, TX 79936 | $607,707.76 | | | | | | | $   .00 | $   .00 | $607,707.76 |
| GLOBAL TRANZ ENTERPRISES INC PO Box 6348 Scottsdale, AZ 85261 | $30,200.00 | | | | 4 | 10/15/2018 | $34,100.00 | $   .00 | $   .00 | $34,100.00 |
| GLOBAL TRANZ ENTERPRISES INC 8460 Grand Vista El Paso, TX 79907 | $   .00 | | | | | | | | | |
| Gregory E Galtero, Esq Benjamin R Blum, Esq Jaffe & Asher LLP 600 Third Avenue New York, NY 10016 | $   .00 | | | | | | | $   .00 | $   .00 | $   .00 |
| GWH Properties LLC 458 E Commercial Road San Bernardino, CA 92408 | | | | | | | | $   .00 | $   .00 | $   .00 |
| HERMAN PACKAGING COMPANY 12820 Hempstead SuiteA Houston TX 77092 | $12,015.35 | | | | | | | $   .00 | $   .00 | $12,015.35 |

# Exhibit 3

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| HERNANDEZ BROKERS, LLC<br>PO Box 3026<br>Calexico, CA 92232 | $6,632.76 | | | | | | | $ .00 | $ .00 | $6,632.76 |
| Hewlett-Packard Latin America<br>HP Inc<br>11311 Chinden Boulevard,<br>Legal MS 314<br>Boise, ID 83714 | $62,760.20 | | | | | | | $ .00 | $ .00 | $62,760.20 |
| HOUSTON FOAM PLASTICS, INC.<br>PO Box 1615<br>Houston, TX 77251 | $80,664.60 | | | | 2 | 10/11/2018 | $93,422.24 | $ .00 | $ .00 | $93,422.24 |
| HP INC<br>HP Inc<br>11311 Chinden Boulevard,<br>Legal MS 314<br>Boise, ID 83714 | $6,722,107.07 | | | | | | | $ .00 | $ .00 | $6,722,107.07 |
| HP Parts Inc<br>HP Inc<br>11311 Chinden Boulevard,<br>Legal MS 314<br>Boise, ID 83714 | | | | | | | | $ .00 | $ .00 | $ .00 |
| Humberto Garcia<br>13502 Silver Palms Lane<br>Sylmar, CA  91342 | $12,504.36 | | | | | | | $ .00 | $12,504.36 | $ .00 |

# Exhibit 3

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Humberto Garcia<br>13502 Silver Palms Lane<br>Sylmar, CA  91342 | $1,521.00 | | | | | | | $    .00 | $    .00 | $1,521.00 |
| Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | $686,683.15 | X | | X | | | | $    .00 | $    .00 | $    .00 |
| Jim Sullivan<br>2238 Emerald Circle<br>Morro Bay, CA  93442 | | | | | | | | $    .00 | $    .00 | $    .00 |
| Julio Garcia Jr<br>3605 Valencia Ave<br>San Bernardino, CA  92404 | $725,758.79 | | | | | | | $    .00 | $    .00 | $725,758.79 |
| Julio Garcia Jr | $ 864.99 | | | | | | | $    .00 | $    .00 | $ 864.99 |
| Julio Garcia Jr<br>3605 Valencia Ave<br>San Bernardino, CA  92404 | $23,548.36 | | | | | | | $    .00 | $12,850.00 | $10,698.36 |

# Exhibit 3

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Julio Garcia Sr<br>3815 Valencia Ave<br>San Bernardino, CA  92404 | $552,572.38 | | | | | | | $   .00 | $   .00 | $552,572.38 |
| Julio Garcia Sr<br>3815 Valencia Ave<br>San Bernardino, CA  92404 | $41,381.00 | | | | | | | $   .00 | $12,850.00 | $28,531.00 |
| Laptopplaza Inc<br>10900 NW 97th St. Unit 104<br>Miami, FL 33178 | $   .00 | | | | | | | $   .00 | $   .00 | $   .00 |
| Lenovo US<br>1009 Think Place B1 215<br>Morisville,  NC 27560 | $3,900,279.55 | | | | | | | $   .00 | $   .00 | $3,900,279.55 |
| Lexus Financial Services<br>c/o Davidson Motors Inc<br>3150 Adams<br>Riverside, CA 92504 | | | | | | | | $   .00 | $   .00 | $   .00 |
| Lexus Financial Services<br>PO Box 8026<br>Cedar Rapids, IA 52409-8026 | | | | | | | | $   .00 | | $   .00 |

# Exhibit 3

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| LITE ON TECHNOLOGY CORPORATION 22F. 392 Ruery Kuang Road Neihu Taipei 114 TAIWAN | $31,311.72 | | | | | | | $   .00 | $   .00 | $31,311.72 |
| LOGISTIC & TRANSPORTATION SOLUTIONS Carretera Mexicali-Aeropuerto Km17 S/N Col Herradura Mexicali, BC 21217 | $53,388.50 | | | | | | | $   .00 | $   .00 | $53,388.50 |
| Mijac Alarm 9339 Charles Smith Ave Suite 100 Rancho Cucamonga, CA 91730 | | | | | | | | $   .00 | $   .00 | $   .00 |
| Pacific Rim Distribution Center LLC 821 Kuhn Drive Suite 100 Chula Vista, CA 91914 | $41,109.83 | | | | | | | | | $41,109.83 |
| Peter Skuba 6101 Uplan Rd Camarillo, CA  93012 | $30,094.00 | | | | | | | $   .00 | $   .00 | $30,094.00 |
| Peter Skuba 6101 Uplan Rd Camarillo, CA  93012 | $24,946.47 | | | | | | | $   .00 | $12,850.00 | $12,096.47 |

# Exhibit 3

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| QUANTA COMPUTER INC. 188 Wenhwa 2nd Rd Guishan Dist Tao Yuan City 33377 TAIWAN | $106,343.76 | | | | | | | $   .00 | $   .00 | $106,343.76 |
| RLG Americas 190 Middlesex Turnpike Ste 206 Iselin, NJ 08830 | $5,646.26 | | | | | | | $   .00 | $   .00 | $5,646.26 |
| RM CUSTOMHOUSE BROKERS 1320 Goodyer Dr. Suite 105 El Paso, TX 79936 | $12,318.02 | | | | | | | $   .00 | $   .00 | $12,318.02 |
| TMX Logistics, Inc. 27 Spur Dr Butterfield Tr Ind Pk El Paso, TX 79906 | $42,208.65 | | | | | | | $   .00 | $   .00 | $42,208.65 |
| Toyota Lease Trust Toyota Motor Credit Corporation PO Box 9013 Addison, TX 75001 | | X | | | 3 | 10/12/2018 | $3,716.92 | $   .00 | $   .00 |
| Trade Border Logistics 1281 Joe Battle Blvd El Paso, TX  79936 | $3,400.00 | | | | | | | $   .00 | $   .00 | $3,400.00 |

# Exhibit 3

| Creditor Name | Scheduled Claim Amount | CONTINGENT | UNLIQUIDATED | DISPUTED | Filed Claim No. | Date Claim Filed | Total Filed Claim Amount | Secured Portion of Claim | Priority Portion of Claim | Unsecured Portion of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| Venable LLP<br>505 Montgomery Street, Suite 1400<br>San Francisco, CA  94111 | $6,724.40 | | | | | | | $   .00 | $   .00 | $6,724.40 |
| XPC/COMPAX IDEAS Y TECNOLOGIA SA DE CV<br>Rio de Janeiro 198, San Isidro<br>Londres y Bruselas, Torreon Coahuila<br>MEXICO CP27100 | $283,500.00 | | | | | | | $   .00 | $   .00 | $283,500.00 |
| | | | | | | | **TOTALS** | **$12,296,439.64** | **$440,670.09** | **$16,800,284.07** |

# Exhibit 3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **100 Spectrum Center Drive, Suite 600, Irvine, California 92618**

A true and correct copy of the foregoing document entitled (*specify*): **DISCLOSURE STATEMENT FOR CHAPTER 11 LIQUIDATING PLAN PROPOSED BY THE DEBTOR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 29, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

&#9642;&#9635; Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) **October 29, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**<u>Judge's Copy</u>:  Hon Mark D. Houle, U.S. Bankruptcy Court, 3420 Twelfth Street, Suite 365, Riverside, CA 92501-3819**

&#9635; Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)    **Not Applicable** , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 29, 2018 | Lorre Clapp | /s/Lorre Clapp |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

## NEF SERVICE LIST

- **Michele S Assayag**     efilings@amlegalgroup.com, efilings@amlegalgroup.com
- **Shraddha Bharatia**     notices@becket-lee.com
- **Kelly S Biggins**     kbiggins@lockelord.com, gmayorga@lockelord.com
- **Melissa Davis Lowe**     mlowe@shbllp.com, avernon@shbllp.com
- **Rejoy Nalkara**     rejoy.nalkara@americaninfosource.com
- **Kurt Rifbjerg**     kurt.rifbjerg@kts-law.com
- **Christopher O Rivas**     crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Leonard M Shulman**     lshulman@shbllp.com
- **Ovsanna Takvoryan**     otakvoryan@ckrlaw.com, r48607@notify.bestcase.com
- **Mohammad Tehrani**     Mohammad.V.Tehrani@usdoj.gov
- **United States Trustee (RS)**     ustpregion16.rs.ecf@usdoj.gov
- **Michael D Warner**     mwarner@coleschotz.com, klabrada@coleschotz.com

## U.S. MAIL SERVICE LIST

**DEBTOR**
TECHNOLOGY SOLUTIONS
& SERVICES, INC.
ATTN JULIO C. GARCIA, JR., CFO
458 EAST COMMERICAL ROAD
SAN BERNARDINO, CA 92408

**UNITED STATES TRUSTEE**
UNITED STATES TRUSTEE
3801 UNIVERSITY AVENUE, SUITE 720
RIVERSIDE, CA 92501

**LOCAL COUNSEL FOR GLOBAL
CONTAINERS & CUSTOM PACKAGING INC.**
CKR LAW LLP
OVSANNA TAKVORYAN ESQ AND JOHN KIM
ESQ
1800 CENTURY PARK EAST, 14TH FLOOR
LOS ANGELES, CA 90067

**ATTORNEY FOR GLOBAL CONTAINERS
& CUSTOM PACKAGING INC.**
SCOTTHULSE PC
JAMES M FEUILLE ESQ
PO BOX 99123
EL PASO, TX 79999-9123

**SCHEDULE F - 20 LARGEST**
HP INC
ATTN RAMONA SCHWEHR NEAL, SENIOR
BANKRUPTCY COUNSEL (BANKRUPTCY,
CREDIT & TREASURY)
CORPORATE SECURITIES INTERNATIONAL
GLOBAL LEGAL AFFAIRS
HP INC
11311 CHINDEN BOULEVARD, LEGAL MS 314
BOISE, ID 83714

**SCHEDULE F - 20 LARGEST**
ATLANTIC SEMICONDUCTOR
ATTN PRESIDENT/MANAGER AGENT
ATTN BOB CARVALHO
9 CENTENNIAL DRIVE
PEABODY MA 01960

**SCHEDULE F - 20 LARGEST**
DIGI PRINTING SOLUTIONS
ATTN PRESIDENT/MANAGER AGENT
ATTN VALERIE SCHOGGINS
PO BOX 1161
RICHMOND TX 77406-1161

**SCHEDULE F - 20 LARGEST, USA ADDRESS
FOR NOTICE**
EESOURCE CORP
ATTN PRESIDENT/MANAGER AGENT
SERGIO GARZA
27851 MAZAGON
MISSION VIEJO, CA 92692

**SCHEDULE F - 20 LARGEST**
EPES LOGISTICS SERVICES INC
ATTN PRESIDENT/MANAGER AGENT
ATTN JILLIAN CARON
201 MCCULLOGH DRIVE SUITE 310
CHARLOTTE, NC 28262

**SCHEDULE F - 20 LARGEST**
LITE ON TECHNOLOGY CORPORATION
ATTN PRESIDENT/MANAGER AGENT
ATTN COCO CHANG
22F. 392 RUERY KUANG ROAD
NEIHU
TAIPEI 114
TAIWAN

**SCHEDULE F - 20 LARGEST**
GLOBAL CONTAINERS & CUSTOM
PACKAGING
ATTN PRESIDENT/MANAGER AGENT
ATTN SYLVIA CALVILLO
1555 GOODYEAR DRIVE SUITE B
EL PASO, TX 79936

**SCHEDULE F - 20 LARGEST**
GLOBAL TRANZ ENTERPRISES INC
ATTN PRESIDENT/MANAGER AGENT
ATTN SARA GABA
PO BOX 6348
SCOTTSDALE, AZ 85261

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**SCHEDULE F - 20 LARGEST**
XPC/COMPAX IDEAS Y TECNOLOGIA SA
DE CV
ATTN PRESIDENT/MANAGER AGENT
ATTN MONICA LOZANO
RIO DE JANEIRO 198, SAN ISIDRO
LONDRES Y BRUSELAS, TORREON
COAHUILA
MEXICO CP27100

**SCHEDULE F - 20 LARGEST**
QUANTA COMPUTER INC.
ATTN PRESIDENT/MANAGER AGENT
ATTN DAISY CIANG
188 WENHWA 2ND RD
GUISHAN DIST
TAO YUAN CITY 33377
TAIWAN

**SCHEDULE F - 20 LARGEST**
LOGISTIC & TRANSPORTATION
SOLUTIONS
ATTN PRESIDENT/MANAGER AGENT
ATTN LUIS REYES
CARRETERA MEXICALI-AEROPUERTO
KM17 S/N COL HERRADURA
MEXICALI, BC 21217

**SCHEDULE F - 20 LARGEST**
FEDEX
ATTN PRESIDENT/MANAGER AGENT
3965 AIRWAYS BLVD,  MODULE G, 3RD
FLOOR
MEMPHIS, TN 38116-5017

**ATTORNEY FOR AMERICAN EXPRESS
TRAVEL RELATED SERVICES
COMPANY, INC. - PROOF OF CLAIM
ADDRESS**
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY INC
BECKET AND LEE LLP
PO BOX 3001
MALVERN, PA 19355-0701

**SCHEDULE G**
LEXUS FINANCIAL SERVICES
ATTN PRESIDENT/MANAGER AGENT
C/O DAVIDSON MOTORS INC
3150 ADAMS
RIVERSIDE, CA 92504

**SCHEDULE F - 20 LARGEST**
HOUSTON FOAM PLASTICS, INC.
ATTN PRESIDENT/MANAGER AGENT
ATTN MELISSA TREVINO
SUSANA HERNARNDEZ, AR MANAGER
PO BOX 1615
HOUSTON, TX 77251

**SCHEDULE F - 20 LARGEST**
TMX LOGISTICS, INC.
ATTN PRESIDENT/MANAGER AGENT
ATTN WALLACE LI
27 SPUR DR BUTTERFIELD TRAIL IND PARK
EL PASO, TX 79906

**SCHEDULE F - 20 LARGEST**
LENOVO US
ATTN PRESIDENT/MANAGER AGENT
ATTN KRIRSTIN NEIRA
1009 THINK PLACE B1 215
MORISVILLE,  NC 27560

**ADDITIONAL NOTICE**
FEDERAL EXPRESS CORPORATION
ATTN MICHAEL SIEDBAND, ESQ.
LEGAL DEPARTMENT
3620 HACKS CROSS ROAD
BUILDING B, THIRD FLOOR
MEMPHIS, TN 38125

**SCHEDULE D**
INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19101-7346

**SCHEDULE G - ADDITIONAL NOTICE**
LEXUS FINANCIAL SERVICES
ATTN PRESIDENT/MANAGER AGENT
PO BOX 8026
CEDAR RAPIDS, IA 52409-8026

**SCHEDULE F - 20 LARGEST**
HEWLETT-PACKARD LATIN AMERICA
ATTN RAMONA SCHWEHR NEAL, SENIOR
BANKRUPTCY COUNSEL (BANKRUPTCY,
CREDIT & TREASURY)
CORPORATE SECURITIES INTERNATIONAL
GLOBAL LEGAL AFFAIRS; HP INC
11311 CHINDEN BOULEVARD, LEGAL MS 314
BOISE, ID 83714

**SCHEDULE D**
BANK OF AMERICA NA
ATTN PRESIDENT/MANAGER AGENT
ATTN ARGISHT MINASYAN, VICE PRESIDENT
AND GERMAN TORRES, SR PORFOLIO
OFFICER, SPECIAL ASSETS GROUP
CA9-702-03-93
101 S MARENGO AVE 3RD FLOOR
PASADENA, CA 91101-2428

**NOTICE FOR LENOVO**
ATRADIUS COLLECTIONS
ATTN PRESIDENT/MANAGER AGENT
3500 LACEY ROAD, SUITE 220
DOWNERS GROVE, IL 60515

**ATTORNEY FOR AMERICAN EXPRESS
TRAVEL RELATED SERVICES COMPANY,
INC.**
GREGORY E GALTERO, ESQ
BENJAMIN R BLUM, ESQ
JAFFE & ASHER LLP
600 THIRD AVENUE
NEW YORK, NY 10016

**SCHEDULE F - 20 LARGEST
SCHEDULE G**
PACIFIC RIM DISTRIBUTION CENTER LLC
ATTN MICHAEL A VOGT,
PRESIDENT/MANAGER OF MANAGER
MEMBER
821 KUHN DRIVE SUITE 100
CHULA VISTA, CA 91914

**SCHEDULE G - CLAIM FILED**
BMW FINANCIAL SERVICES NA LLC
ATTN PRESIDENT/MANAGER AGENT
C/O AIS PORTFOLIO SERVICES LP
4515 SANTA FE AVE DEPT APS
OKLAHOMA CITY, OK 73118

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                          **F 9013-3.1.PROOF.SERVICE**

**NOTICE PURPOSES**
U.S. SECURITIES & EXCHANGE
COMMISSION
ATTN BANKRUPTCY COUNSEL
444 SOUTH FLOWER ST., SUITE 900
LOS ANGELES, CA 90071-2934

**CLAIM FILED**
TOYOTA LEASE TRUST
ATTN PRESIDENT
TOYOTA MOTOR CREDIT CORPORATION
PO BOX 9013
ADDISON, TX 75001

RETURNED MAIL

**SCHEDULE F - 20 LARGEST**
AETNA
ATTN PRESIDENT/MANAGER AGENT
ATTN DEBORAH ARNOLD
PO BOX 67109
HARRISBURG, PA  17106-7103

**SCHEDULE F - 20 LARGEST**
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY INC
ATTN PRESIDENT/MANAGER AGENT
BOX 0001
LOS ANGELES, CA 90096-8000

**SCHEDULE F - 20 LARGEST**
EPHONE SUPPLY CO.
ATTN PRESIDENT/MANAGER AGENT
ATTN EDGAR SANDOVAL
DEPT 906-196 HIGH RD
WOOD GREEN
LONDON N228HH

**SEE SERVICE ADDRESS PER RAMONA
SCHWEHER NEAL, SENIOR BANKRUPTCY
COUNSEL**
**SCHEDULE F - 20 LARGEST**
HEWLETT-PACKARD LATIN AMERICA
ATTN PRESIDENT/MANAGER AGENT
ATTN MILENE CHANG
AV. VASCI DE QUIROGA NO.2999 INT S/N
COL PEÑA BLANCA SANTA FE DEL
ALVARADO OBREGON
CIUDAD DE MEXICO, CP 01210

**SEE CORRECTED ADDRESS
SCHEDULE F - 20 LARGEST**
GLOBAL TRANZ ENTERPRISES INC
ATTN PRESIDENT/MANAGER AGENT
ATTN ISABEL QUIROGA
8460 GLEN VESTA
EL PASO, TX 79907

**SEE PROOF OF CLAIM ADDRESS
SCHEDULE G**
BMW FINANCIAL SERVICES LLC
ATTN PRESIDENT/MANAGER AGENT
C/O BMW OF RIVERSIDE
3060 ADAMS STREET
RIVERSIDE, CA 92504

**SEE PROOF OF CLAIM ADDRESS
SCHEDULE F - 20 LARGEST**
HOUSTON FOAM PLASTICS
ATTN PRESIDENT/MANAGER AGENT
ATTN MELISSA TREVINO
2019 BROOKS ST
HOUSTON, TX 77026

**SEE NEW ADDRESS PER 10/22/2018 EMAIL
FROM RAMONA NEAL, SENIOR COUNSEL
FOR HP INC.**
**SCHEDULE F - 20 LARGEST**
HP INC
ATTN PRESIDENT/MANAGER AGENT
ATTN DARLEEN ARISCO
11445 COMPAQ CENTER DR W
HOUSTON, TX  77070

**SEE PROOF OF CLAIM ADDRESS
SCHEDULE F - 20 LARGEST**
GLOBAL TRANZ ENTERPRISES INC
ATTN PRESIDENT/MANAGER AGENT
ATTN ISABEL QUIROGA
8460 GRAND VISTA
EL PASO, TX 79907

**SEE PROOF OF CLAIM ADDRESS
SCHEDULE F - 20 LARGEST**
EESOURCE CORP
ATTN PRESIDENT/MANAGER AGENT
SERGIO GARZA
5F, 50 MINQUAN RD., XINDIAN DIS
NEW TAIPEI CITY
TAIWAN 23141

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**